IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 23-cv-144 |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| James Huyser, | ) | |
| Matthew Kinley, | ) | |
| Kenneth Boyle, | ) | |
| Jeffrey W. Carter, and | ) | |
| JWC Investments, L.C., | ) | |
| | ) | |
| Defendants | ) | |

---

**Memorandum in Support of
Resistance to United States Motion to Strike
Affirmative Defenses of Defendant James Huyser**

---

COMES NOW Defendant, James Huyser, and submits the following Memorandum in Support of Defendant's Resistance to the United States' Motion to Strike Affirmative Defenses (docket #17)

TABLE OF CONTENTS

I.      Nature of the Case and Affirmative Defenses ..................................................... 3

II.     Rule 12(f) standard ........................................................................................ 5

III.    Argument ...................................................................................................... 6

    A. THE STATUTE OF LIMITATIONS AND EXTINGUISHMENT OF CLAIMS FOUND WITHIN THE IOWA UNIFORM FRAUDULENT TRANSFER STATUTE ARE SUBSTANTIVE IN NATURE AND ARE PROPERLY PROMULGATED BY THE STATE OF IOWA IN THE ABSENCE OF ANY FEDERAL STATUTE TO THE CONTRARY. ........................................................... 6

    B. THERE IS NO FEDERAL STATUTE WHICH OVERRIDES THE EXISTENCE AND APPLICABILITY OF THE LIMITATIONS AND EXTINGUISHMENT PERIODS UNDER THE IOWA UNIFORM FRAUDULENT TRANSFER ACT AND, IN FACT, UNDER FEDERAL LAW, THE APPLICABLE FEDERAL STATUTE OF LIMITATIONS FOR SEEKING TO SET ASIDE AN ALLEGED FRAUDULENT CONVEYANCE HAS LONG SINCE PASSED. .................. 6

C.   It is undisputed the United States' claims under the Iowa Uniform Fraudulent Transfer Act are untimely under Iowa state law. .... 7

D.   The United States reliance upon *Wurdeman, Fernon* and *Summerlin* is misplaced as those decisions are distinguishable from this case and arise from the mistaken belief that 83 year-old dicta in Summerlin is controlling precedent in this case. ..................................................... 8

IV.   Conclusion ....................................................................................... 11

## I.   <u>Nature of the Case and Affirmative Defenses</u>

1.  Plaintiff's Complaint (docket # 1) states, in relevant part, as follows:

> ¶1.   In this action, the United States seeks to pierce the corporate veil of the Iowa LLC, Alternative Carbon Resources, LLC ("ACR") to obtain money judgments jointly and severally against the individual member of ACR   to obtain money judgments, jointly and severally against the individual members of AC, Defendants James Huyser, Matthew Kinley, Kenneth Boyle and Jeffrey W. Carter  (collectively "Member Defendants"), and JWC Investments, L.C. ("JWC") and entity that operated as Jeffrey Carter's alter ego and received funds from ACR on his behalf. Alternatively, the United States seeks money judgments against each Defendant as a fraudulent transferee for funds each received from ACR.

> ¶7.   The United States asserts four claims for relief against the respective Defendants (as set forth in Counts I through IV below).

>> First, the United States seeks a judgment declaring that the ACR corporate form is disregard under the "piercing the corporate veil doctrine" and each Defendant (and JWC as Carter's alter ego) is liable for the debts of ACR because ACR was a sham corporation, serving no legitimate business purpose, and was used primarily as a vehicle to promote an injustice by improperly obtaining alternative fuel mixture credits to enrich the Defendants.

>> In the alternative, the United States seeks money judgments against the Defendants individually in the amounts of funds they received from ACR because they received such funds as fraudulent transferees under the Iowa Uniform Fraudulent Transfer Act.

2.  The United States' claims against Defendant Huyser are based upon Iowa state law rather than federal law.

3.  Defendant's **Answer and Affirmative Defenses on Behalf of Jim Huyser** (docket #8) asserts his affirmative defenses in relevant part:

> ¶184. Defendant affirmatively submits the relief sought by Plaintiff herein is barred by one or more of the following affirmative defenses:

- Statute of Limitations:  Plaintiff's claims in this matter are barred by virtue of one or more statute of limitations found in the **Iowa Uniform Fraudulent Transfer Act** at Iowa Code §684.9 which provides, in relevant part:

  A claim for relief with respect to a transfer or obligation under this chapter is extinguished unless action is brought as follows:

  1. Under section 684.4, subsection 1, paragraph "a", not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

  2. Under section 684.4, subsection 1, paragraph "b", or section 684.5, subsection 1, not later than four years after the transfer was made or the obligation was incurred.

  3. Under section 684.5, subsection 2, not later than one year after the transfer was made.

- Statute of Limitations:  Plaintiff's claims in this matter are barred by virtue of one or more statute of limitations including, but not limited to, Iowa Code §614.1(4) which provides, in relevant part:

  Actions may be brought within the times limited as follows, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:

  4. Unwritten contracts — injuries to property — fraud — other actions. Those founded on unwritten contracts, those brought for injuries to property, or for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years, except as provided by subsections 8 and 10.

- Laches:  Plaintiff's claims in this case are barred under the equitable doctrine of laches due to Plaintiff's unreasonable delay, lack of diligence, and lack of good faith in the untimely prosecution of this action is unfairly prejudicial to Defendant.

  **a)** Plaintiff's complaint states the alternative fuel tax credits which are the subject matter of this lawsuit were paid to Alternative Carbon Resources, LLC in 2011 further states that those alternative fuel tax credits were immediately disbursed out to the members, including Defendant.  See Complaint ¶3 ¶19, ¶91-98, ¶101-104.

  **b)** Plaintiff's complaint states that as early as February 2011 the IRS began looking into the activities of ACR when it sent a "detailed questionnaire from the IRS to ACR about its business operations.  See Complaint ¶159 (a-f)

    **c)** Plaintiff's Complaint notes that on 28 March 2018, the US Court of Federal Claims entered a money judgment against ACR in the amount of $59,320.179 (less any payments made and plus statutory interest and additions accruing according to law, in excise taxes assessed for improperly claims alternative fuel mixture credits and for assessed excessive claim penalties. *Alternative Carbon Res., LLC v. United States,* 137 Fed Cl. 1 (2018)

    **d)** Plaintiff's Complaint further notes that on 26 September 2019, that decision was upheld by the United States Court of Appeals for the Federal Circuit in *Alternative Carbon Res., LLC v. United States*, 939 F.3d 1230).

    **e)** Plaintiff took no action against Defendant individually until it commenced this action on 1 May 2023 which is 3 years, 7 months and 6 days after the final decision by the United States Court of Appeals for the Federal Circuit on 28 March 2018.

- Estoppel:  Plaintiff's claims in this case are barred under the equitable doctrine of estoppel in that the Plaintiff failed to take any action against Defendant individually for more than 10 years prior to the filing of the instant lawsuit notwithstanding the fact the IRS had knowledge of ACR's application for and receipt of the alternative fuel mixture tax credits and ACR's distribution of some of the tax credit funs to the members of ACR, including Defendant,

    Plaintiff's dilatory actions in this case should serve to estop Plaintiff from proceeding with its claims against Defendant after the more than decade delay involved under the facts and circumstances of this case.

## II.    <u>Rule 12(f) Standard</u>

4. The United States seeks to strike the various affirmative defenses asserted by Huyser pursuant to Federal Rule of Civil Procedure 12(f) which states:

(f) Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

    (1) on its own; or

    (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

USCS Fed Rules Civ Proc R 12

5. In reviewing a motion to strike, the Court must accept all allegations in the affirmative defenses as true and determined if they are foreclosed by prior controlling decisions or statutes or if there is no legal basis for the defense. *Holt v. Quality Egg, LLC*, 777 F. Supp 2d, 1160, 1169 n.5 (N.D. Iowa 2011).

6. Rule 12(f) motions are not favored, rather it is a permissive rule under which federal courts have liberal discretion to strike affirmative defenses when it may have the effect of making the trial of the action less complicated or if it may have the effect of otherwise streamlining the ultimate resolution of the action. Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d. 727, 733 (S.D. Iowa 2007), Stanbury L. Firm v. I.R.S., 292 F.3d 1059, 1063 (8th Cir. 2000) describing liberal discretion standard.

### III.    <u>Argument</u>

A. THE STATUTE OF LIMITATIONS AND EXTINGUISHMENT OF CLAIMS FOUND WITHIN THE **IOWA UNIFORM FRAUDULENT TRANSFER** STATUTE ARE SUBSTANTIVE IN NATURE AND ARE PROPERLY PROMULGATED BY THE STATE OF IOWA IN THE ABSENCE OF ANY FEDERAL STATUTE TO THE CONTRARY.

It is uncontroverted that **all** of the claims asserted against Defendant Huyser by the United States are predicated upon substantive Iowa state law rather than any controlling federal statute. In proceeding against Huyser for alleged fraudulent transfers from ACR, the United States is seeking to take advantage of a right that is entirely within the domain of state law. The right to seek to set aside transfers as fraudulent is a creature of Iowa state law and specifically limited by the text of the state statute creating the right.

In this case, the United States has cited no federal statute that restricts or eliminates the state of Iowa's right to legislate in the area of fraudulent transfers and in fact no such federal statute exists.

B. THERE IS NO FEDERAL STATUTE WHICH OVERRIDES THE EXISTENCE AND APPLICABILITY OF THE LIMITATIONS AND EXTINGUISHMENT PERIODS UNDER THE **IOWA UNIFORM FRAUDULENT TRANSFER ACT** AND, IN FACT, UNDER FEDERAL LAW, THE APPLICABLE FEDERAL STATUTE OF LIMITATIONS FOR SEEKING TO SET ASIDE AN ALLEGED FRAUDULENT CONVEYANCE HAS LONG SINCE PASSED.

Under 26 USCS § 6901(c), the federal statute of limitations for the United States to assess a tax liability on a transferee of a fiduciary is one year. That statute provides, in relevant part:

**(c) Period of limitations.** The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

**(1) Initial transferee.** In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

**(2) Transferee of transferee.** In the case of the liability of a transferee of a transferee, within 1 year after the expiration of the period of limitation for assessment against the preceding transferee, but not more than 3 years after the expiration of the period of limitation for assessment against the initial transferor;

If Congress were so inclined, it could have created a federal fraudulent transfer statute and explicitly adopt the unlimited limitations period urged by the United States in this action. Congress has not done so leaving the Iowa statute intact.

It is only because the United States missed the federal statute of limitations found in 26 USCS § 6901(c) and failed to proceed as outlined therein, that it is attempting to bring an action directly under the Iowa state statute at this late date.

C.   IT IS UNDISPUTED THE UNITED STATES' CLAIMS UNDER THE IOWA UNIFORM FRAUDULENT TRANSFER ACT ARE UNTIMELY UNDER IOWA STATE LAW.

The timeline in this case is straightforward and uncontroverted.

a)   The Complaint states the alternative fuel tax credits which are the subject matter of this lawsuit were paid to Alternative Carbon Resources, LLC in 2011 further states that those alternative fuel tax credits were immediately disbursed out to the members, including Defendant.  See Complaint ¶3 ¶19, ¶91-98, ¶101-104.

b)   The Complaint states that as early as February 2011 the IRS began looking into the activities of ACR when it sent a "detailed questionnaire from the IRS to ACR about its business operations.  See Complaint ¶159 (a-f)

c)   The Complaint notes that on 28 March 2018, the US Court of Federal Claims entered a money judgment against ACR in the amount of $59,320.179 (less any payments made and plus statutory interest and additions accruing according to law, in excise taxes assessed for improperly claims alternative fuel mixture credits and for assessed excessive claim penalties. *Alternative Carbon Res., LLC v. United States,* 137 Fed Cl. 1 (2018)

d)   The Complaint further notes that on 26 September 2019, that decision was upheld by the United States Court of Appeals for the Federal Circuit in *Alternative Carbon Res., LLC v. United States*, 939 F.3d 1230).

e)   The United States took no action against Defendant **Huyser** individually until it commenced this action on 1 May 2023 which is 12 years after the actions which are the subject matter of litigation and some 3 years, 7 months and 6 days after the final decision by the United States Court of Appeals for the Federal Circuit on 28 March 2018.

The United States concedes its **Complaint** is filed outside these timeframes and instead relies, instead upon its assertion the United States is not bound by state statutes of limitation in enforcing its rights in reliance upon *United States v Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981) quoting *United States v Fernon*, 640 F.2d 609 (5th Cir. 1981) (quoting United *States v. Summerlin*, 310 U.S. 414, 84 L. Ed. 1283, 60 S. Ct. 1019 (1940).

D.   THE UNITED STATES RELIANCE UPON *WURDEMAN, FERNON* AND *SUMMERLIN* IS MISPLACED AS THOSE DECISIONS ARE DISTINGUISHABLE FROM THIS CASE AND ARISE FROM THE MISTAKEN BELIEF THAT 83 YEAR-OLD DICTA IN SUMMERLIN IS CONTROLLING PRECEDENT IN THIS CASE.

The case law relied upon, and cited by, the United States in support of its motion to strike affirmative defenses is distinguishable and not controlling in the instant case.

- The *Summerlin* case involved a Florida statute barring and voiding claims against a probate estate if not filed within eight months from the time of the first publication of the notice to creditors.

  The *Summerlin* Court**, in dicta,** stated the United States was not bound by this state limitations period in pursuing a claim which it had acquired against the probate estate. Although not controlling, in general, *Summerlin* has been considered to stand for the proposition that the state may not limit the federal government's common law right to collect debts owed to it.

- The *Wurdeman* case involved a Minnesota case in which a taxpayer transferred real estate to herself as trustee for the benefit of her children after the underlying tax liability against her had been established.

  In *Wurdeman*, the court made no serious consideration of the significant implication that automatic application of the *Summerlin* dicta would have on state sovereignty and disposed of the issue in one sentence without considering how the fraudulent conveyance issue differs from the *Summerlin* probate issue.

- The *Fernon* case involved another Florida matter in which the lower court had found the appellants to be liable to the government as a defrauded creditor under state law.

The *Fernon* court also failed to analyze the sovereignty issue and instead, in the length of a paragraph, rendered its decision under the erroneous assumption the *Summerlin* dicta was controlling precedent.

Unlike the *Wurdeman, Fernon* and *Summerlin* cases, the **Iowa Uniform Fraudulent Transfer Act** contains substantive provisions which *extinguish* all causes of action which are not brought within the time periods delineated in the statute.

In 1992, the United States District Court for the District of Hawaii in *United States v. Vellalos,* 780 F. Supp. 705, 706, 1992 U.S. Dist. LEXIS 687, *1, 92-1 U.S. Tax Cas. (CCH) P50,227, 69 A.F.T.R.2d (RIA) 92-643, 92-1 U.S. Tax Cas. (CCH) P50,227, 69 A.F.T.R.2d (RIA) 92-643 considered a case involving claims under a Hawaii's state statutory framework involving fraudulent transfers and came to the opposite conclusion to the *Wurdeman, Fernon* and *Summerlin* decisions. [1]

In considering the implication of such a broad sweeping rule within the framework of *Wurdeman, Fernon* and *Summerlin*, the *Vallalos* court analyzed this issue as follows:

"However, this court believes that these decisions are the result of an overly mechanical application of the dicta in *Summerlin* without serious consideration of the significant implications such a rule has for state sovereignty. For example, the *Wurdemann* court disposed of the issue in one sentence, without even considering how the fraudulent conveyance issue differs from the *Summerlin* case. *See* 663 F.2d at 51. Likewise, the *Fernon* court also failed to analyze the issue. In a discussion that extends for less than a paragraph, it merely presumes that *Summerlin* is controlling precedent. 640 F.2d at 612. Accordingly, this court declines to follow these two cases from the Fifth and Eighth Circuits. It does not appear that the Ninth Circuit has yet considered this specific issue." *United States v. Vellalos*, 780 F. Supp. 705, 708

"There is an important distinction between cases involving the government's common law right to collect on a debt and cases involving a carefully delimited state statutory right. In the instant case, the government seeks to take advantage of rights created by Haw. Rev. Stat. §§ 651C-1 to 651C-10, which are a codification of the Uniform Fraudulent Transfer Act ("UFTA"). In contradistinction to the statute of limitations present in the Florida statute considered in *Summerlin* and its progeny, the UFTA contains an "extinguishment" provision. Where a statute of limitations bars the remedy after the expiration of a certain period of time, the UFTA's extinguishment provision bars the entire cause of action. Furthermore, the Commission on Uniform Laws has explicitly stated that this extinguishment provision was designed to bar actions asserted by the United States under the *Summerlin* principle:

---

[1] Affirmed without opinion.   United States v. Vellalos, 1993 U.S. App. LEXIS 14065, 990 F.2d 1265

It is clear that the intent of the UFTA is to completely extinguish the statutory cause of action following the expiration of the delineated time period. The next question, then, is whether the state of Hawaii has the authority to do so with respect to rights initially acquired by the United States under the state statute

The Tenth Amendment to the United States Constitution provides:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. U.S. Const. amend. X. The law of real property has traditionally been within the province of the states. The government has cited no federal statute that would restrict the states' rights to legislate in the area of fraudulent real estate transfers.

To the extent the federal government desires an unlimited statute of limitations period with which to combat fraudulent transfers, it can create a *federal* fraudulent transfer statute, and explicitly adopt such an unlimited limitations period. The court notes that although there is no such federal statute, 26 U.S.C. § 6901(c) sets forth a summary procedure by which the IRS can collect taxes from transferees who are found to be fraudulent transferees under state law. This section, however, has even a shorter limitations period than the Hawaii state law. *See* 26 U.S.C. § 6901(c) (initial transferee remains liable for a period of *one year* after the expiration of the period of limitation for assessment against the transferror). In fact, it is only because the federal government missed this statute of limitations that it is attempting to bring an action directly under the state statute instead of under the summary procedure set forth in 26 U.S.C. § 6901(c).

Here, the government is seeking to take advantage of a right that is entirely within the domain of the state. This right was created by a state statute and specifically limited by the text of that statute. This is not a straightforward question of debt collection under the common law as was addressed by the Supreme Court in *Summerlin*. The government seeks to stretch the *Summerlin* holding to cover all state laws which in any way peripherally affect the collection of a debt by the government. To endorse the government's position would have the effect of stripping away state authority without any legitimate reason short of expediency on the part of the Internal Revenue Service. Such a holding would be an unjustified and improper expansion of the *Summerlin* principle.

Because the framers of the Uniform Fraudulent Transfer Act have been specific in providing for a literal extinguishment of the cause of action upon expiration of the prescribed time period; because this court holds that the state has the power to extinguish

a cause of action which was entirely within its power to create; and because the government has not provided this court with any convincing authority or justification for exempting itself from the state extinguishment provision, the court finds that the United States has no cause of action under the Hawaii Uniform Fraudulent Transfer Act.

*United States v. Vellalos*, 780 F. Supp. 705, 707-708

E.  DEFENDANT INCORPORATES THE ARGUMENTS OUTLINED IN SECTION A-D ABOVE VERBATIM, WITH REGARD TO THE AVAILABILITY OF THE DEFENSES OF LACHES AND ESTOPPEL.

## IV.  Conclusion

In this case, as in *Vellalos*, the **Iowa Uniform Fraudulent Transfer Act** clearly contains an extinguishment provision which bars the state court remedy in its entirety after the expiration of a certain period of time.  Thus, it is clear that the state of Iowa intended to completely extinguish the statutory cause of action regarding fraudulent transfers after the expiration of the delineated time period and, in the absence of any federal statute, nor controlling federal case law which exempts the United States from the Iowa state extinguishment provision, the United States is bound by the Iowa limitations period for the reasons urged herein.

David A. Morse
*Law Offices of David A. Morse*
1010 Insurance Exchange Building
505 Fifth Avenue
Des Moines, Iowa  50309
Ph: (515) 243-7600
Fx: (515) 243-0583
Email: dave@davemorselaw.com

### Certificate of Service

The undersigned certifies that on **26 June 2023**, I electronically filed the foregoing instrument with the Clerk of Court using the Court's CM/ECF docketing system.  Subject to the exceptions cited therein, Local Rule 5A(d) provides this electronic filing, once posted, constitutes service on all parties who have appeared in the case and are ECF system registrants as contemplated by Federal Rule of Civil Procedure

In the event one or more party to this action is excepted from electronic ECF service under the rule, then the foregoing instrument was served upon those excepted part(ies) by serving a copy of the foregoing instrument to each attorney of record (or pro se part(ies) herein at their respective addresses disclosed on the pleadings on the date shown above as follows:

☐ Via United States Mail, proper postage affixed, to:
☐ Via e-mail addressed to:
☐ Via hand delivery to:

Signature _____