IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HUYSER, MATTHEW KINLEY, KENNETH BOYLE, JEFFREY W. CARTER, JWC INVESTMENTS L.C.,<br><br>Defendants. | 4:23-cv-00144-SHL-SBJ<br><br>ORDER GRANTING UNITED STATES' MOTION TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT JAMES HUYSER |

After winning a large tax judgment in the Court of Federal Claims against Alternative Carbon Resources, LLC ("ACR"), the Government seeks to collect against ACR's individual members under state law piercing the corporate veil and fraudulent transfer theories. Defendant James Huyser, one of those individual members, asserted affirmative defenses of statute of limitations, laches, and estoppel. Because these are not viable defenses to the Government's claims, the Court GRANTS the Government's Motion to Strike Affirmative Defenses of Defendant James Huyser.

I.  BACKGROUND.[1]

ACR was formed in 2010 for the ostensible purpose of doing business in the alternative fuel industry. (ECF 1, ¶¶ 2, 23; ECF 8, ¶¶ 2, 23.) At times relevant to this action, Huyser was an individual member of ACR, together with Kenneth Boyle, Matthew Kinley, and Jeffrey W. Carter (collectively, the "Member Defendants"). (ECF 1, ¶¶ 23–24; ECF 8, ¶¶ 23–24.) Throughout 2011, ACR claimed millions of dollars in federal alternative fuel mixture credits. (ECF 1, ¶¶ 2, 19, 37, 54, 115; ECF 8, ¶¶ 2, 19, 37, 54, 115.) The Complaint alleges that when ACR received tax credit payments from the Internal Revenue Service ("IRS"), the Member Defendants caused funds to be paid from ACR to themselves, with Carter directing his share be paid to JWC Investments L.C.,

---

[1] The Court accepts as true the facts set forth by Huyser in his Answer and Affirmative Defenses. Because his pleading includes admissions of fact in response to the Government's Complaint, this Background section often includes citations to the Government's Complaint. Some facts also come from filings and rulings in *Alternative Carbon Resources, LLC v. United States*, 137 Fed. Cl. 1 (2018), which the Court concludes is an appropriate subject for judicial notice given the extent to which the Court of Federal Claims case is embraced by both sides' pleadings.

an entity formed by Carter and in which he held a 99.1% ownership interest. (ECF 1, ¶¶ 17, 93, 96–97, 102–09.)

The Complaint alleges that these transfers occurred "[b]etween March 2011 and April 2012, and usually within a matter of days of receiving each tax credit payment from the IRS . . . ." (Id., ¶ 93.) In total, in 2011 and 2012 ACR distributed at least $10 million to its Members from the $19 million in federal tax credits claimed and received. (Id., ¶¶ 104–06.) ACR made these distributions despite the Member Defendants making only $250 total in capital contributions. (Id., ¶ 109.) These distributions dissipated all of ACR's assets. (Id., ¶ 110.) The Complaint alleges that the Member Defendants knew or should have known at the time of these transfers that they would leave ACR "without assets to pay its creditors, including the United States." (Id., ¶ 111.)

In 2012, the IRS began auditing ACR, ultimately concluding that ACR improperly claimed the tax credits. *Alternative Carbon Res., LLC v. United States*, 137 Fed. Cl. 1, 19 (2018). In April 2014, the IRS issued tax assessments against ACR that included fraud and excessive claim penalties; later, the IRS assessed additional penalties for failure to file returns and pay taxes. *Id.* at 19–20. Under protest, ACR paid portions of the tax and penalties, following which ACR requested a refund and abatement. *Id.* at 20. The IRS did not respond. *Id.* In 2015, ACR filed a lawsuit in the Court of Federal Claims seeking a refund of the partial payment it had made against the excise tax assessment. (ECF 1, ¶ 115, ECF 8 ¶ 115.) ACR also sought a declaration that it was not liable for failure-to-file, failure-to-pay, and fraud tax penalties. *Alternative Carbon*, 137 Fed. Cl. at 20–21. The Government counterclaimed, seeking a money judgment for the full amount of assessed excise taxes plus penalties, less prior payments. *Id.* at 21. (*See also* ECF 1, ¶ 116.) In November 2016, the Department of Justice authorized abatements of the civil fraud, failure-to-file, and failure-to-pay penalties. *Alternative Carbon*, 137 Fed. Cl. at 37. Meaning: the Government did not pursue those penalties in the Court of Federal Claims, although it *did* continue to pursue excessive-claim penalties.

On March 22, 2018, the Court of Federal Claims issued a ruling on the parties' cross-motions for summary judgment, concluding that ACR was not entitled to the alternative fuel mixture credits and entering judgment in the Government's favor for tax assessments of $19,773,393 and excessive claim penalties of $39,546,786. *Alternative Carbon*, 137 Fed. Cl. at 19–20, 37–38. (*See also* ECF 1, ¶ 120.) Huyser and the other Member Defendants participated at least to some degree in the Court of Federal Claims case. (ECF 1, ¶¶ 123, 125–26, 129–31; ECF

2

8, ¶¶ 123, 125–26, 129–31.) The judgment against ACR remains unpaid. (ECF 1, ¶ 132; ECF 8, ¶ 132.)

On May 1, 2023, the Government initiated this action seeking to pierce the corporate veil and obtain money judgments, jointly and severally, against each Member Defendant. (ECF 1, ¶ 1.) Alternatively, the Government seeks to recover from each Member Defendant and JWC for fraudulent transfers from ACR in 2011 and 2012 while the company was allegedly insolvent. (Id.) In his Answer, Huyser raised the affirmative defenses of statute of limitations, laches, and estoppel. (ECF 8, ¶ 184.) The Government moves to strike these affirmative defenses, arguing they are not cognizable against the United States when it acts in its sovereign capacity to collect outstanding federal income tax liabilities. (ECF 17.)

## II.   LEGAL STANDARDS.

The Government brings its motion under Fed. R. Civ. P. 12(f), which permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Recognizing that the statute is permissive and not mandatory, district courts are afforded broad discretion under this rule. *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000). "[A] motion to strike should be granted if it may have the effect of making the trial of the action less complicated, or [it] may have the effect of otherwise streamlining the ultimate resolution of the action." *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 733 (S.D. Iowa 2007) (quotation omitted).

In considering a motion to strike, the court will "view the pleadings in the light most favorable to the pleader." *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *2 (E.D. Mo. July 21, 2008) (quotation omitted). Although there is disagreement among federal district courts, this Court has concluded that the heightened pleading standard recognized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies to affirmative defenses "only when the plaintiff can show a meaningful risk of prejudice from the failure to do so." *Hull Partners, LLC v. Clean Fuels All. Am.*, 642 F. Supp. 3d 809, 829 (S.D. Iowa 2022). This tracks the general requirement under Fed. R. Civ. P. 12(f) for the moving party to show prejudice before the Court will strike an affirmative defense. *See id.* It also reduces the incentive to file "purely semantic" motions to strike that require time from the Court and parties but may achieve "no meaningful efficiency advantage." *Id.* at 829–30. "The prejudice requirement is satisfied if striking the defense would, for example, prevent a party from engaging in

burdensome discovery, or otherwise expending time and resources litigating irrelevant issues that will not affect the case's outcome." *Cynergy Ergonomics*, 2008 WL 2817106, at *2.

### III. LEGAL ANALYSIS.

*A. The Court Strikes Huyser's State Law Statute of Limitations Defenses.*

Huyser argues that since the Government's claims are predicated on state law, the statutes of limitations set forth in the Iowa Code are controlling, including Iowa Code §§ 684.9 (voidable transactions) and 614.1(4) (generally applicable limitations period). The Government, by contrast, argues that 26 U.S.C. § 6502 is the only statute of limitations that matters, and that this action is timely under that provision.

Huyser's position is foreclosed by decades of precedent. "It is well settled that the United States is not bound by state statutes of limitation . . . in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). The Supreme Court articulated its rationale as follows: "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.* at 417. The so-called "*Summerlin* rule" has been adopted by the Eighth Circuit and remains good law. *United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981). It is routinely followed in district courts within the Eighth Circuit. *See, e.g.*, *United States v. Fowler*, No. 4:18-cv-386-DPM, 2020 WL 4720548, *1 (E.D. Ark. Aug. 13, 2020) (holding that federal statute of limitations controls in action by United States to collect taxes on theories of veil piercing and fraudulent transfer); *United States v. Arthur*, No. 4:10-CV-01561-AGF, 2011 WL 4369425, *4 (E.D. Mo. Sept. 19, 2011) (holding that "the United States is not bound by a state statute of limitations when collecting delinquent tax liabilities"); *United States v. Bigalk*, 654 F. Supp. 2d 983, 990–91 (D. Minn. 2009) (concluding that state's "statute of limitations on fraudulent conveyance claims does not apply to the federal government," even though state law governs whether conveyance may be set aside as fraudulent). It is also followed in circuit courts across the country. *See, e.g.*, *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296–97 (11th Cir. 2021) (concluding that *Summerlin* rule precluded application of limitations period in Georgia's fraudulent transfers statutes); *United States v. Patras*, 544 Fed. App'x 137, 143 (3d Cir. 2013) (same as to New Jersey's Fraudulent Transfer Act); *United States v. Holmes*, 727 F.3d 1230, 1235 (10th Cir. 2013) (recognizing that in a tax collection action, "the government is acting in its sovereign capacity in an effort to enforce rights ultimately

4

grounded on federal law. . . . the government's claim is not subject to state statutes of limitations or extinguishment") (internal quotations omitted).

The out-of-circuit district court case cited by Huyser, *United States v. Vellalos*, 780 F. Supp. 705 (D. Haw. 1992), does not change this outcome. The Ninth Circuit has expressly disapproved of *Vellalos*, noting that it "has been criticized by numerous district courts outside the Ninth Circuit, and it also is inconsistent with the holdings of other Courts of Appeal." *Bresson v. Comm'r*, 213 F.3d 1173, 1178 n.13 (9th Cir. 2000). The Ninth Circuit explained that although the Government might use state fraudulent transfer laws as a vehicle for collecting a debt, the "underlying right to collect money . . . clearly derives from the operation of federal law (i.e., the Internal Revenue Code)." *Id.* at 1178. For this reason, and because the Government "unquestionably is acting in its sovereign capacity" when it attempts to collect taxes, the *Summerlin* rule applies and state statutes of limitation are of no effect. *Id.*

The Ninth Circuit's analysis is fully in line with the Eighth Circuit's decision in *United States v. Wurdemann*, which, of course, this Court must follow. The clear state of the law in the Eighth Circuit (and many others) is that the *Summerlin* rule applies when, as here, the Government is acting in a sovereign capacity to collect federal taxes. *See Wurdemann*, 663 F.2d at 51. Accordingly, the Court strikes Huyser's state law statute of limitations defenses.

B.  *The Court Strikes Huyser's Federal Law Statute of Limitations Defenses.*

Turning to federal law, Huyser argues that the applicable statute of limitations is found in 26 U.S.C. § 6901, which governs transferee liability and imposes a one-year limitations period on claims against an initial transferee. The Government's theory, by contrast, is that this case is governed by the ten-year[2] statute of limitations in 26 U.S.C. § 6502, measured from the notice of assessment, without the need for a separate assessment against Huyser.

Case law supports the Government's position. In *United States v. Henco Holding Corp.*, the Eleventh Circuit considered the intersection of sections 6901 and 6502 in a case where the government sought to reduce a corporation's unpaid tax liability to judgment and bring fraudulent transfer claims against the corporation's owners. 985 F.3d 1290 (11th Cir. 2021). Recognizing that "the government has a formidable arsenal of collection tools," *Henco Holding Corp.* concluded that where the government timely assesses tax liability against the original taxpayer, it is not

---

[2] The Government argues that the ten-year period is subject to tolling in the circumstances presented here, but this appears to be immaterial because the instant case was filed within ten years of the notice of assessment against ACR.

required to separately assess the transferees under section 6901 or comply with the one-year limitation period contained therein. *Id.* at 1297 (internal quotation omitted), 1305. The court explained that section 6901 "is simply an additional tool for the government to assess and collect from a transferee the tax liabilities owed by a transferor. Thus, the government can proceed against the [individual] Defendants as transferees under § 6502." *Id.* at 1305.

The Eleventh Circuit reached this conclusion following a detailed review of case law, including *Leighton v. United States*, 289 U.S. 506 (1933). In *Leighton*, the Supreme Court interpreted language nearly identical to section 6901 to conclude the government could sue a corporation's shareholders as transferees without issuing a separate assessment against them. Lower courts—including the Eighth Circuit—have consistently reached the same result, often applying *Leighton*. *See, e.g.*, *United States v. Scherping*, 187 F.3d 796, 800–01 (8th Cir. 1999) (holding that action against alleged fraudulent transferee was not untimely); *Payne v. United States*, 247 F.2d 481, 484–85 (8th Cir. 1957) (holding that predecessor to section 6901 did not "preclude the bringing . . . of a plenary suit against [an unassessed] transferee to subject property received by him from a taxpayer, to the payment of income taxes owned by the latter, under the trust fund doctrine"); *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972) ("[T]he collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors."). More recently, the Supreme Court reached a similar conclusion again in *United States v. Galetti*, 541 U.S. 114, 122–23 (2004), which held that the Government is not required to "make separate assessments of a single tax debt against persons or entities secondarily liable for that debt in order for § 6502's extended statute of limitations to apply to those persons or entities." *Leighton*, *Galetti*, and their progeny show that Huyser's attempt to rely on section 6901 fails as a matter of law. The Court therefore strikes that defense to the extent Huyser was attempting to raise it.

C. The Court Strikes Huyser's Laches Defense.

For similar reasons, the Court strikes Huyser's affirmative defense of laches. A long line of cases holds that "the United States is not . . . subject to the defense of laches in enforcing its rights." *Wurdemann*, 663 F.2d at 51 (quoting *Summerlin*, 310 U.S. at 416). *See United States v. Hamed*, 976 F.3d 825, 831 (8th Cir. 2020); *United States v. Brown*, 835 F.2d 176, 180 (8th Cir. 1987) ("[T]he defenses of limitations and laches cannot be asserted against the sovereign.");

6

*United States v. Ulvedal*, 372 F.2d 31, 35 (8th Cir. 1967). This is because, "in its efforts to collect taxes, the United States unquestionably is acting in its sovereign capacity." *Bresson*, 213 F.3d at 1178. Huyser does not cite any precedent to the contrary except the District of Hawaii decision in *Vellalos*, which, as noted above, is not good law. Laches is therefore not a viable defense. *See Wurdemann*, 663 F.2d at 51.

D.  *The Court Strikes Huyser's Estoppel Defense.*

Finally, the Court strikes Huyser's affirmative defense of estoppel. Huyser's Answer and Affirmative Defenses indicate that his estoppel defense is based entirely on the timeliness of the Government's claims, as he alleges that the Government failed to act for more than ten years after the tax credits were issued and distributions were made to the Member Defendants. (ECF 8, ¶ 184(d).) In responding to the Government's Motion to Strike, Huyser similarly relies entirely on his arguments supporting the statute of limitations defense when addressing the estoppel defense. For reasons explained above, those arguments are unpersuasive and inconsistent with governing Eighth Circuit precedent. The Court therefore strikes Huyser's estoppel defense along with his statute of limitations defenses.

IV.  **CONCLUSION**.

Because the affirmative defenses of statute of limitations, laches, and estoppel are not viable, the Court GRANTS the Government's Motion to Strike (ECF 17).

**IT IS SO ORDERED.**

Dated: October 2, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE