IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HUYSER; MATTHEW KINLEY; KENNETH BOYLE; JEFFREY W. CARTER; and JWC INVESTMENTS, L.C.,<br><br>Defendants. | 4:23-cv-00144-SHL-SBJ<br><br>ORDER DENYING<br>MOTION TO DISMISS |

After winning a large judgment in the Court of Federal Claims against Alternative Carbon Resources, LLC ("ACR"), the Government seeks to pierce the corporate veil and collect from ACR's former members. Defendants Jeffrey W. Carter and JWC Investments, L.C. ("JWC") argue, however, that the Government conceded the absence of fraud in the Court of Federal Claims case and therefore is barred by issue and claim preclusion from seeking to recover from them on any fraud-related theories. The Court disagrees because the alleged "fraud" at issue here is different than the fraud theory the Government chose to forego in the Court of Federal Claims, and thus issue and claim preclusion do not apply. Indeed, in the earlier proceeding, the Government largely could not have raised the claims it is now pursuing. The Court therefore DENIES Carter's and JWC's Motion to Dismiss.

**I.   BACKGROUND.**[1]

ACR was formed in 2010 for the ostensible purpose of doing business in the alternative fuel industry. (ECF 1, ¶¶ 2, 23.) At times relevant to this action, Carter was an individual member of ACR, together with James Huyser, Matthew Kinley, and Kenneth Boyle (collectively, the "Member Defendants"). (Id., ¶ 1.) Throughout 2011, ACR claimed millions of dollars in federal alternative fuel mixture credits. (Id., ¶¶ 3, 57–60.)  When ACR received tax credit payments from the Internal Revenue Service ("IRS"), the Member Defendants caused funds to be paid from ACR

---

[1] Because the plaintiff's allegations must be treated as true for purposes of a Motion to Dismiss, the facts in this section come primarily from the Government's Complaint. Some facts also come, however, from filings and rulings in *Alternative Carbon Resources, LLC v. United States*, 137 Fed. Cl. 1 (2018), which both sides agree is an appropriate subject for judicial notice.

1

to themselves, with Carter directing his share be paid to JWC, an entity formed by Carter and in which he held a 99.1% ownership interest. (Id., ¶¶ 17, 93, 96–97, 102–09.)

In 2012, the IRS began auditing ACR, ultimately concluding that ACR improperly claimed the tax credits. *Alternative Carbon Res., LLC v. United States*, 137 Fed. Cl. 1, 19 (2018). In April 2014, the IRS issued tax assessments against ACR that included fraud and excessive claim penalties; later, the IRS assessed additional penalties for failure to file returns and pay taxes. *Id*. at 19–20. Under protest, ACR paid portions of the tax and penalties, following which ACR requested a refund and abatement. *Id*. at 20. The IRS did not respond. *Id*. In 2015, ACR filed a lawsuit in the Court of Federal Claims seeking a refund of the partial payment it had made against the excise tax assessment. (ECF 1, ¶ 115.) ACR also sought a declaration that it was not liable for failure-to-file, failure-to-pay, and fraud tax penalties. *Alternative Carbon*, 137 Fed. Cl. at 20–21. The Government counterclaimed, seeking a money judgment for the full amount of assessed excise taxes plus penalties, less prior payments. (ECF 1, ¶ 116.) In November 2016, the Department of Justice authorized abatements of the civil fraud, failure-to-file, and failure-to-pay penalties. *Alternative Carbon*, 137 Fed. Cl. at 37. Meaning: the Government did not pursue those penalties in the Court of Federal Claims, although it *did* continue to pursue excessive-claim penalties.

On March 22, 2018, the Court of Federal Claims issued a ruling on the parties' cross-motions for summary judgment, concluding that ACR was not entitled to the alternative fuel mixture credits and entering judgment in the Government's favor for excise tax assessments of $19,773,393 and excessive claim penalties of $39,546,786. (ECF 1, ¶ 120.) Because the Government abated the civil fraud, failure-to-file, and failure-to-pay penalties, the Court dismissed ACR's claims for abatement as moot and granted summary judgment in ACR's favor with respect to any such penalties that were not abated. *Alternative Carbon*, 137 Fed. Cl. at 37. The Federal Circuit affirmed the judgment. *Alternative Carbon Res., LLC v. United States,* 939 F.3d 1320 (Fed. Cir. 2019). Carter and the other Member Defendants participated at least to some degree in the Court of Federal Claims case. (ECF 1, ¶¶ 123–31.) The judgment against ACR remains unpaid. (Id., ¶ 132.)

On May 1, 2023, the Government initiated this action seeking to pierce the corporate veil and obtain money judgments, jointly and severally, against each Member Defendant. (Id., ¶ 1.) Alternatively, the Government seeks judgments against each Member Defendant and JWC for receiving fraudulent transfers from ACR while the company was insolvent. (Id.) Carter and JWC

2

(collectively, the "Carter Defendants") now move to dismiss "all allegations of fraud against them" under Federal Rule of Civil Procedure 12(b)(6). (ECF 35, p. 1.) The Carter Defendants assert that the Government is prevented by issue and claim preclusion from "relitigating the issue of fraud" in light of the decision of the Court of Federal Claims to dismiss as moot and/or grant summary judgment on the issue of fraud tax penalties. (Id.) The Carter Defendants ask the Court to dismiss the Complaint "to the extent it alleges claims of fraud that were previously decided" in the Court of Federal Claims. (Id., p. 2.)

## II.     LEGAL STANDARD.

When ruling on a motion to dismiss, the Court must "accept the well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court may draw on its "judicial experience and common sense" in evaluating plausibility. *Id*. at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

It is well established that the Court may consider materials outside the pleadings that are "necessarily embraced by the complaint." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Id*. (internal quotation omitted). "[C]ourts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)).

The Government's Complaint repeatedly references the refund suit in the Court of Federal Claims. (ECF 1, ¶¶ 117–21). Indeed, the whole point of this case is that the Government wants to pierce the corporate veil to collect on the judgment from that suit or use state fraudulent transfer laws to recoup payments made by ACR to Member Defendants and JWC. Filings and rulings in the Court of Federal Claims are therefore integral to the Government's claims and embraced by the pleadings. Moreover, no one disputes the authenticity of those filings and rulings; to the contrary, both sides ask the Court to take judicial notice of them, many of which are attached to the parties' briefs (ECF 35; ECF 46). The Court therefore will take judicial notice of the filings and rulings from the Court of Federal Claims as appropriate to determine which issues were raised and decided in that case. *See United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012).

### III.   LEGAL ANALYSIS.

*A.  Issue Preclusion Does Not Bar the Government's Claims.*

The doctrine of issue preclusion, also known as collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation omitted). The doctrine "protects [the party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). Although the Government's piercing the corporate veil and fraudulent transfer claims arise under state law, both sides appear to assume that federal law governs the issues of claim and issue preclusion. The Court will do the same (although the result would be the same under state law).

In the Eighth Circuit, issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) (quotation omitted). The party alleging preclusion bears the burden of proving each element. *Taylor*, 553 U.S. at 907. The Government

agrees that the first (privity[2]) and fourth (final judgment) elements are satisfied but argues the other three are not. For reasons set forth below, the Court agrees and therefore concludes that issue preclusion is not an appropriate basis to dismiss any portion of the Government's claims against the Carter Defendants.

    1. <u>The Issues in the Current and Prior Actions Are Not the Same.</u>

The Carter Defendants argue that the "[t]he claim of fraud in the prior suit is the same as the issues of fraud alleged in this suit" because courts must look for indicia of fraud both in the context of tax fraud penalties and under piercing the corporate veil and fraudulent transfer doctrines. (ECF 35-1, p. 9.) The Court disagrees. Although there may be overlap in facts relevant to the two areas of law, the issues are fundamentally different for collateral estoppel purposes.

Pursuant to 26 U.S.C. § 6663(a), a taxpayer may be subject to a fraud penalty "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud. . . ." As the statutory language makes clear, the focus of an action relating to fraud penalties is generally the taxpayer's submissions to the IRS. *See, e.g.*, *McGraw v. Comm'r*, 384 F.3d 965, 970 (8th Cir. 2004) (analyzing whether the taxpayer "submitted fraudulent income tax returns"). The purpose of such an action is to determine the amount of the money (if any) the taxpayer owes for fraud penalties on top of what the taxpayer owes in base taxes (or, in this case, refunds of tax credits). *See id.* at 970–71. "Tax fraud is established when a taxpayer engages in intentional wrongdoing and has the 'specific purpose to evade taxes the taxpayer knows or believes to be owing.'" *Id.* at 970 (quoting *Day v. Comm'r*, 975 F.2d 534, 538 (8th Cir. 1992).

By contrast, the doctrines of piercing the corporate veil and fraudulent transfer do not inherently have anything to do with whether a taxpayer intended to evade taxes, nor are they designed to figure out how much a taxpayer owes. In fact, those doctrines do not necessarily have anything to do with taxes at all. Instead, piercing the corporate veil and fraudulent transfer doctrines are concerned with *who is obligated to pay a corporate debt*, regardless of the nature or amount of that debt. The focus is therefore on things like adherence to the corporate form, the company's solvency and purpose for existence, and the timing of transfers. *See, e.g.*, *In re*

---

[2] Although they are not otherwise the subject of the Carter Defendants' Motion to Dismiss, Defendants Matthew Kinley and Kenneth Boyle filed a "Joint Response" asserting that, as minority investors, they were not in privity with ACR for res judicata purposes. (ECF 50, p. 3.) In response, the Government clarified that it does not seek to hold Carter's admissions against Kinley and Boyle but does believe the Court of Federal Claims decision has preclusive effect against them. (ECF 52, p. 4.) The Court does not need to resolve this dispute to decide the Motion to Dismiss.

*Marriage of Ballstaedt*, 606 N.W.2d 345, 349 (Iowa 2000); *Prod. Credit Ass'n of Midlands v. Shirley*, 485 N.W.2d 469, 472 (Iowa 1992). It follows that a corporate taxpayer's shareholders can be liable for fraudulent transfers or under a piercing the corporate veil theory even when there was no attempt to evade taxes, and a taxpayer can be liable for tax fraud penalties even when there is no basis to pierce the corporate veil or recover fraudulent transfers. *See United States v. Evans*, No. SA-05-CV-099-XR, 2007 WL 4206205, at *2 (W.D. Tex. Nov. 27, 2007) (rejecting collateral estoppel argument where Tax Court judgment involved "liability or non-liability relating to particular tax years" but later case "focus[ed] on [defendant's] decision to distribute assets that rendered the estate insolvent and prevented it from satisfying its unpaid debts to the Government"); *see also Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984) ("Fraud is not a prerequisite for piercing the corporate veil.").

There is, to be sure, potential overlap between the facts relevant to tax fraud penalties and those relevant to the piercing the corporate veil and fraudulent transfer doctrines. For example, the Government could have attempted to obtain fraud tax penalties in the Court of Federal Claims by trying to argue that ACR was a sham entity that existed for no purpose other than to deceive the IRS into giving tax credits. The same evidence also would be relevant to a claim for piercing the corporate veil, which is appropriate under Iowa law when "the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." *Briggs Transp. Co. v. Starr Sale Co.*, 262 N.W.2d 805, 810 (Iowa 1978). This factual overlap, however, "is not germane to collateral estoppel analysis, which focuses not on whether the *facts* underlying the cases are the same, but instead on whether the same *issue* has been conclusively determined in a prior decision." *In re Prosser*, 534 F. App'x 126, 129 (3d Cir. 2013).

Here, the issues are very different. Had the Government pursued tax fraud penalties, the Court of Federal Claims would have focused on ACR's interactions with the IRS to determine whether there was an intent to evade taxes in the sense of obtaining tax credits ACR was not lawfully entitled to obtain. If successful, the Government's efforts would have resulted in a larger judgment against ACR. The judgment would not have been against ACR's Member Defendants or JWC, nor would it have revolved around ACR's adherence to corporate formalities, solvency, or history of transfers to its member. It is only now, in the present case, that those issues are squarely teed up as part of the Government's effort to determine who can be held liable for ACR's tax

6

obligations (as opposed to the *amount* of those tax obligations). "Thus, although the same factual scenario gave rise to the two actions, the issues decided in each were entirely distinct." *Id.*

To the extent there is overlap between the Court of Federal Claims and the present case, it is just as likely to work against the Carter Defendants as in their favor. Although it was not asked to decide the issue of fraud penalties, the Court of Federal Claims made the following findings: "[ACR] cannot prove that its alternative fuel mixtures were used as a fuel"; "the economic reality of the exchanges was that [ACR] paid its customers to take its alternative fuel mixtures"; "[ACR's] transactions were not bona fide sales supported by consideration." *Alternative Carbon*, 137 Fed. Cl. at 26, 28; *see also Alternative Carbon*, 939 F.3d at 1334 ("Alternative Carbon's partners should have recognized that receiving millions of dollars in tax credits for transferring feedstock from one entity to another—while mixing in a meaningless amount of diesel along the way—was 'too good to be true.'"). Although not conclusive, these findings are suggestive of fraud and thus undermine the Carter Defendants' attempt to characterize the Court of Federal Claims as having "issued a finding that ACR was not used to promote or perpetuate fraud." (ECF 35-1, p. 11.) The more accurate phrasing is that the Court of Federal Claims did not directly conclude there was fraud, as the issue was not squarely presented. The Court will leave for another day the question of whether or to what extent the Court of Federal Claims' findings have preclusive effect in the Government's favor; for now, the Court simply concludes that issue preclusion does not bar the Government from pursuing fraud theories in this case. *See In re Wigley*, 951 F.3d 967, 971 (8th Cir. 2020) ([B]ecause this opinion does not address the same issue as the state court judgment, collateral estoppel does not apply.").

2. Fraud Was Not "Actually Litigated" in the Court of Federal Claims.

For similar reasons, the Court has little difficulty concluding that the Carter Defendants cannot establish the third element of issue preclusion: that the issue of fraud was "actually litigated" in the prior proceeding. To assess whether an issue has been "actually litigated," the Eighth Circuit provides the following guidance:

> The inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. An issue lurking in the record but not raised or decided is not actually litigated. A party may choose not to litigate a particular issue for various reasons, including cost, strategy, and the difficulty of obtaining evidence. We thus agree with other circuits that for an issue to be "actually

> litigated," the issue must have been "raised, contested, and submitted for determination" in the prior proceeding, and it must be determined.

*Fofana v. Mayorkas*, 4 F.4th 668, 671 (8th Cir. 2021) (internal citations omitted). "[C]ollateral estoppel generally does not apply to issues that were uncontested in an earlier proceeding." *Islam v. Kelley*, No. 1:17-CV-22237-JLK, 2019 WL 2716318, at *2 (S.D. Fla. June 28, 2019), *aff'd sub nom. Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333 (11th Cir. 2021). Similarly, "the general rule is well-established that default judgments lack issue-preclusive effect." *In re Adler, Coleman Clearing Corp.*, 205 F. App'x 856, 857 (2d Cir. 2006).

The issue of tax fraud penalties was certainly "lurking in the record" in the Court of Federal Claims in the sense that the IRS included fraud penalties in the original assessment against ACR, followed by ACR asking for a judicial declaration that no such penalties were appropriate (ECF 35-2, pp. 1, 15). But the issue was not "raised, contested, and submitted for determination." *Fofana*, 4 F.4th at 671. For example, tax fraud penalties were not mentioned in the Government's counterclaims (ECF 1, ¶¶ 116, 120; ECF 46-1, pp. 7–8), nor were they listed in the "issues presented" by ACR on summary judgment. (ECF 35-4, p. 4.) Instead, the Government chose to forego civil fraud penalties:

> In its request for relief, ACR asks this Court to abate the assessments for civil fraud penalties, and the failure to file and failure to pay penalties, as well as to refund amounts paid for these respective penalties. As plaintiff admits in its brief, the government conceded these claims in November of 2016. To the extent that ACR made any payments towards those penalties, those payments were applied to ACR's outstanding liabilities and subject to any offsets under 26 U.S.C § 6402. Thus, this Court should dismiss these claims as moot.

(ECF 35-5, p. 24). The Court of Federal Claims's perfunctory disposition of the issue of civil fraud penalties—i.e., treating them as "moot"—is clearly insufficient to satisfy the "actually litigated" element of issue preclusion.

The Eighth Circuit's decision in *Lovell v. Mixon* is instructive. 719 F.2d 1373, 1377 (8th Cir. 1983). There, the bankruptcy trustee sought, in separate actions, to: (i) set aside property transfers, and (ii) prevent the debtor's discharge. *Id.* The trustee alleged intentional fraud in both actions, but the issue never actually litigated in the actions to set aside the property transfers, which instead were settled and dismissed or resolved following a hearing that did not require the court to decide intent to defraud. *Id.* The debtor nonetheless argued that collateral estoppel prevented the bankruptcy court from considering fraud as a basis for preventing his discharge. *Id.* The Eighth

Circuit disagreed: "[t]he intentional fraud issue, central to the proceeding to prevent the Debtor's discharge, was never decided by the bankruptcy court in the suit to set aside property transfers. . . . The court was not precluded, under principles of collateral estoppel, from considering and deciding an issue never before resolved." *Id.* The same logic applies here. The Court of Federal Claims never decided whether ACR or its Members committed fraud; instead, it simply declined to impose fraud tax penalties based on the Government's decision to forego them. Issue preclusion does not apply in these circumstances. *See id.*; *see also In re Marlar*, 267 F.3d 749, 754–55 (8th Cir. 2001) (refusing to apply collateral estoppel to fraudulent transfer issue despite prior litigation over same transaction).

The Fourth Circuit reached a similar conclusion in *United States v. Wilson* in the context of IRS claims against an individual taxpayer whose tax debts allegedly arose in connection with an entity described as the taxpayer's "alter ego." 974 F.2d 514, 516 (4th Cir. 1992). In the taxpayer's prior bankruptcy proceeding, the trustee sought to recover from the *entity's* creditors for the benefit of the *taxpayer's* estate under an alter-ego-type theory. *Id.* at 519. The bankruptcy court rejected the trustee's position on legal grounds, concluding there was "no right of action allowing a party to 'pierc[e] the corporate veil in reverse.'" *Id.* (quoting *Guinee v. Heydt*, 90 B.R. 208, 214 (Bankr. E.D. Va. 1988)). When the Government later sued the individual taxpayer in a separate case for tax obligations arising in connection with the same entity, the taxpayer argued the suit was precluded by collateral estoppel because the bankruptcy court had rejected the alter ego theory. *See id.* The Fourth Circuit disagreed because the bankruptcy court "did not decide whether [the entity] was in fact the alter ego of [the taxpayer]," but rather dismissed the trustee's theory for legal reasons that did not apply to the IRS. *Id.* Again, similar logic applies here. The Court of Federal Claims did not decide the issue of fraud because the Government chose to forego fraud penalties, apparently believing that $59-million-plus was enough for one judgment. Issue preclusion does not prevent the Government from now pursuing recovery of that judgment from the Member Defendants and JCW under piercing the corporate veil and fraudulent transfer theories. *See id.*

### 3. Fraud-Related Findings Were Not "Essential to the Prior Judgment."

Finally, for similar reasons, the Carter Defendants have not shown that the issue of fraud was essential to the judgment in the Court of Federal Claims and thus cannot satisfy the fifth element of issue preclusion. The purpose of the Court of Federal Claims case was to determine

9

whether ACR had tax obligations and, if so, in what amount. Given the Government's decision not to seek fraud tax penalties, the Court of Federal Claims did not need to decide whether ACR engaged in the type of fraudulent conduct that would warrant such penalties, nor whether the entity or Member Defendants engaged in the type of fraud that might give rise to liability under the piercing the corporate veil or fraudulent transfer doctrines. The issue of fraud therefore was not decided at all, much less in a way that was "essential to the prior judgment." *See Towe v. Martinson*, 195 B.R. 137, 144 (D. Mont. 1996) ("[T]he issue of whether Towe Farms was an alter ego of Edward Towe was not necessary to the litigation in Tax Court and was not litigated. The Tax Court was to determine Edward Towe's federal income tax liability for the years 1969–1982.").

B. *Claim Preclusion Does Not Bar the Government's Claims.*

The Carter Defendants argue, in the alternative, that claim preclusion prevents the Government from pursing fraud-related theories. Under the doctrine of claim preclusion, also known as res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994) (quoting *Montana*, 440 U.S. at 153). This is a better argument for the Carter Defendants than issue preclusion because claim preclusion does not require "actual litigation" of an issue; instead, parties are prevented from relitigating "a claim on grounds that were raised **or could have been raised** in the prior action." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990) (emphasis added). Claim preclusion applies when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). In addition, the party against whom claim preclusion is asserted "must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect." *Id.*

The Government does not contest the first three elements but disputes the fourth. In the Government's view, a claim seeking to establish ACR's liability for taxes is different than an action seeking to determine whether the Government can collect that liability from the Member Defendants under veil-piercing and fraudulent transfer theories. The Court agrees, for two reasons.

First, and most fundamentally, the Carter Defendants provide no reason to believe the Government could have brought them or the other Member Defendants into the Court of Federal Claims case on veil-piercing or fraudulent transfer theories. Under federal law, the United States

is generally authorized only to file counterclaims against the "plaintiff," not to bring in third parties. *See* 28 U.S.C. § 1503; 28 U.S.C. § 2508. Accordingly, although the Rules of the Court of Federal Claims are generally modeled on the Federal Rules of Civil Procedure, Court of Federal Claims Rules 13, 14, and 20 state "Not used" in each place where the Federal Rules would permit joinder of claims against third parties. In their place, at most, Court of Federal Claims Rule 14 simply contains provisions for giving "notice" to potentially interested third parties, who then have the option of choosing to intervene. Under Iowa and federal cases alike, claim preclusion does not apply when a party could not have asserted a claim in an earlier action. *See, e.g.*, *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 401 (Iowa 1998) ("[C]laim preclusion does not apply if the claim could not have been presented in the first action based upon subject matter jurisdiction limitations."); *Smith v. Johnson*, 779 F.3d 867, 870 (8th Cir. 2015) (holding that claim preclusion did not apply because plaintiff's cause of action could not have been raised in prior tribunal).

<u>Second</u>, and relatedly, the Government's veil-piercing and fraudulent transfer claims are not the same as the earlier claim to establish ACR's tax liability. "[W]hether a second lawsuit is precluded turns on whether its claims arise out of 'the same nucleus of operative facts' as the prior claim." *Costner*, 153 F.3d at 673. In evaluating whether the two causes of action are the same, the court will consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Lane*, 899 F.2d at 742 (quoting Restatement (Second) of Judgments § 24 (1980)). The Eighth Circuit recognizes that "the test would seem to be whether *the wrong for which redress is sought* is the same in both actions," *Costner*, 153 F.3d at 674, although "[t]he legal theories of the two claims are relatively insignificant because a litigant cannot attempt to relitigate the same claim under a different legal theory of recovery." *Gurley*, 43 F.3d at 1195.

In *Environmental Dynamics, Inc. v. Robert Tyer & Associates, Inc.*, Judge Bennett described the difference, for claim preclusion purposes, between claims to establish liability and claims to collect on those liabilities under alter ego or similar theories:

> To put it another way, whether the shareholder can be held liable under the "alter ego" theory in the "subsidiary" lawsuit involves factual inquiries entirely separate from the factual issue of the debt of the corporation established in the "primary" lawsuit. The first lawsuit considered the facts establishing patent infringement, while the present lawsuit focuses on the factual relationship between the shareholder and his corporation, in the first

11

> instance, and then upon whether honoring the corporate fiction leads to an injustice to the plaintiff, in the second instance. In short, the "alter ego" liability of the shareholder is a different substantive question from the liability of the corporation for patent infringement, and furthermore arises from a different nucleus of operative facts.

929 F. Supp. 1212, 1244 (N.D. Iowa 1996) (citations omitted). The Court agrees in full with Judge Bennett's cogent analysis, which is consistent with other federal and Iowa cases. *See Geneva Corp. Fin. v. G.B.E. Liquidation Corp.*, 598 N.W.2d 331, 335 (Iowa Ct. App. 1999) ("The facts necessary to establish liability under the contract are different facts than those necessary to show a fraudulent transfer made to defeat the collection of the judgment in the contract suit."); *Abbott v. Okoye*, 364 F. App'x 327, 329 (9th Cir. 2010) ("The injury to Okoye from Abbott's fraudulent transfer, and the alleged injury to Abbott from Okoye's purported breach of contract, do not implicate the same right, and the action thus does not seek to relitigate the same cause of action."); *E. Mins. & Chemicals Co. v. Mahan*, 225 F.3d 330, 338–39 (3d Cir. 2000) (refusing to apply claim preclusion to action seeking to establish personal liability for corporate debt because the plaintiff "never litigated any cause of action against [the defendant] that sought what its current claim would accomplish").

The holdings of these cases squarely apply here. In the Court of Federal Claims, the parties litigated whether ACR was entitled to claim alternative fuel mixture credits and/or subject to IRS penalties. The purpose was to figure out whether ACR owed taxes and, if so, in what amount. The Court of Federal Claims decided these issues by analyzing federal tax laws and regulations to determine the meaning of terms like "alternative fuel," "taxable fuel" and "sale." *Alternative Carbon*, 137 Fed. Cl. at 4–6. Then, the court considered ACR's products and processes to determine whether its mixtures were used as fuel; whether the mixture was "sold"; and whether ACR otherwise had reasonable cause for claiming the credits. *Id.* at 24, 26, 34. The court made findings regarding the substance of the alternative fuel mixtures and their use in the anaerobic digestion process, as well as assessing ACR's alleged reliance on the advice of third parties.

The present case focuses on the analytically distinct questions of who is responsible for ACR's debts and whether ACR made transfers to Member Defendants while insolvent. True, there is likely to be some factual overlap between the two cases as it pertains to the formation and legitimacy of ACR as a business. Nonetheless, "[a]lthough some of the descriptions of certain events and particular relationships are common to both claims, the theory of the case and relief sought in [the Government's] instant complaint are markedly different from those [in the Court of

Federal Claims].» *Mahan*, 225 F.3d at 338. It follows that claim preclusion does not foreclose or limit the Government from pursuing fraud-related theories against the Carter Defendants. *See id.*; *Geneva Corp.*, 598 N.W.2d at 335; *Env't Dynamics,* 929 F. Supp. at 1244.

## IV. CONCLUSION.

The Carter Defendants have not established that issue or claim preclusion bars any portion of the Government's claims, and thus their Motion to Dismiss (ECF 35) is DENIED.

**IT IS SO ORDERED.**

Dated: October 2, 2023

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE