IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JAMES HUYSER, MATTHEW KINLEY, KENNETH BOYLE, JEFFREY W. CARTER, JWC INVESTMENTS L.C.,<br><br>Defendants. | 4:23-cv-00144-SHL-SBJ<br><br>ORDER GRANTING UNITED STATES' MOTION TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANT KENNETH BOYLE |

After winning a large tax judgment in the Court of Federal Claims against Alternative Carbon Resources, LLC ("ACR"), the Government seeks to collect against ACR's individual members under state law piercing the corporate veil and fraudulent transfer theories. Defendant Kenneth Boyle, one of those individual members, asserted affirmative defenses of statutes of limitations and laches. Because neither is a viable defense to the Government's claims, the Court GRANTS the Government's Motion to Strike Affirmative Defenses of Defendant Kenneth Boyle.

I.   BACKGROUND.[1]

ACR was formed in 2010 for the ostensible purpose of doing business in the alternative fuel industry. (ECF 1, ¶ 2; ECF 19, ¶ 2.) At times relevant to this action, Defendant Kenneth Boyle was an individual member of ACR, together with James Huyser, Matthew Kinley, and Jeffrey W. Carter (collectively, the "Member Defendants"). (ECF 1, ¶¶ 15, 24; ECF 19, ¶¶ 15, 24.) Throughout 2011, ACR claimed millions of dollars in federal alternative fuel mixture credits. (ECF 1, ¶¶ 2, 19, 54, 114; ECF 19 ¶¶ 2, 19, 54, 114.) The Complaint alleges that when ACR received tax credit payments from the Internal Revenue Service ("IRS"), the Member Defendants caused funds to be paid from ACR to themselves, with Carter directing his share be paid to JWC Investments L.C., an entity formed by Carter and in which he held a 99.1% ownership interest. (ECF 1, ¶¶ 17, 93, 96–97, 102–09.)

---

[1] The Court accepts as true the facts set forth by Boyle in his Answer and Affirmative Defenses. Because his pleading includes admissions of fact in response to the Government's Complaint, this Background section often includes citations to the Government's Complaint. Some facts also come from filings and rulings in *Alternative Carbon Resources, LLC v. United States*, 137 Fed. Cl. 1 (2018), which the Court concludes is an appropriate subject for judicial notice given the extent to which the Court of Federal Claims case is embraced by both sides' pleadings.

1

The Complaint alleges that these transfers occurred "[b]etween March 2011 and April 2012, and usually within a matter of days of receiving each tax credit payment from the IRS . . . ." (Id., ¶ 93.) In total, in 2011 and 2012 ACR distributed at least $10 million to its Members from the $19 million in federal tax credits claimed and received, with Boyle receiving $800,000 of that amount. (Id., ¶¶ 104–06.) ACR made these distributions despite the Member Defendants making only $250 total in capital contributions. (Id., ¶ 109.) These distributions dissipated all of ACR's assets. (Id., ¶ 110.) The Complaint alleges that the Member Defendants knew or should have known at the time of these transfers that they would leave ACR "without assets to pay its creditors, including the United States." (Id., ¶ 111.)

In 2012, the IRS began auditing ACR, ultimately concluding that ACR improperly claimed the tax credits. *Alternative Carbon Res., LLC v. United States*, 137 Fed. Cl. 1, 19 (2018). In April 2014, the IRS issued tax assessments against ACR that included fraud and excessive claim penalties; later, the IRS assessed additional penalties for failure to file returns and pay taxes. *Id.* at 19–20. Under protest, ACR paid portions of the tax and penalties, following which ACR requested a refund and abatement. *Id.* at 20. The IRS did not respond. *Id.* In 2015, ACR filed a lawsuit in the Court of Federal Claims seeking a refund of the partial payment it had made against the excise tax assessment. (ECF 1, ¶ 115; ECF 19, ¶ 115.) ACR also sought a declaration that it was not liable for failure-to-file, failure-to-pay, and fraud tax penalties. *Alternative Carbon*, 137 Fed. Cl. at 20–21. The Government counterclaimed, seeking a money judgment for the full amount of assessed excise taxes plus penalties, less prior payments. *Id.* at 21. (*See also* ECF 1, ¶ 116; ECF 19, ¶ 116.) In November 2016, the Department of Justice authorized abatements of the civil fraud, failure-to-file, and failure-to-pay penalties. *Alternative Carbon*, 137 Fed. Cl. at 37. Meaning: the Government did not pursue those penalties in the Court of Federal Claims, although it *did* continue to pursue excessive-claim penalties.

On March 22, 2018, the Court of Federal Claims issued a ruling on the parties' cross-motions for summary judgment, concluding that ACR was not entitled to the alternative fuel mixture credits and entering judgment in the Government's favor for tax assessments of $19,773,393 and excessive claim penalties of $39,546,786. *Alternative Carbon*, 137 Fed. Cl. at 19–20, 37–38. (*See also* ECF 1 ¶ 120; ECF 19, ¶ 120.) Boyle and the other Member Defendants participated at least to some degree in the Court of Federal Claims case. (ECF 1, ¶¶ 126–28; ECF 19, ¶¶ 126–28.) The judgment against ACR remains unpaid. (ECF 1, ¶ 132; ECF 19, ¶ 132.)

On May 1, 2023, the Government initiated this action seeking to pierce the corporate veil and obtain money judgments, jointly and severally, against each Member Defendant. (ECF 1.) Alternatively, the Government seeks to recover from each Member Defendant and JWC for fraudulent transfers from ACR in 2011 and 2012 while the company was allegedly insolvent. (Id.) In his Answer, Boyle raised the affirmative defenses of statute of limitations and laches.[2] (ECF 19, p. 47.) The Government moves to strike these affirmative defenses, arguing that "state statute of limitations and laches are not cognizable defenses against the United States in this action brought in the United States' sovereign capacity to collect outstanding federal income tax liabilities." (ECF 28, p. 1.)

## II.  LEGAL STANDARDS.

The Government brings its motion under Fed. R. Civ. P. 12(f), which permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Recognizing that the statute is permissive and not mandatory, district courts are afforded broad discretion under this rule. *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000). "[A] motion to strike should be granted if it may have the effect of making the trial of the action less complicated, or it may have the effect of otherwise streamlining the ultimate resolution of the action." *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 733 (S.D. Iowa 2007) (quotation omitted).

In considering a motion to strike, the court will "view the pleadings in the light most favorable to the pleader." *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, *2 (E.D. Mo. July 21, 2008) (quotation omitted). Although there is disagreement among federal district courts, this Court has concluded that the heightened pleading standard recognized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), applies to affirmative defenses "only when the plaintiff can show a meaningful risk of prejudice from the failure to do so." *Hull Partners, LLC v. Clean Fuels All. Am.*, 642 F. Supp. 3d 809, 829 (S.D. Iowa 2022). This tracks the general requirement under Fed. R. Civ. P. 12(f) for the moving party to show prejudice before the Court will strike an affirmative defense. *See id.* It also reduces the incentive to file "purely semantic" motions to strike that require time from the Court and parties

---

[2] As a third "affirmative defense," Boyle stated that he "reserves the right to allege additional affirmative defenses as discovery occurs." (ECF 19, p. 47.) He later withdrew this defense (ECF 36, p. 1), which, by definition, is not a defense in and of itself.

3

but may achieve "no meaningful efficiency advantage." *Id.* at 829–30. "The prejudice requirement is satisfied if striking the defense would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resources litigating irrelevant issues that will not affect the case's outcome." *Cynergy Ergonomics*, 2008 WL 2817106, at *2.

## III. LEGAL ANALYSIS.

### A. The Court Strikes Boyle's State Law Statute of Limitations Defenses.

Boyle argues that various statutes of limitations bar the Government's claims, including state statutes set forth in Iowa Code §§ 684.4, 684.5, 684.9, and 614.1(4) and federal statutes governing fraudulent transfer actions (28 U.S.C. § 3306) and transferee liability (26 U.S.C. § 6901). The Government, by contrast, argues that 26 U.S.C. § 6502 is the only statute of limitations that matters, and that this action is timely under that provision.

Boyle's state law statute of limitations defenses are foreclosed by decades of precedent. "It is well settled that the United States is not bound by state statutes of limitation . . . in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). The Supreme Court articulated its rationale as follows: "[w]hen the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *Id.* at 417. The so-called "*Summerlin* rule" has been adopted by the Eighth Circuit and remains good law. *United States v. Wurdemann*, 663 F.2d 50, 51 (8th Cir. 1981). It is routinely followed in district courts within the Eighth Circuit. *See, e.g.*, *United States v. Fowler*, No. 4:18-cv-386-DPM, 2020 WL 4720548, *1 (E.D. Ark. Aug. 13, 2020) (holding that federal statute of limitations controls in action by United States to collect taxes on theories of veil piercing and fraudulent transfer); *United States v. Arthur*, No. 4:10-CV-01561-AGF, 2011 WL 4369425, *4 (E.D. Mo. Sept. 19, 2011) (holding that "the United States is not bound by a state statute of limitations when collecting delinquent tax liabilities"); *United States v. Bigalk*, 654 F. Supp. 2d 983, 990–91 (D. Minn. 2009) (concluding that state's "statute of limitations on fraudulent conveyance claims does not apply to the federal government," even though state law governs whether conveyance may be set aside as fraudulent). It is also followed in circuit courts across the country. *See, e.g.*, *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296–97 (11th Cir. 2021) (concluding that *Summerlin* rule precluded application of limitations period in Georgia's fraudulent transfers statutes); *United States v. Patras*, 544 Fed. App'x 137, 143 (3d Cir. 2013)

(same as to New Jersey's Fraudulent Transfer Act); *United States v. Holmes*, 727 F.3d 1230, 1235 (10th Cir. 2013) (recognizing that in a tax collection action, "the government is acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law. . . . the government's claim is not subject to state statutes of limitations or extinguishment") (internal quotations omitted).

In the face of this overwhelming body of case law, Boyle relies on *United States v. Vistoso Partners, LLC*, which involved the Government's attempt to void a transfer under the Federal Debt Collection Procedure Act (FDCPA) and Arizona Fraudulent Transfer Act. *See* No. CV10-0444 PHX DGC, 2011 WL 2183307, *6 (D. Ariz. June 6, 2011). The case is, however, easily distinguishable. In *Vistoso Partners*, the Government filed the case too late to satisfy what the Court believed was the governing federal statute of limitations under the FDCPA. *Id.*, at *5, 7 ("[W]here federal and state statutes of limitations cover the same action, the federal statute governs."). On reconsideration, the Government finally raised 26 U.S.C. § 6502(a)(1) as the governing statute of limitations, but the court refused to consider new arguments at that stage of proceedings. *United States v. Vistoso Partners, LLC*, No. CV10-0444 PHX DGC, 2011 WL 2550387, *1 (D. Ariz. June 27, 2011). *Vistoso Partners* does not bring state law statutes of limitations into play here.

B. *The Court Strikes Boyle's Federal Statute of Limitations Defenses.*

Turning to federal law, Boyle argues that the applicable statute of limitations is found in 26 U.S.C. § 6901, which governs transferee liability and imposes a one-year limitations period on claims against an initial transferee. Boyle argues, among other things, that the Government must obtain an assessment or judgment against him personally before he can be held liable for receiving transfers from ACR. (ECF 36-1, p. 7.) As the Government has done neither, Boyle argues that he has a valid statute of limitations defense because the one-year period in section 6901 has long since expired. The Government's theory, by contrast, is that the assessment against ACR is good enough to give rise to claims for personal liability against Boyle under the ten-year[3] statute of limitations in 26 U.S.C. § 6502, measured from the notice of assessment, without the need for a separate assessment against him personally.

---

[3] The Government argues that the ten-year period is also subject to tolling in the circumstances presented here, but this appears to be immaterial because the instant case was filed within ten years of the notice of assessment against ACR.

5

Case law supports the Government's position. In *United States v. Henco Holding Corp.*, the Eleventh Circuit considered the intersection of sections 6901 and 6502 in a case where the government sought to reduce a corporation's unpaid tax liability to judgment and bring fraudulent transfer claims against the corporation's owners. 985 F.3d 1290 (11th Cir. 2021). Recognizing that "the government has a formidable arsenal of collection tools," *Henco Holding Corp.* concluded that where the government timely assesses tax liability against the original taxpayer, it is not required to separately assess the transferees under section 6901. *Id.* at 1297 (internal quotation omitted), 1305. The court determined that section 6901 "is simply an additional tool for the government to assess and collect from a transferee the tax liabilities owed by a transferor. Thus, the government can proceed against the [individual] Defendants as transferees under § 6502." *Id.* at 1305.

The Eleventh Circuit reached this conclusion following a detailed review of case law, including *Leighton v. United States*, 289 U.S. 506 (1933). In *Leighton*, the Supreme Court interpreted language nearly identical to section 6901 to conclude the government could sue a corporation's shareholders as transferees without issuing a separate assessment against them. Lower courts—including the Eighth Circuit—have consistently reached the same result, often applying *Leighton*. *See, e.g.*, *United States v. Scherping*, 187 F.3d 796, 800–01 (8th Cir. 1999) (holding that action against alleged fraudulent transferee was not untimely); *Payne v. United States*, 247 F.2d 481, 484–85 (8th Cir. 1957) (holding that predecessor to section 6901 did not "preclude the bringing . . . of a plenary suit against [an unassessed] transferee to subject property received by him from a taxpayer, to the payment of income taxes owned by the latter, under the trust fund doctrine"); *United States v. Russell*, 461 F.2d 605, 606 (10th Cir. 1972) ("[T]he collection procedures contained in § 6901 are not exclusive and mandatory, but are cumulative and alternative to the other methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors."). More recently, the Supreme Court reached a similar conclusion again in *United States v. Galetti*, 541 U.S. 114, 122–23 (2004), which held that the Government is not required to "make separate assessments of a single tax debt against persons or entities secondarily liable for that debt in order for § 6502's extended statute of limitations to apply to those persons or entities." *Leighton*, *Galetti*, and their progeny show that Boyle's attempt to rely on section 6901 fails as a matter of law.

In arguing otherwise, Boyle maintains that cases like *Scherping* are inapposite because he had "no prior assessment, notice, or warning" of the potential for personal liability and factually there is no basis to conclude he is an alter ego of ACR. (ECF 36-1, p. 8.) These arguments are insufficient to establish the potential viability of the statute of limitations defense. *Scherping*, *Payne*, and *Henco Holding Corp.* (among other cases) involve, in relevant part, the same factual scenario present here: the Government filed suit against an alleged fraudulent transferee many years after the deadline passed under the transferee liability statute. Indeed, in *Henco Holding Corp.*, the Government filed the action against the fraudulent transferees approximately *twenty-one years* after the transfers themselves, yet the action still was held to be timely because the limitations period in section 6502 had not expired. 985 F.3d at 1305. The same is true here: the Government filed this case within ten years of the notice of assessment against ACR, and thus it is timely under section 6502. Boyle's statute of limitations defense under section 6901 therefore fails as a matter of law.

Finally, Boyle suggests that the case might be governed by the six-year limitations period in the FDCPA. *See* 28 U.S.C. § 3306. The FDCPA generally "provides the exclusive civil procedures for the United States . . . to recover a judgment on a debt." 28 U.S.C. § 3001(a)(1). But its application is subject to the following limitation: "[t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter." 28 U.S.C. § 3001(b). In addition, Section 3003(b) states: "[t]his chapter shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law . . . to collect taxes or to collect any other amount collectible in the same manner as a tax." Here, the Government is trying to "collect taxes," and thus the governing limitations period is in 26 U.S.C. § 6502(a)(1).

In similar circumstances, other district courts have declined to apply the FDCPA limitations period. *See, e.g.*, *Arthur*, 2011 WL 4369425, *1, *4 (concluding that 26 U.S.C. § 6502(a)(1), not 28 U.S.C. § 3306, established the applicable statute of limitations in an action where the government sought "to reduce to judgment federal tax assessments . . . and to set aside allegedly fraudulent conveyances"); *United States v. Bantu*, 907 F. Supp. 988, 990 (N.D. Tex. 1995) ("Inasmuch as this is a suit for the collection of taxes, the statute of limitations found in the FDCPA is not applicable. The government attempts to collect pursuant to the Internal Revenue Code and

is therefore bound by the ten-year statute of limitations found in the IRC at 26 U.S.C. § 6502(a)(1)."); *United States v. Carney*, 796 F. Supp. 700, 703–04 (E.D.N.Y. 1992) (reviewing the language and legislative history of the FDCPA to conclude that 26 U.S.C. § 6502(a)(1) applied, noting "[i]n the field of tax collection, Congress clearly intended that the government retain its option to proceed under federal or State law."). This Court reaches the same conclusion.

  *C. The Court Strikes Boyle's Laches Defense.*

  For similar reasons, the Court strikes Boyle's affirmative defense of laches. A long line of cases holds that "the United States is not . . . subject to the defense of laches in enforcing its rights." *Wurdemann*, 663 F.2d at 51 (quoting *Summerlin*, 310 U.S. at 416). *See United States v. Hamed*, 976 F.3d 825, 831 (8th Cir. 2020); *United States v. Brown*, 835 F.2d 176, 180 (8th Cir. 1987) ("[T]he defenses of limitations and laches cannot be asserted against the sovereign."); *United States v. Ulvedal*, 372 F.2d 31, 35 (8th Cir. 1967). This is because, "in its efforts to collect taxes, the United States unquestionably is acting in its sovereign capacity." *Bresson*, 213 F.3d at 1178. Laches is therefore not a viable defense. *See Wurdemann*, 663 F.2d at 51.

  There are limitations to this general rule. For examples, laches may be invoked in employment cases under Title VII. *See, e.g., Whitfield v. Anheuser-Busch, Inc.*, 820 F.2d 243, 245–46 (8th Cir. 1987); *U.S. Equal Emp. Opportunity Comm'n v. Stan Koch & Sons Trucking, Inc.*, 557 F. Supp. 3d 884, 900 (D. Minn. 2021). It also may serve as a bar to IRS attempts to collect post-petition tax claims assessed against an estate in a debtor's bankruptcy case. *In re Sharpe*, 160 B.R. 614, 624–25 (Bankr. W.D. Mo. 1993). However, these cases either involve the Government stepping into the shoes of a third party or bankruptcy proceedings in which "a completely different and superseding statutory scheme comes into play." *Comm'r v. DeLeve*, 748 F.2d 465, 466 (8th Cir. 1984). As neither circumstance is present here, laches is not a viable defense.

  Boyle cites a Southern District of Iowa case, *United States v. McKenzie*, for the proposition that laches may apply in some circumstances when the Government attempts to collect a tax debt by executing on the taxpayer's property. *See* No. 3:08-cv-00069-JAJ, 2011 WL 1873982 (S.D. Iowa Feb. 17, 2011). True, *McKenzie* evaluated laches on the merits, but it did not cite *Wurdemann*, *Summerlin*, or similar cases recognizing that the Government is not subject to laches when it sues in its sovereign capacity. Instead, *McKenzie* simply held that laches would not apply on the facts of the case. *Id.* at *20. The Court does not interpret *McKenzie* as intending to reject *Wurdemann* or *Summerlin*, nor could this Court follow *McKenzie* even if that was the intent. Instead, those

cases—among many others—are binding and require the Court to conclude that laches is not a viable defense.

## IV. CONCLUSION.

Because neither of the affirmative defenses raised by Boyle is viable, the Court GRANTS the Government's Motion to Strike (ECF 28).

**IT IS SO ORDERED.**

Dated: October 2, 2023

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE