IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:23-cv-00144-SHL-WBK |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT KENNETH BOYLE'S** |
| JAMES HUYSER; MATTHEW KINLEY; | ) | **RESPONSE TO PLAINTIFF'S** |
| KENNETH BOYLE; JEFFREY W. | ) | **STATEMENT OF UNDISPUTED** |
| CARTER; and JWC INVESTMENTS, | ) | **MATERIAL FACTS IN SUPPORT OF** |
| L.C., | ) | **ITS MOTION FOR PARTIAL** |
| | ) | **SUMMARY JUDGMENT** |
| Defendants. | ) | |

Pursuant to L.R. 56(b)(2), Defendant Kenneth Boyle ("Boyle") states the following in response to Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment (ECF 83-1):

## STATEMENT OF UNDISPUTED MATERIAL FACTS WITH RESPECT TO ALL DEFENDANTS

### Defendants formed and operated ACR.

1.     On May 19, 2010, James Huyser, or his agent, filed a Certificate of Organization for Alternative Carbon Resources, LLC ("ACR") with the Iowa Secretary of State. (U.S. First RFAs to Boyle (at Appx. 1001), Carter (at Appx. 1009), Huyser (at Appx. 1019), JWC (at Appx. 1029), and Kinley (at Appx. 1039); Huyser Response to RFA No. 1 at Appx. 1047; Boyle Response to RFA No. 1 at Appx. 1054; Carter Response to RFA No. 1 at Appx. 1061; Kinley Response to RFA No. 1 at Appx. 1070; JWC Response to RFA No. 1 at Appx. 1079.)

**RESPONSE:**  Boyle does not dispute this fact solely for purposes of the current motion. *See* Fed. R. Civ. P. 56(e)(2), advisory committee notes (2010) (stating in relation to subdivision (g) that courts must "take care" in deciding whether to dispose of a material

fact that is not genuinely disputed such that its "determination does not interfere with a party's ability to accept a fact for purpose of the motion only.  A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant. This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes."); *accord Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*, 647 F.3d 780, 785-86 (8th Cir. 2011) (recognizing that a non-moving party may elect not to contest certain facts solely for purposes of summary judgment" and then quoting to the previously cited committee note for Rule 56(g)).

2.      Sometime around or after March 1, 2011, James Huyser, Jeffrey Carter, Matthew Kinley, and Kenneth Boyle executed an Amended Operating Agreement for ACR through which Carter, Kinley, and Boyle became members (with Huyser) of the ACR. (U.S. First RFAs to Boyle (at Appx. 1002), Carter (at Appx. 1010), Huyser (at Appx. 1020), JWC (at Appx. 1030), and Kinley (at Appx. 1040); Huyser Responses to RFA Nos. 8, 10(c), & 11 at Appx. 1048 (at No. 8 authenticating Ex. 7), Carter Response to RFA Nos. 11 & 14(b) at Appx. 1063 (at No. 11 authenticating Ex. 7), JWC Responses to RFA Nos. 11 & 14(b) at Appx. 1081 (at No. 11 authenticating Ex. 7), Boyle Responses to RFA Nos. 8 & 11 at Appx. 1055-6 (at No. 8 authenticating Ex. 7), and Kinley Responses to RFA Nos. 8 & 11 at Appx. 1072-73 (at No. 8 authenticating Ex. 7); Ex. 7, Amended Operating Agreement at Appx. 0028; Cmplt. ¶ 24 at Appx. 0514; Huyser Ans. ¶ 24 at Appx. 0548, Carter & JWC Ans. ¶ 24 at Appx. 0655, Kinley Ans. ¶ 24 at Appx. 0614 and Boyle Ans. ¶ 24 at Appx. 0569.)

**RESPONSE:**    Boyle admits that sometime <u>after</u> March 1, 2011, he and Kinley, Carter/JWC, and Huyser signed the Amended Operating Agreement, through which he, Kinley, and Carter/JWC became members (along with Huyser).  Boyle disputes that the Amended Operating Agreement was executed <u>on</u> March 1, 2011.  The exact date of execution is not proven in any of the evidence cited, although there is evidence proving that the Amended Operating Agreement was not fully executed before May 2, 2011. *E.g.*, Appendix of Materials in Support of Defendant Boyle's Resistance to Plaintiff's Motion for Partial Summary Judgment ("Boyle App.") 70 (Dep. Ex. 8, email reflecting the LLC agreement was not signed as of May 2, 2011).    Additionally, Boyle affirmatively states that the date of execution for the Amended Operating Agreement is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

3.    Huyser, Carter, Kinley, and Boyle served as members of ACR from 2011 through 2021. ACR was administratively dissolved by the Iowa Secretary of State in 2021. (Cmplt. ¶ 29 at Appx. 0515; Carter & JWC Ans. ¶ 29 at Appx. 0655, Kinley Ans. ¶ 29 at Appx. 0615, and Boyle Ans. ¶ 29 at Appx. 0571; U.S. First RFAs to Huyser (at Appx. 1017), Carter (at Appx. 1007), JWC (at Appx. 1027), Kinley (at Appx. 1037) and Boyle (at Appx. 0999); Huyser Responses to RFA Nos. 7, 8, 11 at Appx. 1047-48, Carter Responses to RFA Nos. 7, 11 & 14(b) at Appx. 1062-3, JWC Responses to RFA Nos. 7, 8, 11 at Appx. 1080-81, Kinley Responses to RFA Nos. 7, 8, 11 at Appx. 1072-73 and Boyle Responses to RFA Nos. 7, 8, 11 at Appx. 1055-

56; Ex. 7, Amended Operating Agreement at Appx. 0001; Polk County Trial, Huyser Testimony 19:20-23 at Appx. 1292A-B.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

4.       During its operations in 2011, ACR purchased ethanol waste, also called biomass, feedstock, or corn syrup, and facilitated the transportation of biowaste products to anaerobic digester customers. (2016 Boyle Depo. 19:10-2020 (at Appx. 1299), 50:25-51:20 (at Appx. 1306-7); 2023 Boyle Depo. 94:15-20 (at Appx. 1321), 95:3-12 (at Appx. 1322); 2023 Carter Depo. 92:19-22 (at Appx. 1420), 93:19-21 (at Appx. 1421), 94:7-9 (at Appx. 1422); 2017 Huyser Depo. 22:5-17 at Appx. 1463; 2023 Huyser Depo. 37:6-10 (at Appx. 1479), 115:16-25 (at Appx. 1481); 2023 Kinley Depo. 70:4-71:1, 71:25-73:3 at Appx. 1537-40.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

5.       ACR hired a trucking company to transport the waste, "splash" 0.1% of diesel into the waste at a gas station, and then deposit the waste with anaerobic digester customers. (2016 Boyle Depo. 42:1-43:4 (at Appx. 1304-5), 55:17-56:11 (at Appx. 1308-9); 2023 Boyle Depo. 98:17-99:1 (at Appx. 1323-4), 151:8-152:15 (referring to adding diesel as "splash") (at Appx. 1328-9); 2016 Carter Depo. 54:25-55:15 (referring to diesel addition as "splash") at Appx. 1386-7; 2023 Carter Depo. 159:25-160:18 at Appx. 1433-4; 2023 Huyser Depo. 143:25-145:24 (at Appx. 1484-6), 205:18-25 (referring to "splash") (at Appx. 1497); 2023 Kinley Depo. 70:17-20 (at Appx. 1537), 71:25-73:1 (at Appx. 1538-40), 128:1-4, 21-24 (at Appx. 1541).)

-4-

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

 

6.    ACR submitted alternative fuel mixture credit claims to the U.S. Department of Treasury for payment of $0.50 for every gallon of waste / diesel mixture deposited with the anaerobic digesters. (2016 Boyle Depo. 116:18-117:7 at Appx. 1312-3; 2023 Carter Depo. 175:11-20 at Appx. 1437; 2023 Huyser Depo. 123:13-14 at Appx. 1483; 2023 Kinley Depo. 69:6-12 at Appx. 1536; 2023 Albers Depo. 48:9-15 (at Appx. 1280), 49:11-50:4 (at Appx. 1281-2); 2017 Albers Depo. 34:15-35:12 (at Appx. 1266-7), 41:22-42:8 (at Appx. 1268-9), 45:12-46:3 (discussing and authenticating Ex. 127 (marked Exhibit 4 in Refund Suit)) (at Appx. 1272-3); Ex. 127, March 15, 2011 Albers Email with Forms 8849, ACR006766-6770 (at Appx. 0379); 2023 Huyser Depo. 22:16-24:20 (describing ACR-bates numbered records as business records of ACR) at Appx. 1476-8.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

 

7.    During the time ACR operated transporting waste / diesel mixture, the alternative fuel mixture credits were available for the 2011 calendar year; that is, from January 1, 2011 through December 31, 2011. (Cmplt. ¶ 19 at Appx. 0513; Huyser Ans. ¶ 19 at Appx. 0548, Carter & JWC Ans. ¶ 19 at Appx. 0654, Kinley Ans. ¶ 19 at Appx. 0613, and Boyle Ans. ¶ 19 at Appx. 0568.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

8.     ACR ceased any active operations on or around December 31, 2011, when it could no longer claim the alternative fuel mixture credit. (2023 Kinley Depo. 250:12-251:1 (authenticating Ex. 45) (at Appx. 1566-7), 251:2-5 (at Appx 1567); Ex. 45, Kinley MSJ Affidavit ¶ 20 at Appx. 0276; 2016 Carter Depo. 148:3-13 at Appx. 1388; 2017 Huyser Depo. 77:12-25 at Appx. 1464; 2023 Huyser Depo. 231:2-7 (at Appx. 1502), 241:9-21 (at Appx. 1509); 2016 Boyle Depo. 31:6-32:4 at Appx. 1301.)

**RESPONSE**:  Boyle does not dispute these facts solely for purposes of the current motion.

9.     After December 31, 2011, ACR never resumed purchasing and facilitating the transportation of biowaste. (2023 Kinley Depo. 231:24-232:4 at Appx. 1559-60; 2023 Boyle Depo. 195:22-196:7 (at Appx. 1337-8), 197:11-198:2 (at Appx. 1339-40), 211:19-21 (at Appx. 1343), 213:21-214:15 (at Appx. 1344-5); 2017 Huyser Depo. 77:12-25 at Appx. 1464; 2016 Carter Depo. 148:3-13 at Appx. 1388.)

**RESPONSE**:  Boyle does not dispute these facts solely for purposes of the current motion.

10.     In 2011, ACR recorded in its books and records three categories of income:

(a)     $8,950.00 from the sale of alternative fuel mixture to digester customers;

(b)     $19,773,393.00 from federal tax credits claimed and received; and

(c)    $135,800.00 from the sale of freight services.

(Ex. 14, ACR 2011 Profit & Loss Statement, HJ 00257 at Appx. 0037; 2023 Smerage Depo. 41:16-19 (at Appx. 1582), 42:18-44:23 (describing documents in HJ0001-390 range as business records of Hamilton Juffer accounting) (at Appx. 1583-5), 77:3-7 (at Appx. 1586), 79:16-24 (authenticating Ex. 14) (at Appx. 1588).)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

11.    In 2012, ACR had one category of recorded income — $37,200 in freight income. (Ex. 28, 2012 ACR Profit & Loss Statement, HJ 00364 at Appx. 0187; 2023 Huyser Depo. 232:7-14 at Appx. 1503; 2023 Smerage Depo. 41:16-19 (at Appx. 1582), 42:18-44:23 (describing documents in HJ0001-390 range as business records of Hamilton Juffer accounting) (at Appx. 1583-5), 88:16-20 (at Appx. 1589), 89:9-15 (authenticating Ex. 28) (at Appx. 1590), 90:5-12 (at Appx. 1591.))

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

12.    Thereafter, from 2013 to 2019, ACR had no income or revenue and its expenses primarily consisted of professional fees paid to attorneys and accountants. (2023 Boyle Depo.

195:22-196:4 (at Appx. 1337-8), 197:11-198:2 (at Appx. 1339-40), 211:19-21 (at Appx. 1343),

213:21-214:15 (at Appx. 1344-5); 2023 Huyser Depo. 232:4-233:4 (at Appx. 1503-4), 236:8-11

(at Appx. 1505), 237:2-14 (at Appx. 1506); 2023 Kinley 227:14-229:4 at Appx. 1555-7; Ex. 104,

ACR 2013 Balance Sheet, HJ 01059 at Appx. 0371; Ex. 112, ACR 2014 Balance Sheet, HJ

01172 at Appx. 0373; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing

documents in HJ 0400-1296 as business records of Hamilton Juffer) (at Appx. 1579-82), 93:22-

94:19 (authenticating Ex. 104) (at Appx. 1592-3), 95:2-15 (ACR had no revenue in 2013) (at

Appx. 1594), 105:10-21 (authenticating Ex. 112) (at Appx. 1595), 114:4-15 (from 2015 to 2019

ACR had no business operations and expenses only)(at Appx. 1596); Ex. 99 Hamilton Juffer

Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

> **RESPONSE:** Boyle does not dispute these facts solely for purposes of the current
>
> motion. Boyle affirmatively states that this paragraph is not material to any of the issues
>
> raised in the Plaintiff's motion for partial summary judgment and should therefore be
>
> disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

13.    In January 2012, the IRS contacted ACR as part of an examination into whether

ACR was properly eligible to claim the federal excise tax credits it claimed in 2011 and received

in 2011 and 2012. ACR incurred legal expenses associated with the audit and an associated

criminal investigation. (Ex. 177, Examining Officer's Activity Report, IRS000057 (recording

Jan. 11, 2012 case opening and contact with James Huyser) at Appx. 506; IRS Smith Decl. at

Appx. 1672 (describing IRS000057 as business record of the IRS); Huyser Response to RFA No.

80 (admitting ACR contacted by IRS in January 2012), 83 & 84 at Appx. 1199-1200; Kinley

Response to RFA Nos. 87, 88, 90 & 91 at Appx 1219- 1220; Boyle Response to RFA No. 81

(admits aware of IRS investigation) & 84 (admits aware of criminal investigation) at Appx. 1258-59; Carter Response to RFA Nos. 84-87 at Appx. 1246; JWC Response to RFA Nos. 82-85 at Appx. 1234; 2016 Boyle Depo. 103:7-104:19 (Boyle attended IRS audit meeting) at Appx. 1310-11; Ex. 34 at HUYSER001861-62 at Appx. 0228-9; Ex. 37, Oct. 21, 2013, Capital Call Letter, HUYSER0000205 at Appx. 0253; 2023 Huyser Depo. 227:2- 228:8 (authenticating Ex. 34 and discussing "we fully expected to be audited")(at Appx. 1498-9), 229:24-230:22 (at Appx. 1500-1), 243:24-244:11 (authenticating Ex. 37) (at Appx. 1511-2).)

> **RESPONSE:**  Solely for purposes of the current motion, Boyle does not dispute that the IRS contacted Huyser as ACR's representative as part of a routine audit.  The IRS communications were not directed to Boyle, as shown in the materials cited in this paragraph.  Boyle later became aware of the IRS investigation and criminal investigation when informed by others.   See USA App. 1259 (Boyle Resp. to RFA No. 84).  Further, Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

14.     As early as March 2013, attorney William Smith represented ACR during the IRS's audit. (Ex. 176, IRS Form 2848, Power of Attorney for William Smith, HUYSER0006219-20, and signed by James Huyser as "Managing Member" of ACR (HUYSER documents produced by James Huyser in this suit) at Appx. 0501; Huyser Response to RFA Nos. 85 (authenticating Ex. 176) & 86 (admitting Smith retained to represent ACR) at Appx. 1200; Kinley Response to RFA Nos. 92 (authenticating Ex. 176) & 93 (admitting Smith representation) at Appx. 1220; Carter Response to RFA Nos. 88 (authenticating Ex. 176) & 89-90 at Appx.

1246-47; JWC Response to RFA Nos. 86 (authenticating Ex. 176) & 87 at Appx. 1234; 2016

Boyle Depo. 103:7-104:19 (admitting knowledge of IRS audit) at Appx. 1310-11.)

> **<u>RESPONSE</u>:**  Boyle does not dispute these facts solely for purposes of the current
>
> motion.  Boyle affirmatively states that William Smith represented ACR much earlier
>
> than March 2013, including in 2011.  *See, e.g.*, Plaintiff's Stmt. of Facts ¶ 46.  Boyle
>
> affirmatively states that this paragraph is not material to any of the issues raised in the
>
> Plaintiff's motion for partial summary judgment and should therefore be disregarded.
>
> *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

### ACR filed a suit in the Court of Federal Claims seeking to dispute $59 million in tax and penalties assessed against it.

15.    In April 2014, a delegate of the Secretary of the Treasury made excise tax

assessments for over $19 million against ACR – in the amount of the alternative fuel mixture

cash credits that ACR improperly claimed and received. (Cmplt. ¶114 at Appx. 0529; Boyle Ans.

¶ 114 at Appx. 0591, Kinley Ans. ¶ 114 at Appx. 0622, Carter & JWC Ans. ¶ 114 at Appx. 0622-

3); IRS000028 ACR Certified Form 4340 for Excise Tax for Period Ending March 31, 2011 at

Appx. 0919-21; IRS000031, ACR Certified Form 4340 for Excise Tax for Period ending June

30, 2011 at Appx. 0922-5; IRS000035, ACR Certified Form 4340 for Excise Tax for Period

ending September 30, 2011 at Appx. 0926-9; IRS000039, ACR Certified Form 4340 for Excise

Tax for Period ending December 31, 2011 at Appx. 0930-3; PUBLIC002612, Certified Amended

Federal Claims Judgment (reflecting entry of $19,773,393.00 judgment against ACR for excise

tax assessments, less payments made) at Appx. 0756.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

16.    Also in April 2014, a delegate of the Secretary of the Treasury made assessments of over $39 million in civil excessive claim penalties, against ACR for improperly claiming the alternative fuel mixture credit. (IRS000016, ACR Certified Form 4340 for Section 6675 Civil Penalty for Period Ending March 31, 2011 at Appx. 0907-9; IRS000019, ACR Certified Form 4340 for Section 6675 Civil Penalty for Period Ending June 30, 2011, at Appx. 0910-2; IRS000022, ACR Certified Form 4340 for Section 6675 Civil Penalty for Period Ending September 30, 2011 at Appx. 0913-5; IRS000025, ACR Certified Form 4340 for Section 6675 Civil Penalty for Period Ending December 30, 2011 at Appx. 0916-8; PUBLIC002612, Certified Amended Federal Claims Judgment (reflecting entry of $39,456,786.00 judgment against ACR for excessive claim penalties, less payments made) at Appx. 0756.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

17.    In March 2015, ACR filed a complaint in the U.S. Court of Federal Claims against the United States. In its suit, ACR sought a refund of a partial payment it made against excise tax assessments in order to challenge its assessed excise tax liability in Case No. 15-155, *Alternative Carbon Resources, LLC v. United States* (hereinafter the "Refund Suit"). (PUBLIC002584-2599, Certified ACR Federal Claims Complaint at Appx. 0731; Nygaard Decl. ¶ 25 & Exhibit A; Cmplt. ¶ 115 at Appx. 0529-30; Boyle Ans. ¶ 115 at Appx. 0591,

Carter & JWC Ans. ¶ 115 at Appx. 663, Huyser Ans. ¶ 115 at Appx. 0555, and Kinley Ans. ¶ 115 at Appx. 0623.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

18.    The United States responded to ACR's complaint in the Refund Suit and asserted its own counterclaim – seeking entry of a money judgment against ACR in the full amount of the assessed excise taxes plus excessive claim penalties, less any prior payments based on the improperly obtained alternative fuel mixture credits. The United States counterclaim did *not* seek any judgment on civil fraud penalties, failure-to-file, or failure-to-pay penalties assessed against ACR. (Cmplt. ¶ 116 at Appx. 0530; Boyle Ans. ¶ 116 at Appx. 0591, Carter & JWC Ans. ¶ 116 at Appx. 0663, Huyser Ans. ¶ 116 at Appx. 0555, Kinley Ans. ¶ 116 at Appx. 0623; PUBLIC002600-2608, Certified U.S. Federal Claims Answer & Counterclaim at Appx. 0747; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

19.    ACR moved for summary judgment and the United States filed a cross motion for summary judgment on its claims. On March 22, 2018, and based on the undisputed material facts, the Court of Federal Claims entered summary judgment in favor of the United States and against ACR in the Refund Suit on the excise tax and penalty assessments. In its order on summary judgment, the Court granted summary judgment for ACR to the extent any civil fraud, failure- to-file and failure-to-pay penalties assessed against ACR had not already been

-12-

abated by the IRS. (PUBLIC002636-2683, March 22, 2018 Certified Copy of Opinion of the Court of Federal Claims at Appx. 0780-826; Nygaard Decl. ¶ 25 & Exhibit A; Cmplt. ¶ 117; Boyle, Carter, JWC, Huyser, & Kinley Ans. ¶ 117.)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  To be clear, Boyle is not admitting the factual findings or factual statements alleged or made in the Refund Suit, but he is merely not disputing the procedural outcome of the Refund Suit in the Court of Federal Claims.

20.    On March 28, 2018, the Court of Federal Claims reduced the federal excise tax and penalty assessments to judgment and entered an amended judgment against ACR in the amount of $59,320,179.00 (the "Federal Claims Judgment") – less payments made and plus statutory interest and additions accruing according to law. This judgment consists of $19,773,393.00 in excise taxes assessed pursuant to 26 U.S.C. §§ 6206 & 6427 (for the improperly claimed credits / credit payments received) and $39,546,786.00 in excessive claim penalties assessed pursuant to 26 U.S.C. §§ 6206 & 6675 (calculated at 200% of the improperly claimed credits). (Cmplt. ¶ 120 at Appx. 0531-2; Boyle Ans. ¶ 120 at Appx. 0543, Carter & JWC Ans. ¶ 120 at Appx. 0663, Huyser Ans. ¶ 120 at Appx. 0556, and Kinley Ans. ¶ 120 at Appx. 0623; PUBLIC002612, Certified Amended Judgment of Court of Federal Claims at Appx. 0756; Nygaard Decl. ¶ 25 & Exhibit A.)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

21.     ACR appealed the Federal Claims Judgment and, on September 26, 2019, the United States Court of Appeals for the Federal Circuit affirmed the judgment entered against ACR in the Refund Suit in *Alternative Carbon Resources, LLC v. United States*, 939 F.3d 1320 (Fed. Cir. 2019). (Cmplt. ¶ 121 at Appx. 0531; Boyle Ans. ¶ 121 at Appx. 0593, Carter & JWC Ans. ¶ 121 at Appx. 0663, Huyser Ans. ¶ 121 at Appx. 0556, and Kinley Ans. ¶ 121 at Appx. 0623.)

**RESPONSE:**   Boyle does not dispute that ACR appealed the Federal Claims Judgment.   Nor does Boyle dispute that the United States Court of Appeals for the Federal Circuit affirmed the judgment against ACR.   However, the appellate court did not affirm every finding of the Court of Federal Claims.

22.     Defendants Huyser, Carter, Kinley, and Boyle were members of ACR throughout the Refund Suit and during its appeal to the Federal Circuit. (Cmplt. ¶ 123 at Appx. 0531; Boyle Ans. ¶ 123 at Appx. 0593, Carter & JWC Ans. ¶ 123 at Appx. 0663, Huyser Ans. ¶ 123 at Appx. 0556, and Kinley Ans. ¶ 123 at Appx. 0624.)

**RESPONSE:**   Boyle does not dispute these facts solely for purposes of the current motion.

23.     Huyser, Kinley, and Boyle each contributed their own money to fund ACR's accounting and legal expenses from 2013 through 2019. (2023 Huyser Depo. 236:8-11 (at Appx. 1505), 237:2-14 (at Appx. 1506), 240:10-24 (at Appx. 1508); Cmplt. ¶ 125 at Appx. 0531; Kinley Ans. ¶ 125 at Appx. 0624; 2023 Kinley Depo. 228:23-229:6 (at Appx. 1556-7), 232:12-23 (at Appx. 1560); 2023 Boyle Depo. 218:20-219:1 at Appx. 1349-50; Polk County

Trial, Boyle 45:4-9 at Appx. 1290; 2023 Carter Depo. 202:11-20 at Appx. 1438; ACR 2011-2019 Basis Schedule, HJ 01287 at Appx. 0904; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 as business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

**RESPONSE**:    Boyle does not dispute these facts solely for purposes of the current motion.

24.    Since 2019, when entry of the Federal Claims Judgment against ACR was affirmed by the Federal Circuit, ACR has not made any payments towards the outstanding Federal Claims judgment entered against it. (Cmplt. ¶ 132 at Appx. 0532; Carter & JWC Ans. ¶132 at Appx. 0644, Huyser Ans. ¶132 at Appx. 0556, and Boyle Ans. ¶132 at Appx. 0595; 2023 Kinley Depo. 258:3-259:1 at Appx. 1568-9.)

**RESPONSE**:    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

25.    From 2011 through 2019, James Huyser, or his agent, filed a Biennial Report for ACR with the Iowa Secretary of State when it was due. (U.S. First RFAs to Boyle (at Appx. 1001), Carter (at Appx. 1009), JWC (at Appx. 1029-30), Huyser (at Appx. 1019-20), and Kinley (at Appx. 1039); Boyle Responses to RFA Nos. 2-6 at Appx. 1054, Carter Responses to RFA Nos. 2-6 at Appx. 1061-2, JWC Responses to RFA Nos. 2-6 at Appx. 1079-80, Huyser

-15-

Responses to RFA Nos. 2-6 at Appx. 1047, and Kinley Responses to RFA Nos. 2-6 at Appx. 1071.)

> **<u>RESPONSE</u>:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

26.    On September 7, 2021, ACR was administratively dissolved by the Iowa Secretary of State for failing to deliver the 2021 Biennial Report as required by Iowa law. (U.S. First RFAs to Boyle (at Appx. 1002), Carter (at Appx. 1010), JWC (at Appx. 1030), Huyser (at Appx. 1020), and Kinley (at Appx. 1040); Boyle Response to RFA No. 7 at Appx. 1055, Carter Response to RFA No. 7 at Appx. 1062, JWC Response to RFA No. 7 at Appx. 1080, Huyser Response to RFA No. 7 at Appx. 1047, and Kinley Response to RFA No. 7 at Appx. 1072.)

> **<u>RESPONSE</u>:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

## UNDISPUTED MATERIAL FACTS WITH RESPECT TO DEFENDANT JAMES HUYSER

27.    During ACR's start-up phase in 2010, Huyser:

(a)    Submitted ACR's registration with the IRS to claim federal excise tax credits;

(b)    Communicated with an attorney specializing in tax credits, Greg Sanderson, about how to register to claim the credit;

(c)    Located and communicated with potential digester customers who would receive ACR's waste / diesel mixture and deposit it in their digesters;

(d)    Sought out sources of ethanol waste (or biomass) that could be used to make ACR's waste / diesel mixture; and

(e)    Communicated with digester customers about the terms under which they would accept ACR's waste / diesel mixture.

(2023 Huyser Depo. 114:12-25 (communicating with Sanderson, registering for credit, finding customers & sourcing biomass) at Appx. 1480; 116:1-4 (negotiating with Des Moines Wastewater to receive mixture) at Appx. 1482.)

**RESPONSE**:   Boyle does not dispute these facts solely for purposes of the current motion.

28.    In 2011, Huyser worked 60 hours a week on ACR business. (2017 Huyser Depo. 163:16-18 at Appx. 1465.)

**RESPONSE**:   Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

29.    While ACR was operating and claiming from the IRS the alternative fuel mixture credit in 2011, Huyser:

-17-

4878-2384-3286, v. 3

(a)    Oversaw ACR recordkeeping and documentation of the transport and mixing of the ACR waste / diesel mixture by its ACR's outside accountants;

(b)    Negotiated and signed contracts for ACR;

(c)    Deposited fuel mixture credit payments from the United States' Treasury into ACR's accounts;

(d)    Managed the delivery of the waste / diesel mixture;

(e)    Reviewed monthly financial reports from ACR's accountants;

(f)    Determined the amount and frequency of cash distributions made by ACR to its individual members; and

(g)    Personally delivered distribution checks to each ACR member.

(2023 Huyser Depo. 23:11-24:4 (on ACR records) at Appx. 1477-8; 169:19-25 (depositing tax credit payments mailed to Huyser's home address) at Appx. 1487; 176:20-25 (on distributions) at Appx. 1489; 177:10-178:3 (on reviewing accounting statements) at Appx. 1490-1; 182:18-183:1 (personally delivered checks) at Appx. 1492-3; 188:10-25 (on communication with digesters and "constant communication") at Appx. 1494; and 194:2-195:1 (on negotiation and signing of digester contract) at Appx. 1495-6.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

30.    In the Refund Suit, Huyser participated "in seeking out and hiring counsel for ACR; aided in selecting and hiring expert witnesses; aided in making decisions in the litigation; aided counsel in drafting and responding to discovery requests; and authorized and contributed funds for payments of legal fees to ACR's counsel." (Cmplt. ¶ 125 at Appx. 0531; Huyser Ans. ¶ 125 at Appx. 0556.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

31.    Huyser, Carter, and Kinley collectively hired attorney William Smith (also called Bill Smith) to serve as counsel for ACR in the Refund Suit. (2023 Huyser Depo. 253:4-9 (at Appx. 1513), 254:13-24 (at Appx. 1514); U.S. Second RFAs to Huyser at Appx. 1160-1; Huyser Responses to RFAs Nos. 86-100 at Appx. 1200-2.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

32.    During the Refund Suit, Huyser participated in meetings with Kinley and Boyle about the progress of the suit. (2023 Huyser Depo. 255:21-256:1 at Appx. 1515-6.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

33.    Huyser personally contributed funds to pay for the legal expenses of ACR in the audit and Refund Suit. (2023 Huyser Depo. 236:8-11 (at Appx. 1505)(on Refund Suit expenses); 237:2-14 (at Appx. 1506)(on audit expenses); and 240:10-19 (at Appx. 1508).)

4878-2384-3286, v. 3

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

34.    From 2013 through 2019, Huyser personally contributed at least $429,687.00 to ACR's legal and accounting expenses during this period as follows:

(1) $42,000 in 2013;

(2) $57,000 in 2014;

(3) $40,000 in 2015;

(4) $60,050 in 2016;

(5) $165,000 in 2017;

(6) $199,000 in 2018;

(7) $65,637 in 2019.

(ACR 2011-2019 Basis Schedule, HJ 01287 at Appx. 0904 (reporting Huyser annual member contributions); 2023 Huyser Depo. 236:8-11 (at Appx. 1505); 237:2-14 (at Appx. 1506); 238:14-23 (at Appx. 1507); 240:10-19 (at Appx. 1508); 256:5-10 (at Appx. 1510); 2023 Smerage Depo. 33:14-17 (at Appx. 1578); 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

**RESPONSE:**   Boyle does not dispute these facts solely for purposes of the current motion.

35.    Huyser made sure that William Smith's legal bills for services rendered to ACR were paid. Huyser also asked his fellow ACR members to contribute to the payment of Smith's legal fees. (2023 Huyser Depo. 256:5-10 at Appx. 1516.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

36.    Huyser issued a "capital call" requesting Jeffrey Carter and JWC pay a share of ACR's legal expenses. (2023 Huyser Depo 243:24-244:11 at Appx. 1511-2; Ex. 37, Oct. 21, 2013 Letter from Huyser to Carter, HUYSER000205 at Appx. 0253.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

37.    Boyle and Huyser, in their personal capacities, sued Jeffrey Carter and JWC in Iowa state court seeking a judgment requiring Carter and JWC to contribute to ACR legal expenses. (PUBLIC000585, Polk County Petition at Appx. 0713; PUBLIC000583, Polk County Clerk's Certification (for PUBLIC000585) at Appx. 0711; 2023 Huyser Depo. 16:16-24 at Appx. 1475.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that the basis for the claim against Carter and JWC was not that Carter or JWC had some obligation under the Amended Operating Agreement or under Iowa law relating to LLCs to contribute money.  Rather, Huyser and Boyle alleged that Carter and JWC had made an unequivocal promise to contribute funds to ACR to cover the costs of the Refund Suit, and then Carter and JWC reneged on that

-21-

promise.  USA App. 714-15.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

38.     After a trial, the Iowa state court ruled in favor of Carter and JWC and found that the ACR Operating Agreement did not obligate ACR members to contribute to the payment of ACR expenses, including attorney's fees. (PUBLIC000836, Sept. 30, 2015, Findings of Fact, Conclusions of Law, and Judgment Entry at Appx. 0717; PUBLIC000583, Polk County Clerk's Certification (for PUBLIC000836) at Appx. 0711.)

**RESPONSE:**   Boyle admits that the Iowa District Court (Ebinger, J.) issued a ruling following a bench trial in which the court considered and rejected a theory that "a September 30, 2013 email creates a contract between the parties requiring JWC to contribute to a capital call and that JWC subsequently breached this contract by failing to contribute."  USA App. 718.  The Plaintiffs in that action did not pursue a claim that JWC was obligated under the operating agreement (or under any requirement of Iowa law applicable to LLCs) to contribute capital for the Refund Suit.  *See* Pl. App. 724 ("The parties also agree the operating agreement does not require members to contribute to a capital call.").  As such, the Plaintiff's statement of fact mischaracterizes the nature of the dispute and the Iowa District Court's findings.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

39.     In the Refund Suit, Huyser aided in responding to discovery requests issued by the United States to ACR and provided responsive documents to ACR's attorneys. (Cmplt. ¶ 126 at Appx. 0531-2; Huyser Ans. ¶ 126 at Appx. 0556; 2023 Huyser Depo. 255:3-14 at Appx. 1515.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

40.     Huyser verified and signed ACR's April 2016 interrogatory responses in his role as a Member of ACR in the Refund suit. (April 26, 2016 ACR First Interrogatory Responses to US, Refund Suit, IRS002117 at Appx. 0934.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

41.     Huyser sat for a deposition and gave testimony under oath in the Refund Suit. (Cmplt. ¶ 129 at Appx. 0532; Huyser Ans. ¶ 129 at Appx. 0556; 2023 Huyser Depo. 254:25-255:2 at Appx. 1514-5.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

42.     Huyser executed affidavits submitted in support of ACR's two motions for summary judgment in the Refund Suit. (Cmplt. ¶ 130 at Appx. 0532; Huyser Ans. ¶ 130 at Appx. 0556; 2023 Huyser Depo. 259:10-22 (authenticating Ex. 94) at Appx. 1519; Ex. 94,

PUBLIC000247, Sept. 27, 2017 Huyser Affidavit & PUBLIC000128, March 9, 2017 Huyser

Affidavit at Appx. 0689; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current

motion.

43.    After summary judgment was entered against ACR by the Court of Federal

Claims, Huyser participated in the decision to appeal to the Federal Circuit. (2023 Huyser Depo.

256:2-4 at Appx. 1516.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current

motion.

44.    During the pending appeal to the Federal Circuit, Huyser traveled to Atlanta and

met with ACR's attorneys. He also met with ACR's counsel to "represent [the] interests" of

ACR members Kinley and Boyle. He travelled to Washington D.C. to personally attend a moot

of the argument by ACR's attorneys and attended the appellate oral argument. (2023 Huyser

257:22- 258:13 at Appx. 1517-8; Ex. 93, July 5, 2019 Huyser Email to Kinley and Boyle,

BOYLE00989 (Huyser stating "I will be there in Atlanta and Washington D.C. to represent our

interests.") at Appx. 0349.)

**RESPONSE:** Solely for purposes of the current motion, Boyle does not dispute that Mr.

Huyser traveled to Atlanta, met with ACR's attorneys, and travelled to Washington D.C.

to attend a moot argument and attend the appellate oral argument.  Mr. Boyle disputes

that Mr. Huyser was representing Mr. Boyle's personal interest at any time.  Rather, the

reasonable inference from Mr. Huyser's message was that he was attending and participating as ACR's representative.

45.     After the Federal Circuit affirmed the judgment against ACR, Kinley, Huyser, and Carter stopped contributing to ACR legal expenses because ACR had lost its appeal and ACR had no other business activities at the time. (2023 Huyser Dep. 239:17-240:2 (at Appx. 1507-8), 241:2-242:1 (at Appx. 1509-10).)

**RESPONSE:**   Boyle disputes that the testimony cited above supports the factual assertion.   The statement implies that there were outstanding ACR legal expenses that were not funded, which is not supported by the evidence cited.   With that having been said, Boyle does not dispute that ACR's legal expenses were much less, possibly non-existent, after ACR lost its appeal.

46.     As early as the fall of 2011, Huyser had been informed by ACR's attorney William Smith that he and the other members of ACR could be personally liable for ACR tax assessments and penalties under the theories of "transferee liability and piercing the veil." (Ex. 169, September 7, 2011 William Smith Email, HUYSER0004593 at Appx. 0489; U.S. RFA to Huyser Nos. 87-89 at Appx. 1160; Huyser Response to RFA No. 87-89 (at No. 88 Huyser admitting authenticity and Huyser's receipt of Ex. 169 & at No. 89 admitting in the September 2011 William Smith email describes two theories of recovery) at Appx. 1200; Ex. 164, Oct. 6, 2011 Boyle to Huyser Email, ACR006544 (in reference to telephone conversation with William Smith identifying "Matt asked a couple questions about veil piercing of the ACR, LLC") at

Appx. 0487; 2023 Huyser Depo. 22:16-24:20 (describing ACR-bates numbered records as business records of ACR) at Appx. 1476-8.)

> **RESPONSE:** Soley for the purposes of the present motion, Boyle does not dispute that as early as fall of 2011, William Smith identified theories of transferee liability and piercing the veil in an email with Huyser.  Boyle denies that Smith provided any advice in 2011 about whether Huyser or any other ACR member could be personally liable under those theories.  The evidence referenced above does not support the latter proposition.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

47.    After assessments of excise tax and penalties were made against ACR, by letter dated April 28, 2014, attorney William Smith advised Huyser, Kinley, and Boyle that "<u>at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some or all of the</u> members of ACR" and advised initiating the Refund Suit in the Court of Federal Claims. (Ex. 170, April 28, 2014 William Smith Memorandum, HUYSER0006165-6169 produced in this suit by James Huyser (emphasis added) at Appx. 0493; U.S. RFA to Huyser Nos. 91-34 at Appx. 1161; Huyser Response to RFA Nos. 91-94 (at No. 92 admitting authenticity of Ex. 170 & No. 93 admitting receipt of Ex. 170) at Appx. 1201)

> **RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.  However, the Plaintiff omits the end of the sentence that is quoted from Mr. Smith's April 28, 2014 letter (… for the § 6675 penalty.").  Mr. Smith was advising about a *personal* penalty under 26 U.S.C. § 6675, which is not an issue in this case.  In short,

-26-

Mr. Smith believed there was a risk that person who was responsible for submitting the alternative fuel mixture credits could face a personal penalty, similar to personal penalties asserted in payroll tax cases. Mr. Smith was not advising about a risk of liability for transferee liability or piercing the corporate veil, and the Plaintiff's selective quotation from Mr. Smith's letter mischaracterizes the evidence.

Boyle affirmatively states that Mr. Smith's April 28, 2014 letter, which was also sent to attorney Jeff Lewis, contains other statements and advice based on Mr. Smith's "substantial additional research" and his conversations with multiple legal experts, and that letter speaks for itself. *See* USA App. 491-95. For example, Mr. Smith advised:

- If ACR allowed the assessments to stand without asserting a defense, that information could be used against a defendant in a criminal trial if the government decided to pursue (baseless) criminal charges. Given the ongoing criminal investigation, Mr. Smith did not "believe in this situation we can possibly do nothing at this point."

- Smith advised that "we would appear to have the better of [an] argument" about personal liability under a theory of transferee liability.

- Smith advised as to several actions that "must be done at this time," including but not limited to filing protests with the IRS and filing an action in the Court of Federal Claims.

- Mr. Smith was representing Huyser, meanwhile Boyle and Kinley were "involved in a common defense approach." Mr. Smith advised to continue with that arrangement.

4878-2384-3286, v. 3

Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

48.     Huyser, Boyle and Kinley were aware of the potential of their personal liability as members of ACR regarding the assessments made against ACR because they received Smith's April 28, 2014 letter. (Ex. 170, April 28, 2014 Attorney William Smith's Memorandum, HUYSER0006165-6169 (at HUYSER0006166 ("At present ACR has minimal assets…It can clearly pay little if anything on the assessment") & at HUYSER0006167 ("at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some of all of the members of ACR.") at Appx. 0492, 0493; Huyser Response to RFA Nos. 91-94 (at No. 92 admitting authenticity of Ex. 170 & No. 93 admitting receipt of Ex. 170) at Appx. 1161.)

> **RESPONSE:**  Boyle disputes the Plaintiff's characterization of the April 28, 2014 letter from Mr. Smith and refers to his response to paragraph 47.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

49.     On or around May 22, 2014, Huyser received another letter from William Smith. In the May 22, 2014 letter, Smith stated that "[a]t present it seems clear to us that all principals of ACR have a common interest in defeating the assessment and the varying degrees of 'danger' as it relates to ultimate personal liability for the various penalties and credits." (Ex. 171, May 22,

2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 & emphasis added) at Appx. 0499-500; Huyser Response to RFA Nos. 96-99 (at No. 96 admitting authenticity of Ex. 171 & No. 97 admitting receipt of Ex. 171) at Appx. 1161-2.)

> **RESPONSE:**  For purposes of the present motion, Boyle does not dispute the facts stated in this paragraph.  Boyle affirmatively states that the Plaintiff's selective quotation of a sentence from the May 22, 2014 letter does not accurately convey the content of Mr. Smith's statement.  In full, the quoted sentence was as follows: "At present it seems clear to us that all principals of ACR have a common interest in defeating the assessment and varying degrees of 'danger' as it relates to ultimate personal liability for the various penalties and credits *as discussed in my April 28, 2014 letter to the three of you ignoring the failure to contest issues may have on the present IRS criminal investigation*."  USA App. 496 (emphasis added).  Further, with respect to the April 28, 2014 letter, Boyle refers to his response to paragraph 47.


50.     In his May 22, 2014 letter, attorney Smith proposed filing the Refund Suit in the Court of Federal Claims and advised that he "[felt] comfortable that a united front contesting the claim for the return of the credits and the reasonableness of the reliance by the entity on expert's advice…is a consistent defense that all of you [Huyser, Kinley, and Boyle] have and for which all of you (and Jeff Carter) receive direct personal benefit from the assertion of those defenses." (Ex. 171, May 22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 & emphasis added) at Appx. 0499-500; Huyser Response to RFA Nos. 96-99 (at No. 96 admitting authenticity of Ex. 171 & No. 97 admitting receipt of Ex. 171) at Appx. 1161-2.)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion. Boyle refers to his responses to paragraphs 47-49 and affirmatively states that Mr. Smith was not advising that he or any of the ACR members had exposure under theories of transferee liability or piercing the corporate veil. At that time, Mr. Smith had identified personal penalties under 26 U.S.C. § 6675 (not at issue here) and risks under a pending criminal investigation.

51.     "[A]s early as May 22, 2014 in advance of filing the Refund Suit, [Huyser] (*sic*) was aware that if ACR was successful in challenging the federal tax assessments made against [ACR], the possibility of a claim being asserted against Huyser for personal liability for the liabilities assessed against ACR would be eliminated." (U.S. RFA to Huyser No. 100 at Appx. 1619; Huyser Response to RFA No. 100 at Appx. 1202.)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion.

**Huyser & ACR Financial Relationship**

52.     In 2011 and 2012, ACR made $4,332,000 million in distributions to Huyser. (U.S. First RFAs to Huyser at Appx. 1017; Ex. 69, Huyser Responses to RFA Nos. 23, 27, 30 & 34 (at Appx. 0342); *see also* Huyser Supp. Responses to RFAs at Appx. 1050-51 (no change to responses to RFA Nos. 23, 27, 30 & 24).)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the

issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

53.    Huyser determined when ACR would make a distribution to all ACR members (including himself) and determined the amount of the distributions. (2023 Huyser Depo. 176:18-25 at Appx. 1489.)

**RESPONSE**:    Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

## UNDISPUTED MATERIAL FACTS WITH RESPECT TO DEFENDANT MATTHEW KINLEY

54.    In 2011, Kinley contributed to the operations of ACR by:

(a)  Communicating with feedstock (or waste) providers;

(b) Locating digesters operating outside of Iowa;

(c)  Arranging for digesters to receive the waste / diesel mixture;

(d) Hiring a salesperson and consultant, Zach Hedrington, to help find additional digesters;

(e)  Travelling out of the state of Iowa to meet with potential customers and feedstock providers;

(f)  Communicating with digesters about logistics and receipt of the waste / diesel mixture;

(g) Held meetings and gave presentations about ACR's business using a "pitch deck"; and

(h) Participating on calls with ACR advisors such as attorneys, accountants, consultants, and the trucking company transporting the waste / diesel mixture.

(2023 Kinley Depo. 157:6-159:7 (communicating with feedstock providers, researching digesters, hiring Hedrington, and reaching out to waste providers) at Appx. 1544-6; 160:5-15 (finding and meeting with digesters operators) at Appx. 1547; 161:9-22 (travel to visit digesters) at Appx. 1548; 162:25-163:21 & 164:2-22 (discussing travel & Ex. 18) at Appx. 1549-50 and 1551; 173:7-11 (on logistics) at Appx. 1552; 179:8-25 (meeting with ACR advisors and giving presentations) at Appx. 1553; Ex. 18, ACR006994-7035 (expenses for Kinley trips to Missouri, Illinois, Denver, Nebraska, Colorado, among other states) at Appx. 0145; 2023 Huyser Depo. 22:16-24:20 (describing ACR-bates numbered records as business records of ACR) at Appx. 147608; KINLEYM002989, Feb. 3, 2011 Kinley Email ("introduction" email to potential digester customer) at Appx. 0946.)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

55.    In the first half of 2011, Kinley spent 20 hours a week working on ACR business. (2023 Kinley Depo. 182:19-22 at Appx. 1554.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

56. Between February and October 2011, Kinley travelled to Illinois, Missouri, Kansas, Wisconsin, Nebraska, California, and Colorado on ACR business. (Ex. 18, ACR006995-7035, Kinley Travel Expense Submissions at Appx. 0145; 2023 Kinley Depo. 162:16-164:7 (discussing travel and authenticating Ex. 18) at Appx. 1549-51; 2023 Huyser Depo. 22:16-24:20 (describing ACR-bates numbered records as business records of ACR) at Appx. 1476-8.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

57. Kinley participated in the decision to contest the assessments of tax and penalty made against ACR by filing the Refund Suit and voluntarily agreed to pay a share of ACR's legal expenses. (2023 Kinley Depo. 228:23-229:6 (at Appx. 1556-7), 232:12-23 (at Appx. 1560), 246:19-247:18 (at Appx. 1562-3); Cmplt. ¶ 125 at Appx. 0531; Kinley Ans. ¶ 125 (admitting that he "contributed funds for payment of legal fees to ACR's counsel") at Appx. 0624.)

**RESPONSE:** Boyle denies this paragraph as vague and misleading. Kinley clearly testified that Huyser was the controlling member of ACR, and therefore the ultimate decision whether to appeal the IRS assessments was Huyser's decision. *See* USA App.

1563.  Boyle and Kinley were involved in a discussion with Huyser and agreed to pay a share of the legal expenses.  But to the extent that this paragraph implies that Kinley or Boyle made a decision for or on behalf of ACR, that is not supported by the evidence cited.

58.    From 2013 through 2019, Kinley personally contributed $99,680 towards ACR legal and accounting expenses as follows:

> (1) $8,000 in 2013;
>
> (2) $10,850 in 2014;
>
> (3) $4,761 in 2015;
>
> (4) $9,905 in 2016;
>
> (5) $23,812 in 2017;
>
> (6) $30,181 in 2018;
>
> (7) $12,171 in 2019.

(ACR 2011-2019 Basis Schedule, HJ 01287 at Appx. 0904; 2023 Kinley Depo. 232:12-23 at Appx. 1560; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99, Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

59.    A portion of Kinley's contributions to ACR for expenses (referred to above) were also used by ACR to make a partial payment of the excise tax assessments against ACR so it

could file the Refund Suit to challenge the assessments. (2023 Kinley Depo. 247:19-248:8 at Appx. 1563-4.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states these partial payments were specifically advised by attorney William Smith.  *See* USA App. 494.

60.    Kinley signed and executed a document entitled a Joint Engagement of Legal Services through which Kinley, Huyser, and Boyle jointly retained William Smith (or Bill Smith) as ACR's counsel. (2023 Kinley Depo. 245:14-246:17 (discussing & authenticating Ex. 44) at Appx. 1561-2; Ex. 44, Joint Engagement of Legal Services (signed by Matthew Kinley), MKINLEY005112) at Appx. 0263.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

61.    Kinley signed the Joint Engagement of Legal Services agreement. The agreement recites that Huyser, Kinley, and Boyle "ha[d] a common interest" in the ACR litigation. (Ex. 44, Joint Engagement of Legal Services (signed by Matthew Kinley), MKINLEY005112 at 5118 at Appx. 0268; 2023 Kinley Depo. 245:14-246:17 (authenticating Ex. 44) at Appx. 1561-2.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

62.    In the Refund Suit, Kinley assisted with locating documents in response to discovery requests to ACR. (Cmplt. ¶ 125 at Appx. 0531; Kinley Ans. ¶ 125 at Appx. 0624

-35-

("admits that he assisted with locating documents in response to discovery requests in the Refund Suit.").

> **RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

63.     During the Refund Suit, Kinley attended meetings with ACR's lead counsel, William Smith, along with Huyser and Boyle. During the meetings, they discussed the process to bring the Refund Suit and then the substance of lawsuit when it was ongoing. (2023 Kinley Depo. 246:22-247:9 at Appx. 1562-3.)

> **RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

64.     Before and during the Refund Suit, Kinley corresponded directly with ACR's accounting firm, Hamilton Juffer, about ACR's ongoing legal expenses and to provide information and guidance about preparation of ACR's tax returns. (Sept. 13, 2013, Kinley to Smerage Email Chain, HJ 00454 at Appx. 882; Aug. 24, 2016, Kinley to Smerage Email, HJ 01297 at Appx. 0905; Jan. 9, 2017, Kinley to Smerage Email, HJ 01223 at Appx. 0895; March 24, 2018, Kinley to Smerage Email, HJ 01228 at Appx. 0896; Jan. 23, 2019, Kinley to Smerage Email, HJ 01256 (Kinley telling Smerage he'll share information about ACR trust account kept with ACR attorney Bill Smith) at Appx. 0901; Ex. 40, Jan. 23, 2019 Kinley to Smerage Email, HJ 01259 at Appx. 0259; Ex. 46, Feb. 27, 2020 Kinley to Smerage Email Chain, HJ 01280 (Kinley informing Smerage after "After October [2019] we [Kinley, Boyle & Huyser] have started to incur personal legal expenses separately but those expenses are will (*sic*) not be pooled

in ACR") at Appx. 0277; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400- 1296 document range) at Appx 0367.)

**RESPONSE:**   Boyle does not dispute these facts solely for purposes of the current motion.

65.    During the Refund Suit, Kinley reviewed and approved the content of ACR tax returns. (Jan. 30, 2013 Kinley to Smerage Email, HJ 00457 at Appx. 0883; Sept. 13, 2013 Kinley to Smerage Email, HJ 00454 at Appx 0882; July 16, 2014 Kinley to Smerage Email, HJ 01100 at Appx. 0885; Aug. 5, 2014, Kinley to Smerage Email, HJ 01102 at Appx. 0887; Sept. 15, 2015, Kinley to Smerage Email, HJ 01199 at Appx. 0889; Aug. 31, 2016, Kinley to Smerage Email, HJ 01214 at Appx. 0891 (Kinley "Brad – return looks good, let's file when ready."); Aug. 22, 2018, Kinley to Smerage Email, HJ 01244 at Appx. 898; Ex. 46, Feb. 2020 Email Chain (Kinley directing Smerage to prepare ACR's "final return") at Appx. 0278; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 367.)

**RESPONSE:**   Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

66.    Kinley sat for a deposition and gave testimony under oath in the Refund Suit. (Cmplt. ¶ 129 at Appx. 0532; Kinley Ans. ¶ 129 at Appx. 0624; 2023 Kinley Depo. 248:17-22 at Appx. 1564.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

67.    To prepare for his deposition, Kinley met with William Smith, as counsel for ACR, and with a personal attorney. (2016 Kinley Depo. 95:8-18 at Appx. 1527.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

68.    Kinley executed affidavits submitted in support of ACR's two motions for summary judgment in the Refund Suit. (2023 Kinley Depo. 250:12-251:1 (authenticating and discussing Ex. 45) at Appx. 1566-7; PUBLIC000144, March 9, 2017 Kinley Affidavit at Appx. 0705; Ex. 45, PUBLIC000263, Sept. 27, 2017 Kinley Affidavit at Appx. 0271; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

69.    Kinley personally produced documents in response to a Rule 45 subpoena in the Refund Suit. (2023 Kinley Depo. 249:14-17 at Appx. 1565.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

70.     After the Court of Federal Claims entered summary judgment against ACR, Kinley participated in meetings where he, Huyser, and Boyle discussed the decision to appeal. Kinley also voluntarily contributed his pro rata share of the legal expenses for the appeal. (2023 Kinley Depo. 252:20- 253:4, at Appx. 1567A to 1567B.)

**RESPONSE:**  For purposes of the present motion, Boyle does not dispute the facts stated in this paragraph. Boyle affirmatively states that he and Kinley merely participated in discussions and they did not have the ability to make any decision for ACR related to the appeal.   Boyle refers to his response to paragraph 57 and paragraphs 22-32 of his statement of additional material facts.

71.     After the Federal Circuit affirmed the judgment against ACR, Kinley, Huyser, and Carter stopped contributing to ACR legal expenses because ACR had lost its appeal and ACR had no other business activities at the time. (2023 Kinley Depo. 238:10-239:23, at Appx. 1560A to 1560B; Ex. 46, Feb. 27, 2020 Kinley to Smerage Email Chain, HJ 01280 (Kinley informing Smerage after October 2019 ACR members will no longer be paying ACR expenses) at Appx. 0277; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx. 1579-82), 118:11-119:1 (authenticating Ex. 46) (at Appx. 1597-8); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 367.)

**RESPONSE:**   Boyle disputes that the testimony cited above supports the factual assertion.   The statement implies that there were outstanding ACR legal expenses that were not funded, which is not supported by the evidence cited.   With that having been

said, Boyle does not dispute that ACR's legal expenses were much less, possibly non-existent, after ACR lost its appeal.

72.    After the Federal Circuit affirmed the judgment against ACR, Kinley participated in discussions with members about efforts the government could employ to collect the $59 million judgment against ACR. (2023 Kinley 258:3- 259:1 at Appx. 1568-9.)

**RESPONSE:**    Boyle admits that there was a discussion among ACR's members of "where's it go from here?"  You know, "what's the next step on this for collection and fighting it?"  USA App. 1568.  To the extent the government suggests any more or different discussion, the testimony cited does not support the statement.

73.    Since the Federal Circuit's decision in the Refund Suit,

(a)    Kinley has not contributed any funds to ACR to pay any portion of the judgment.

(b)    Kinley, along with Huyser and Boyle, decided to file a final return for ACR in 2019, and not contribute funds to ACR to pay any portion of the liabilities.

(c)    Kinley, Huyser and Boyle jointly decided to formally close ACR as a business.

(*See* 2023 Kinley 258:3-259:1 at Appx. 1568-9; Ex. 46, Feb. 27, 2020 Kinley to Smerage Email Chain, HJ 01280 (Kinley informing Smerage after October 2019 ACR members will no longer be paying ACR expenses) at Appx. 0277; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 are business records of Hamilton Juffer) (at Appx.

1579-82), 118:11-119:1 (authenticating Ex. 46) (at Appx. 1597-8); Ex. 99 Hamilton Juffer

Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

> **RESPONSE:**  Solely for purposes of the present motion, Boyle does not dispute
>
> paragraph 73(a).  Boyle disputes paragraphs 73(b) and 73(c) to the extent they state or
>
> suggest that Boyle had any decision-making authority or made any decision regarding the
>
> final return for ACR or closing ACR as a business.  The evidence cited in this paragraph
>
> does not support those allegations.  Boyle affirmatively states that this paragraph is not
>
> material to any of the issues raised in the Plaintiff's motion for partial summary judgment
>
> and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material*
>
> facts).

74.  As early as the fall of 2011, Kinley had been informed by ACR's attorney

William Smith that he and the other the members of ACR could be personally liable for ACR tax

assessments and penalties under the theories of "transferee liability and piercing the veil." (Ex.

169, September 7-8, 2011 William Smith Emails, HUYSER0004593 at Appx. 0489; U.S. RFA

to Kinley Nos. 94-96 at Appx. 1648; Kinley Response to RFA Nos. 94-96 (at No. 95 Kinley

admitting authenticity and receipt of Ex. 169 & at No. 96 admitting in the September 2011

William Smith email describes two theories of recovery) at Appx. 1667-8.)

> **RESPONSE:**  Soley for the purposes of the present motion, Boyle does not dispute that
>
> as early as fall of 2011, William Smith identified theories of transferee liability and
>
> piercing the veil in an email with Huyser.  Boyle denies that Smith provided any advice
>
> in 2011 about whether Huyser or any other ACR member could be personally liable
>
> under those theories.   The evidence referenced above does not support the latter

proposition.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).


75.    After assessments of tax and penalty were made against ACR, by letter dated April 28, 2014, William Smith advised Huyser, Kinley, and Boyle that "<u>at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some or all of the members of ACR</u>" and advised initiating the Refund Suit in the Court of Federal Claims. (Ex. 170, April 28, 2014 William Smith Memorandum, HUYSER0006165-6169 (emphasis added) at Appx. 0493; U.S. RFA to Kinley at Nos. 99-102 at Appx. 1189-90; Kinley Response to RFAs No. 99-102 (at No. 99 admitting authenticity of Ex. 170 & No. 100 admitting receipt of Ex. 170) at Appx. 1221-2.)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  However, the Plaintiff omits the end of the sentence that is quoted from Mr. Smith's April 28, 2014 letter (… for the § 6675 penalty.").  Mr. Smith was advising about a personal penalty under 26 U.S.C. § 6675, which is not an issue in this case.  In short, Mr. Smith believed there was a risk that person who was responsible for submitting the alternative fuel mixture credits could face a personal penalty, similar to personal penalties asserted in payroll tax cases.  Mr. Smith was not advising about a risk of liability for transferee liability or piercing the corporate veil, and the Plaintiff's selective quotation from Mr. Smith's letter mischaracterizes the evidence.
>
> Boyle affirmatively states that Mr. Smith's April 28, 2014 letter, which was also sent to attorney Jeff Lewis, contains other statements and advice based on Mr. Smith's

-42-

"substantial additional research" and his conversations with multiple legal experts, and that letter speaks for itself. *See* USA App. 491-95. For example, Mr. Smith advised:

- If ACR allowed the assessments to stand without asserting a defense, that information could be used against a defendant in a criminal trial if the government decided to pursue (baseless) criminal charges. Given the ongoing criminal investigation, Mr. Smith did not "believe in this situation we can possibly do nothing at this point."

- Smith advised that "we would appear to have the better of [an] argument" about personal liability under a theory of transferee liability.

- Smith advised as to several actions that "must be done at this time," including but not limited to filing protests with the IRS and filing an action in the Court of Federal Claims.

- Mr. Smith was representing Huyser, meanwhile Boyle and Kinley were "involved in a common defense approach." Mr. Smith advised to continue with that arrangement.

Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

76.     Huyser, Boyle and Kinley were aware of potential of their personal liability as members of ACR for the assessments made against ACR because they received Smith's April 28, 2014 letter. (Ex. 170, April 28, 2014 Attorney William Smith's Memorandum, HUYSER0006165-6169 (at HUYSER0006166 ("At present ACR has minimal assets…It can

-43-

clearly pay little if anything on the assessment") (at Appx. 0492) & at HUYSER0006167 ("at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some of all of the members of ACR.") (at Appx. 0493); U.S. RFA to Kinley at Nos. 99-102 at Appx. 1189-90; Kinley Response to RFAs No. 99-102 (at No. 99 admitting authenticity of Ex. 170 & No. 100 admitting receipt of Ex. 170) at Appx. 1668-69.)

**RESPONSE:**  Boyle disputes the Plaintiff's characterization of the April 28, 2014 letter from Mr. Smith and refers to his response to paragraph 75.

77.     "[A]s early as April 28, 2014, Kinley was aware it was possible he could face claims for personal liability for IRS penalty assessments made against ACR in the event the IRS penalty assessments were found to be valid." (U.S. RFA to Kinley No. 102 at Appx. 1190; Kinley Response to RFA No. 102 at Appx. 1669.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

78.     On or around May 22, 2014, Kinley received another letter from William Smith. In this letter, Smith stated that "[a]t present it seems clear to us that all principals of ACR have a common interest in defeating the assessment and the varying degrees of 'danger' as it relates to ultimate personal liability for the various penalties and credits." (Ex. 171, May 22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 & emphasis added) at Appx. 0499-500; Kinley Responses to RFA Nos. 103-106 (at No. 103 admitting authenticity of Ex. 171 & No. 104 admitting receipt of Ex. 171) at Appx. 1669-70.)

**RESPONSE:**  For purposes of the present motion, Boyle does not dispute the facts stated in this paragraph.  Boyle affirmatively states that the Plaintiff's selective quotation of a sentence from the May 22, 2014 letter does not accurately convey the content of Mr. Smith's statement.  In full, the quoted sentence was as follows: "At present it seems clear to us that all principals of ACR have a common interest in defeating the assessment and varying degrees of 'danger' as it relates to ultimate personal liability for the various penalties and credits *as discussed in my April 28, 2014 letter to the three of you ignoring the failure to contest issues may have on the present IRS criminal investigation*."  USA App. 496 (emphasis added).  Further, with respect to the April 28, 2014 letter, Boyle refers to his response to paragraph 47.

79.    In the May 22, 2014 letter, Smith proposed filing the Refund Suit in the Court of Federal Claims and advised he "[felt] comfortable that a united front contesting the claim for the return of the credits and the reasonableness of the reliance by the entity on expert's advice…is a consistent defense that all of you [Huyser, Kinley, and Boyle] have and for which all of you (and Jeff Carter) receive direct personal benefit from the assertion of those defenses." (Ex. 171, May 22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 & emphasis added) at Appx. 0499-500; U.S. RFA to Kinley Nos. 103-106 at App. 1190; Kinley Responses to RFA Nos. 103-106 (at No. 103 admitting authenticity of Ex. 171 & No. 104 admitting receipt of Ex. 171) at Appx. 1669-70.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle refers to his responses to paragraphs 47-49 and affirmatively states that Mr. Smith was not advising that he or any of the ACR members had exposure under

theories of transferee liability or piercing the corporate veil.  At that time, Mr. Smith had identified personal penalties under 26 U.S.C. § 6675 (not at issue here) and risks under a pending criminal investigation.

80.    "[A]s early as May 22, 2014, Kinley was aware that if ACR was successful in challenging the federal tax assessments made against [ACR], the possibility of a claim being asserted against Kinley for personal liabilities for the liabilities assessed against ACR would be eliminated." (U.S. RFA to Kinley No. 107 at Appx. 1190-1; Kinley Response to RFA No. 107 at Appx. 1670.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

### Kinley & ACR Financial Relationship

81.    In 2011 and 2012, ACR made $830,000 in distributions to Kinley. (U.S. First RFAs to Kinley at Appx. 1041-3; Kinley Responses to RFA Nos. 18 & 22 (at Appx. 1074), 25 & 28 (at Appx. 1075).)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

82.    Kinley personally received the ACR distribution checks and deposited them. (2023 Kinley Depo. 144:18-145:13 at Appx. 1542-3.)

4878-2384-3286, v. 3

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

## UNDISPUTED MATERIAL FACTS WITH RESPECT TO DEFENDANT KENNETH BOYLE

83.    Boyle became a member of ACR in 2011. (U.S. First RFAs to Boyle at Appx. 1002; Boyle Response to RFA No. 11 at Appx. 1056; 2023 Boyle Depo. 87:7-12 at Appx. 1320.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

84.    Boyle's duties with ACR included:

(a)    Undertaking research and business development with potential digester customers (with whom ACR would deposit their waste / diesel mixture);

(b)    Setting up ACR email accounts for the members;

(c)    Meeting with and travelling to visit potential digester customers outside of Iowa and viewing their facilities;

(d)    Meeting with feedstock specialists; and

(e)    Earning commissions from ACR for digester customers that he found that agreed to receive ACR's waste / diesel mixture.

(2023 Boyle Depo. 145:6-146:15 (on customer research, meeting with feedstock specialists & research and business development) (at Appx. 1325-6); 148:3-24 (on creating ACR email

account) (at Appx. 1327); 159:12-160:2 (on commission) (at Appx. 1330-1); 177:3-179:16 (on sales and marketing role and work travel) (at Appx. 1334-6.))

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

85.    In 2011, Boyle spent 30 to 40 hours a week on ACR business. (2016 Boyle Depo. 25:6-11 at Appx. 1300.)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

86.    Boyle personally contributed funds to pay ACR's attorneys fees incurred in the Refund Suit, along with Huyser and Kinley. (2023 Boyle Depo. 218:20-219:1 at Appx. 1349-50.)

> **RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

87.    From 2013 through 2019, Boyle personally contributed $76,732 towards ACR legal and accounting expenses as follows:

> (1) $8,000 in 2013;
>
> (2) $10,850 in 2014;

-48-

(3) $4,761 in 2015;

(4) $9,905 in 2016;

(5) $23,812 in 2017;

(6) $15,024 in 2018;

(7) $4,380 in 2019.

(ACR 2011-2019 Basis Schedule, HJ 01287 at Appx. 0904; 2023 Boyle Depo. 218:20-219:1 at Appx. 1349-50; 2023 Smerage Depo. 33:14-17 (at Appx. 1578), 38:23-41:15 (describing documents in HJ 0400-1296 as business records of Hamilton Juffer) (at Appx. 1579-82); Ex. 99 Hamilton Juffer Records Declaration (for HJ0400-1296 document range) at Appx. 0367.)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion.

88.    Boyle signed an agreement through which he, along with Kinley and Huyser, jointly retained William Smith (or Bill Smith) as ACR's counsel. (2023 Boyle Depo. 200:23-201:4 (describing Bill Smith as attorney for ACR) (at Appx. 1341-2), 218:15-19 (describing Bill Smith as also personal attorney in Refund Suit) (at Appx. 1349), and 223:16-224:2 (describing joint engagement of Smith by ACR members) (at Appx. 1352-3).)

**RESPONSE**: Boyle does not dispute these facts solely for purposes of the current motion.

89.    Boyle wanted ACR to file the Refund Suit. (2023 Boyle Depo. 218:8-9 at Appx. 1349.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

90.     Boyle met with and corresponded with Jeffrey Carter to request Carter to contribute to ACR's expenses, including its attorney's fees. (2023 Boyle Depo. 219:21-220:22 at Appx. 1349; Polk County Trial, Boyle 45:19-46:3 at Appx. 1290- 1; Ex. 65 at JWC-0032-43, June 2014 Email Chain between Boyle and Carter at Appx. 0322-3.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.  Boyle further states that the testimony referenced includes statements from Boyle that he met in person with Carter, and at that time Carter said he would talk with his attorney about contributing funds for ACR's benefit.  *See* USA App. 1291, 322.

91.     Boyle, along with Huyser, in their personal capacities, sued Jeffrey Carter and JWC in Iowa state court seeking an affirmative injunction requiring Carter and JWC to contribute to ACR legal expenses. (2023 Boyle Depo. 225:15- 226:1 at Appx. 1354-5; PUBLIC000585, Certified Polk County Petition at Appx. 0713; PUBLIC000583, Polk County Clerk's Certification (for PUBLIC000585) at Appx. 0711.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that the basis for the claim against Carter and JWC was not that Carter or JWC had some obligation under the Amended Operating Agreement or under Iowa law relating to LLCs to contribute money.  Rather, Huyser and Boyle alleged that Carter and JWC had made an unequivocal promise to contribute funds to ACR to cover the costs of the Refund Suit, and then Carter and JWC reneged on that

promise. USA App. 714-15. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

92.     After a trial, the Iowa state court ruled in favor of Carter and JWC and found that the ACR Operating Agreement did not obligate ACR members to contribute to the payment of ACR expenses, including attorney's fees. (PUBLIC000836, Sept. 30, 2015, Certified Findings of Fact, Conclusions of Law, and Judgment Entry at Appx. 0717; PUBLIC000583, Polk County Clerk's Certification (for PUBLIC000836) at Appx. 0711.)

**RESPONSE:** Boyle admits that the Iowa District Court (Ebinger, J.) issued a ruling following a bench trial in which the court considered and rejected a theory that "a September 30, 2013 email creates a contract between the parties requiring JWC to contribute to a capital call and that JWC subsequently breached this contract by failing to contribute." USA App. 718. The Plaintiffs in that action did not pursue a claim that JWC was obligated under the operating agreement (or under any requirement of Iowa law applicable to LLCs) to contribute capital for the Refund Suit. *See* Pl. App. 724 ("The parties also agree the operating agreement does not require members to contribute to a capital call."). As such, the Plaintiff's statement of fact mischaracterizes the nature of the dispute and the Iowa District Court's findings. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

4878-2384-3286, v. 3

93.     During the course of the Refund Suit, Boyle attended meetings about the litigation with ACR's lead counsel, William Smith. Huyser and Kinley also attended those meetings. Boyle agreed with the decisions made by ACR's attorney William Smith. (2023 Boyle Depo. 216:22-217:13 (at Appx. 1397-8), 218:2-9 (at Appx. 1349.))

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that the evidence cited here does not support an inference that Boyle had any decision-making authority or that he made any decisions with respect to ACR's litigation strategy in the Refund Suit.

94.     During the Refund Suit, Boyle reviewed documents prepared by William Smith's law firm. (2023 Boyle Depo. 215:23-216:1 at Appx. 1346-7; Dec. 4, 2018 Email from Smith to Boyle attaching Reply Brief, BOYLE00639 at Appx. 0828.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that the evidence cited here does not support an inference that Boyle had any decision-making authority or that he made any decisions with respect to ACR's litigation strategy in the Refund Suit.

95.     Boyle received frequent emails from William Smith or his law firm about the Refund Suit, including bills for expert witnesses, case status, and legal expense invoices. (BOYLE00722, April 13, 2019 Kinley to Boyle Email at Appx. 0868; September 15, 2018 Email from Smith, BOYLE00967 at Appx. 0875; Sept. 5, 2019 Smith Email, BOYLE00994 at Appx. 0877.)

**RESPONSE:**  Boyle disputes whether the evidence cited here (three email chains) supports a conclusion about *frequent* emails.  Boyle further states that the evidence cited here does not support an inference that Boyle had any decision-making authority or that he made any decisions with respect to ACR's litigation strategy in the Refund Suit.  *See* Boyle's Statement of Additional Material Facts ¶¶ 22-32.

96.    During discovery in the Refund Suit, Boyle participated in the discovery process on behalf of ACR by searching his personal documents, emails, paperwork, forms, and other documents and provided copies to counsel for ACR. (2023 Boyle Depo. 216:3-21 at Appx. 1347; Ex. 57, Aug. 9, 2016, Boyle to Smith Email, BOYLE00730 at Appx. 0289.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that the evidence cited here does not support an inference that Boyle had any decision-making authority or that he made any decisions with respect to ACR's litigation strategy in the Refund Suit.  *See* Boyle's Statement of Additional Material Facts ¶¶ 22-32.

97.    Boyle communicated with expert witnesses in the Refund Suit, informed them that they might receive a subpoena, and attended conference calls with expert witnesses and ACR counsel. (Feb. 2017 Email Chain, BOYLE00819 at Appx. 0873.)

**RESPONSE:**  Solely for purposes of the current motion, Boyle does not dispute that he sent an email to an expert witness in the Refund Suit, informing them they may receive a subpoena and introducing ACR's counsel, William Smith.  The evidence cited does not indicate that Boyle participated in a conference call, let alone multiple conference calls

with expert witnesses, as alleged here. Boyle affirmatively states that the evidence cited

here does not support an inference that Boyle had any decision-making authority or that

he made any decisions with respect to ACR's litigation strategy in the Refund Suit. *See*

Boyle's Statement of Additional Material Facts ¶¶ 22-32.

98.    Boyle sat for a deposition and gave testimony under oath in the Refund Suit.

(Cmplt. ¶ 129 at Appx. 0532; Boyle Ans. ¶ 129 at Appx. 0594; 2023 Boyle Depo. 218:10-14 at

Appx. 1349.)

    **RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current

    motion.    Boyle affirmatively states that the evidence cited here does not support an

    inference that Boyle had any decision-making authority or that he made any decisions

    with respect to ACR's litigation strategy in the Refund Suit. *See* Boyle's Statement of

    Additional Material Facts ¶¶ 22-32.

99.    To prepare for the Refund Suit deposition, Boyle met with William Smith, ACR's

counsel. Smith defended Boyle's deposition on behalf of ACR and as Boyle's attorney. (2023

Boyle Depo. 218:15-19 (Boyle prepared for deposition by talking to "my attorney…Bill Smith"

at Appx. 1349; 2016 Boyle Depo. 6:19-24 at Appx. 1298.)

    **RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current

    motion.    Boyle affirmatively states that the evidence cited here does not support an

    inference that Boyle had any decision-making authority or that he made any decisions

    with respect to ACR's litigation strategy in the Refund Suit. *See* Boyle's Statement of

    Additional Material Facts ¶¶ 22-32.

100.    Boyle executed affidavits submitted in support of ACR's two motions for summary judgment in the Refund Suit. (2023 Boyle Depo. 228:6-229:1 (describing Ex. 66) at Appx. 1356-7; Ex. 66, PUBLIC000114, March 9, 2017 Boyle Affidavit & PUBLIC000233, Sept. 27, 2017 Boyle Affidavit at Appx. 0334; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.    Boyle affirmatively states that the evidence cited here does not support an inference that Boyle had any decision-making authority or that he made any decisions with respect to ACR's litigation strategy in the Refund Suit.    *See* Boyle's Statement of Additional Material Facts ¶¶ 22-32.


101.    As early as the fall of 2011, Boyle had attended a telephone call with ACR's attorney, William Smith, where the topic of "veil piercing of the ACR, LLC" was discussed. (Ex. 164, Oct. 6, 2011, Boyle Email ACR006544-45 at Appx. 0487-8; 2023 Huyser Depo. 22:16-24:20 (describing ACR-bates numbered records as business records of ACR) at Appx. 1476-8; U.S. RFA to Boyle Nos. 86-90 at Appx. 1132-3; Boyle Response to RFA Nos. 86-90 (at No. 87 admitting authenticity of Ex. 164.) at Appx. 1259-60)

**RESPONSE:**    Boyle disputes this statement.    Nothing in the evidence cited demonstrates that Boyle attended a telephone call.    The evidence shows that Huyser received a bill from Mr. Smith's office and asked Boyle about the bill.    USA App. 488.    Boyle then responded to Huyser, stating in relevant part: "Yes.    Matt asked a couple questions about veil piercing of the ACR, LLC.    How much was the Bill, believe it was a 10 minute

discussion?" USA App. 487. There is no evidence that Boyle was part of that discussion or that he understood the substance of that discussion.

102.    As of October 6, 2011, Boyle was aware that Matthew Kinley raised "questions about veil piercing of the ACR, LLC" with William Smith. (U.S. RFA to Boyle No. 90 at Appx. 1133; Boyle Response to RFA No. 90 at Appx. 1260.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

103.    After assessments of excise tax and penalties were made against ACR, by letter dated April 28, 2014, attorney William Smith advised Huyser, Kinley, and Boyle that "<u>at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some or all of the members of ACR</u>" and advised initiating the Refund Suit in the Court of Federal Claims. (Ex. 170, April 18, 2014 William Smith Memorandum, HUYSER0006165-6169 produced in this suit by James Huyser (emphasis added) at Appx. 0493; U.S. RFA to Boyle Nos. 92, 94-95 at Appx. 0491; Boyle Response to RFA Nos. 92, 94-95 (No. 94 admitting receipt of Ex. 170) at Appx. 1260.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion. However, the Plaintiff omits the end of the sentence that is quoted from Mr. Smith's April 28, 2014 letter (… for the § 6675 penalty."). Mr. Smith was advising about a *personal* penalty under 26 U.S.C. § 6675, which is not an issue in this case. In short,

Mr. Smith believed there was a risk that person who was responsible for submitting the alternative fuel mixture credits could face a personal penalty, similar to personal penalties asserted in payroll tax cases.  Mr. Smith was not advising about a risk of liability for transferee liability or piercing the corporate veil, and the Plaintiff's selective quotation from Mr. Smith's letter mischaracterizes the evidence.

Boyle affirmatively states that Mr. Smith's April 28, 2014 letter, which was also sent to attorney Jeff Lewis, contains other statements and advice based on Mr. Smith's "substantial additional research" and his conversations with multiple legal experts, and that letter speaks for itself. *See* USA App. 491-95.  For example, Mr. Smith advised:

- If ACR allowed the assessments to stand without asserting a defense, that information could be used against a defendant in a criminal trial if the government decided to pursue (baseless) criminal charges.  Given the ongoing criminal investigation, Mr. Smith did not "believe in this situation we can possibly do nothing at this point."

- Smith advised that "we would appear to have the better of [an] argument" about personal liability under a theory of transferee liability.

- Smith advised as to several actions that "must be done at this time," including but not limited to filing protests with the IRS and filing an action in the Court of Federal Claims.

- Mr. Smith was representing Huyser, meanwhile Boyle and Kinley were "involved in a common defense approach."  Mr. Smith advised to continue with that arrangement.

104.    Huyser, Boyle and Kinley were aware of the potential of their personal liability as members of ACR for the assessments made against ACR because they received Smith's April 28, 2014 letter. (Ex. 170, April 28, 2014 Attorney William Smith's Memorandum, HUYSER0006165-6169 (at HUYSER0006166 ("At present ACR has minimal assets…It can clearly pay little if anything on the assessment") & at HUYSER0006167 ("at this point there is significant risk that the IRS would ultimately assert individual liability for the penalty against some of all of the members of ACR.") at Appx. 0492-3; U.S. RFA to Boyle Nos. 92, 94- 95 at Appx. 1133-4; Boyle Response to RFA Nos. 92, 94-95 (No. 94 admitting receipt of Ex. 170) at Appx. 1260.)

**RESPONSE:**  Boyle disputes the Plaintiff's characterization of the April 28, 2014 letter from Mr. Smith and refers to his response to paragraph 103.

105.    "[A]s early as April 28, 2014, Mr. Boyle was aware that he faced some risk that the IRS would assert that he was individually liable for penalty assessments made against ACR." (U.S. RFA to Boyle No. 96 at Appx. 1134; Boyle Response to RFA No. 96 at Appx. 1260-1.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

106.    On or around May 22, 2014, Boyle received another letter from William Smith. In this letter, Smith stated that "[a]t present it seems clear to us that all principals of ACR have a common interest in defeating the assessment and the varying degrees of 'danger' as it relates to ultimate personal liability for the various penalties and credits." (Ex. 171, May 22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74) at Appx.

-58-

0499-500; U.S. RFA to Boyle Nos. 97-100 at Appx. 1134; Boyle Response to RFA Nos. 97-100

(at No. 97 admitting authenticity of Ex. 171 & No. 98 admitting receipt of Ex. 171) at Appx.

1261.)

> **RESPONSE:**  For purposes of the present motion, Boyle does not dispute the facts stated
>
> in this paragraph.  Boyle affirmatively states that the Plaintiff's selective quotation of a
>
> sentence from the May 22, 2014 letter does not accurately convey the content of Mr.
>
> Smith's statement.  In full, the quoted sentence was as follows: "At present it seems clear
>
> to us that all principals of ACR have a common interest in defeating the assessment and
>
> varying degrees of 'danger' as it relates to ultimate personal liability for the various
>
> penalties and credits *as discussed in my April 28, 2014 letter to the three of you ignoring*
>
> *the failure to contest issues may have on the present IRS criminal investigation*."  USA
>
> App. 496 (emphasis added).  Further, with respect to the April 28, 2014 letter, Boyle
>
> refers to his response to paragraph 47.

107.    In the May 22, 2014 letter, Smith proposed filing the Refund Suit in the Court of

Federal Claims and advised he "[felt] comfortable that a united front contesting the claim for the

return of the credits and the reasonableness of the reliance by the entity on expert's advice…is a

consistent defense that all of you [Huyser, Kinley, and Boyle] have and for which all of you (and

Jeff Carter) receive direct personal benefit from the assertion of those defenses." (Ex. 171, May

22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 &

emphasis added) at Appx. 0499-500; Boyle Response to RFA Nos. 97-100 (at No. 97 admitting

authenticity of Ex. 171 & No. 98 admitting receipt of Ex. 171) at Appx. 1261.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle refers to his responses to paragraphs 47-49 and affirmatively states that Mr. Smith was not advising that he or any of the ACR members had exposure under theories of transferee liability or piercing the corporate veil. At that time, Mr. Smith had identified personal penalties under 26 U.S.C. § 6675 (not at issue here) and risks under a pending criminal investigation.

108.    As early as May 22, 2014, "Mr. Boyle was aware that defeating the federal tax assessments would eliminate any possibility of personal liability for those assessments." (Boyle Response to RFA No. 101 at Appx. 1261; Ex. 171, May 22, 2014, Attorney William Smith's Letter, HUYSER0006170-74 (at HUYSER0006173-74 & emphasis added) at Appx. 0499-500.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

### Boyle & ACR Financial Relationship

109.    In 2011 and 2012, ACR made $830,000 in member distributions to Boyle. (U.S. First RFAs to Boyle at Appx. 1003-5; Ex. 48, Boyle Responses to RFA Nos. 14, 18, 21, & 25 (admitting received $500,000 in 2011 and $330,000 in 2012) at Appx. 0284-7.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

110.    In 2011 and 2012, Boyle personally received his ACR distributions by check and deposited them. (2023 Boyle Depo. 174:7-13 at Appx. 1333.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

## UNDISPUTED MATERIAL FACTS WITH RESPECT TO DEFENDANTS JEFFREY CARTER & JWC INVESTMENTS LC

### Jeffrey Carter & JWC Investments LC Involvement in the Refund Suit

111.    During ACR's start-up phase in 2010 and during its operations in 2011, Carter:

(a)    Communicated with ethanol companies about procuring their waste for ACR's operations;

(b)    Worked closely with representatives of Des Moines Wastewater (a digester) to test whether ACR's mixture could be deposited in their digester;

(c)    Found new digester customers;

(d)    Communicated with ACR attorneys and accountants; and

(e)    Spent about 20-30 hours a week on ACR business.

(2023 Carter Depo. 95:1-97:21 (on work with Des Moines Wastewater) at Appx. 1423-5; 106:13-15 ("I spent personally a lot of hours" on ACR in 2011) at Appx 1426; 107:18-25 (communicating with ACR attorneys) at Appx. 1427; 108:13- 110:7 (on finding new digester customers, communicating with Des Moines Wastewater, communicating with attorney Greg

-61-

Sanderson, communicating with waste producers, & spending 20-30 hours a week on ACR business) at Appx. 1428-30; and 126:15-18 (on procuring waste) at Appx. 1432.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

112.    During the Refund Suit, Carter and JWC "fully participated in the [Refund Suit] including participating in depositions, being represented by counsel, and actively participating in the litigation." (ECF No. 35-001 at 7, Carter & JWC Memorandum in Support of Motion to Dismiss in above-captioned case at Appx. 0639.)

**RESPONSE:** Boyle does not dispute that Carter claimed as much. Boyle does not adopt this characterization.

113.    Carter and JWC, while not named parties in the Refund Suit, "were agents of [ACR] the named party in the prior case, and their interests were adequately represented by someone with the same interest." (ECF No. 35-001 at 7 at Appx. 0639.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion. Boyle denies that this statement (or the evidence cited herein) has any bearing on any claim against Boyle.

114.    In the Refund Suit, Carter and JWC "had notice [of the lawsuit], participated in discovery, depositions and the defense of ACR." (ECF No. 35-001 at 8 at Appx. 0640; 2023 Carter Depo. 217:25-218:5 (received notice of potential Refund Suit in 2014) at Appx. 1439-40.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

115.    Carter individually and JWC had the same interests that ACR had in the Refund Suit: "to obtain [an] abatement of all the IRS's claims for taxes against ACR [and t]he nonparties in the prior suit (ACR's members) [including Carter & JWC] were representing ACR in the suit and protecting its and <u>their identical interests</u>. The ACR members understood they were acting in a representative capacity for ACR." (ECF No. 35-001 at 8 (emphasis added) at Appx. 0640.)

**RESPONSE:**  Boyle disputes that his interests were identical to ACR's interests in the Refund Suit as to all issues.  The evidence cited here is a statement by JWC and Carter and is not evidence that is admissible against Boyle.  Boyle further refers to his statement of additional facts.

116.    In the Refund Suit, Carter sat for a deposition and gave testimony under oath. (Cmplt. ¶ 129 at Appx. 0532; Carter Ans. ¶ 129 at Appx. 0664; 2023 Carter Depo. 220:5-8 at Appx. 1442.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

117.    Carter executed affidavits submitted in support of ACR's two motions for summary judgment in the Refund Suit. (Cmplt. ¶ 130 at Appx. 0532; Carter & JWC Ans. ¶ 130 at Appx. 0664; 2023 Carter Depo. 221:3-222:2 at Appx. 1443- 4; PUBLIC000121, March 9, 2017 Carter Refund Suit Affidavit at Appx. 0682; Ex. 155, Sept. 17, 2017 Carter Refund Suit Affidavit at Appx. 0427; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

118.    Carter (through JWC) produced documents in response to Rule 45 subpoenas in the Refund Suit. (Cmplt. ¶ 128 at Appx. 0532; Carter & JWC Ans. ¶ 128 at Appx. 0664; 2023 Carter Depo. 220:9-12 at Appx. 1442.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

119.    In the Refund Suit, Carter signed and entered into a Contract for Legal Services ("Contract") with William Smith (or Bill Smith), of the law firm Smith & Kramer P.C., who represented ACR in the Refund Suit. (2023 Carter Depo. 218:19-219:23 (authenticating and describing Ex. 154) at Appx. 1440-1; Ex. 154, June 30, 2016 Contract for Legal Services, HUYSER0000406 at Appx. 0425.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

120.    The Contract provided that Smith would assist Carter and Carter's attorney, Shayla McCormally, in "going over documents and responses to pleading (sic)" in the Refund Suit "relative to such litigation and, in particular, as it relates to a pending deposition of Carter." (Ex. 154 at Section 2 at Appx. 0425; 2023 Carter Depo. 218:19-219:23 at Appx. 1440-1.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

121.    The Contract further stated that Carter had a "common interest with [ACR] and its other principals" in the Refund Suit. (Ex. 154 at Section 6 at Appx. 0426; 2023 Carter Depo. 218:19-219:23 at Appx. 1440-1.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

122.    Carter communicated with his personal attorney, Shayla McCormally, about ACR appealing the decision of the Court of Federal Claims. (2023 Carter 223:9-23 at Appx. 1445.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

123.    Carter agreed with the decision to appeal the judgment against ACR by the Court of Federal Claims because he did not want there to be a money judgment against ACR. (2023 Carter Depo. 224:2-14 at Appx. 1446.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

124.    In the summer 2018, Jeffrey Carter was a defendant in a lawsuit filed in the Iowa District Court for Polk County, titled *Liliana Patricia Casano Carter v. Jeffrey William Carter,* Case No. CDCD092598, also referenced as *In re the Marriage of Petitioner Patricia Castano Carter and Jeffrey William Carter* (*hereinafter* "*Carter v. Carter*")*.* (2023 Carter Depo. 225:23-226:19 at Appx. 1447- 8; Ex. 156, *Carter v. Carter,* July 16, 2018 Respondent's Brief Point Regarding Tax Liability (at Appx. 0435) & PUBLIC002252, Polk County Clerk's Certificate for Ex. 156 July 16, 2018 Brief (at Appx. 0728).))

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.


125.    At a hearing in *Carter v. Carter,* Jeffrey Carter *testified* that if ACR was unable to pay the $59 million Refund Suit judgment, JWC and Carter are responsible for the judgment against ACR. (July 20, 2018, *Carter v. Carter* Transcript at 25:22-26:15 at Appx. 1368-9.)

**RESPONSE:**    Boyle disputes that he is responsible for the judgment against ACR.  The evidence cited here is a statement by Carter alone in his divorce case and is not evidence that is admissible against Boyle.  Boyle further refers to his statement of additional facts. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).


126.    In the *Carter v. Carter* case referred to above, Jeffrey Carter admitted that the $59 million judgment had been entered against ACR and that <u>he and JWC were both personally</u>

jointly and severally liable for at least $15 million of the judgment. (Ex. 156 at 2-3 at Appx. 0436-7; PUBLIC002252, Polk County Clerk's Certificate for Ex. 156 July 26, 2018 Brief)(emphasis added) at Appx. 0728.)

> **RESPONSE:**  Boyle disputes that he is responsible for the judgment against ACR.  The evidence cited here is a statement by Carter alone in his divorce case and is not evidence that is admissible against Boyle.  Boyle further refers to his statement of additional facts. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

127.    In an August 2, 2018 filing in *Carter v. Carter*, Jeffrey Carter admitted that he, "Jeff [Carter,] is liable for the debts of ACR." (Ex. 157, *Carter v. Carter,* Aug. 2, 2018 Respondent's Post-Trial Brief at 3 at Appx. 0443; PUBLIC002253, Polk County Clerk's Certificate for Ex. 157 Aug. 2, 2018 Brief at Appx. 0729; *Carter v. Carter* July 25, 2018 Trial Transcript 82:12-20, 83:2-19 (Carter testifying responsible for as much as $23 million of the ACR judgment and that he was ultimately liable because "ACR is a defunct company") at Appx. 1377-8.)

> **RESPONSE:**  Boyle disputes that he is responsible for the judgment against ACR.  The evidence cited here is a statement by Carter alone in his divorce case and is not evidence that is admissible against Boyle.  Boyle further refers to his statement of additional facts. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

-67-

128.   During the trial in *Carter v. Carter,* Jeffrey Carter testified he planned to resolve the outstanding liabilities of ACR or settle the issue of the outstanding liabilities. (*Carter v. Carter* July 25, 2018 Trial Transcript 82:12-20, 83:2-19 at Appx. 1377, 1378; 2023 Carter Depo. 234:16-21 at Appx. 1449; Ex. 158, *Carter v. Carter,* Sept. 14, 2018 Dissolution Decree at 16 at Appx. 0470; PUBLIC002254, Polk County Clerk's Certificate for Ex. 158 Sept. 14, 2018 Dissolution Decree at Appx. 0730.)

**RESPONSE:**  Boyle disputes that he is responsible for the judgment against ACR.  The evidence cited here is a statement by Carter alone in his divorce case and is not evidence that is admissible against Boyle.  Boyle further refers to his statement of additional facts. Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded. *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

129.   But Carter has not settled the issue of ACR's outstanding liabilities and has never paid any money towards the outstanding judgment that the United States obtained against ACR in the Refund Suit. (2023 Carter Depo. 234:16-235:8 at Appx. 1449-50.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

**Carter & ACR Financial Relationship**

130.    In February and March 2011, Carter purchased two cashier's checks – one for $1,000 payable by JWC and $1,000 payable by Jeffrey Carter individually. These two checks were capital contributions to ACR - $1,000 contributed by JWC and $1,000 contributed by Jeffrey Carter individually. (U.S. First RFAs to Carter (at Appx. 1011-2) & JWC (at Appx. 1031-2; Ex. 145, Carter Response to RFA No. 18 at Appx. 0408-9; Ex. 146, JWC response to RFA No. 18 (admitting checks were "JWC Investments' capital contribution to ACR in 2011 and [the second] was Jeffrey Carter's individual contribution to ACR in 2011") at Appx. 0418-9; 2023 Carter Depo. 160:21-162:6 & 162:11-23 (authenticating Ex. 85) at Appx. 1434-6; Ex. 85 at WF-000008 ("Jeff Carter" check dated March 16, 2011) & WF-000004 "JWC Investments" check dated February 14, 2011) at Appx. 0346, 0348; WF-001144, Wells Fargo Business Records Declaration at Appx. 0950.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

131.    Carter received ACR distributions by checks, made payable to JWC, delivered to him by James Huyser. (Cmplt. ¶ 175 at Appx. 0542; Carter & JWC Ans. ¶ 175 at Appx. 0668.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

132.    In 2011, JWC received $2,592,000 in distributions from ACR. (Ex. 146, JWC Response to RFA Nos. 24, 28 at Appx. 0420.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

133.    In 2012, JWC received $1,740,000 in distributions from ACR. (Ex. 146, JWC Response to RFA Nos. 31, 35 at Appx. 0421.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.  Boyle affirmatively states that this paragraph is not material to any of the issues raised in the Plaintiff's motion for partial summary judgment and should therefore be disregarded.  *See* L.R. 56(a)(3) (requiring a statement of *material* facts).

### Jeffrey Carter & JWC Investments L.C.

134.    Defendant JWC is an Iowa limited liability company formed by Jeffrey W. Carter. Carter serves as its registered agent and is a member. (Cmplt. ¶ 174 at Appx. 0542; Carter & JWC Ans. ¶ 174 at Appx. 0668.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

135.    In 2008, Carter, or his agent, filed Articles of Organization for JWC with the Iowa Secretary of State and Carter signed the Articles as the "Agent" for JWC. (U.S. First Requests

for Admission to JWC at Appx. 1030; Ex. 146, JWC Response to RFA Nos. 8-10 at Appx. 0417.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

136.    Carter was the owner of JWC and held 99.1% interest in JWC. (Cmplt. ¶17 at Appx. 0512-3; Carter & JWC Ans. ¶ 17 at Appx. 0654.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

137.    Jeffrey W. Carter individually served as a member of ACR, and Carter directed that ACR transmit his share of member distributions payable to JWC. (Cmplt. ¶ 175 at Appx. 0542; Carter & JWC Ans. ¶ 175 at Appx. 0668.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

138.    Carter used JWC as a vehicle to make high risk investments in companies. (2023 Carter Depo. 30:11-22 at Appx. 1395; U.S. Interrogatories to Carter (at Appx. 0988) & JWC (at Appx. 0994); Ex. 133, Carter Response to Interrogatory No. 8 (describing as "vehicle to invest in high-risk investments" at Appx. 0387; Ex. 135, JWC Response to Interrogatory No. 4 ("higher risk investments") at Appx. 0396.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

-71-

139.    Carter used JWC, and JWC funds, to pay his personal expenses, such as car insurance, personal utility bills, and water bills. (*Carter v. Carter* May 31, 2017 Carter Deposition 111:15-112:2, 112:14-19, 113:9-17 at Appx. 1361-2.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

140.    With respect to his personal bills, Carter admitted that "generally speaking, everything was paid through the company –or by the company [JWC]." (*Carter v. Carter* May 31, 2017 Carter Depo. 113:9-17 at Appx. 1362.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

141.    Carter personally contributed money to fund to JWC. (2023 Carter Depo. 31:10-12 (at Appx. 1397), 32:3-23 (at Appx. 1398.))

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

142.    Carter made decisions for JWC and did not have to consult anyone else to make decisions for JWC. (2023 Carter Depo. 35:18-25 at Appx. 1399.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

143.    Carter alone was authorized to sign checks for JWC, to access JWC's bank accounts, and transfer funds into or out of JWC accounts. (2023 Carter Depo. 38:15-39:13 at Appx. 1400-1.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

144.    Carter signed documents on behalf of JWC and, during its existence, no one else but Carter signed documents on behalf of JWC. (2023 Carter Depo. 55:1-13 at Appx. 1415.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

145.    Carter used JWC to purchase real estate and title to such real estate was held in JWC's name. (2023 Carter Depo. 46:25-47:1 at Appx. 1407-8.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

146.    Carter decided what real estate JWC would purchase and when to sell it. (2023 Carter Depo. 47:10-15 (at Appx. 1408), 62:9-22 (at Appx. 1417.))

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

147.    Carter alone held authority to enter into loan agreements on behalf of JWC. (2023 Carter Depo. 48:4-9 at Appx. 1409.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

148.    Carter decided to stop operating JWC in or around 2021. (2023 Carter Depo. 50:9-14 (at Appx. 1411), 51:13-20 (at Appx. 1412.))

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

149.    JWC maintained financial accounts at the Royal Bank of Canada. (2023 Carter Depo. 46:3-24 at Appx. 1407; Ex. 158 at 18 at Appx. 0472.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

150.    Prior to closing JWC, Carter transferred the funds held in the JWC Royal Bank of Canada accounts to himself personally. (2023 Carter Depo. 53:6- 17 (at Appx. 1413), 242:9-13 (at Appx. 1456.))

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

151.    Carter made the decision to transfer the JWC Royal Bank of Canada funds to himself. (2023 Carter Depo. 53:16-17 at Appx. 1413.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

152.    On December 29, 2022, Carter's attorney filed a Statement of Termination of JWC with the Iowa Secretary of State. (Ex. 134, Statement of Termination at Appx. 0393; PUBLIC002618-2635 at PUBLIC002634, Certified Iowa Secretary of State Statement of Termination for JWC at Appx. 0778; Nygaard Decl. ¶ 25 & Exhibit A; 2023 Carter Depo. 48:25-50:1 (at Appx. 1409- 11), 51:13-20 (at Appx. 1412.))

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

### JWC Operations

153.    Carter owned office suites on 110 Southeast Grant Street that he used as his personal office ("Grant Street Suite"). (2023 Carter Depo. 39:20-40:25 (at Appx. 1401-2), 42:3-18 (describing operated out of Suites 205 and 106) (at Appx. 1404.))

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

154.    Carter operated JWC and other businesses out of the Grant Street Suite. (2023 Carter Depo. 41:1-3, 11-13 at Appx. 1403.)

**RESPONSE:**    Boyle does not dispute these facts solely for purposes of the current motion.

155.    JWC itself never had any employees. (2023 Carter Depo. 42:19-20 at Appx. 1404.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

156.    Carter employed an assistant, Deb Harre. (2023 Carter Depo. 122:19-21 at Appx. 1431; 2017 Carter Depo. 147:18-21 at Appx. 1363.) She performed work for JWC and ACR. (2023 Carter Depo. 122:16-23 at Appx. 1431.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

157.    At the Grant Street Suite, Carter also employed other office staff, including a receptionist. One of Carter's other businesses paid the office staff and other costs of the office suite. (2023 Carter Depo. 42:21-24 (at Appx. 1404), 43:7-44:4 (at Appx. 1405-6.))

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

158.    In 2021, Carter hired a shredding company to destroy all the business records of JWC and instructed his administrative employees to shred JWC's records. (2023 Carter Depo. 67:5-68:3 at Appx. 1418-9.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

159.    In directing his administrative employees to shred JWC's records, the following categories of JWC records were destroyed:

(a)     meeting minutes of JWC, minutes of any board meetings and/or any memoranda of JWC business decision- making (U.S. Requests for Production to Carter (at Appx. 0960) & JWC (at Appx. 0977); JWC Jan. 8, 2024 Supp. Response to RFP No. 38 at Appx. 1095; Carter Jan. 8, 2024 Supp. Response to RFP No. 38 at Appx. 1112);

(b)     internal accounting records for JWC from the time of its formation (U.S. Requests for Production to Carter (at Appx. 0960) & JWC (at Appx. 0977); JWC Jan. 8, 2024 Supp. Response to RFP No. 40 at Appx. 1095; Carter Jan. 8, 2024 Supp. Response to RFP No. 40 at Appx. 1112);

(c)     documents, including email communications, sufficient to show Jeffrey W. Carter's role, responsibilities, and duties as the founder and member of JWC (U.S. Requests for Production to Carter (at Appx. 0960) & JWC at (at Appx. 0977); JWC Jan. 8, 2024 Supp. Response to RFP No. 44 at Appx. 1096; Carter Jan. 8, 2024 Supp. Response to RFP No. 44 at Appx. 1113);

(d)     documents sufficient to show all business entities in which Jeffrey Carter served as a member, partner, and/or shareholder (U.S. Requests for Production to JWC at Appx. 0978; JWC Jan. 8, 2024 Supp. Response to RFP No. 49 at Appx. 1097); and

(e)     loan agreements, contracts, or any other agreements entered into between Jeffrey W. Carter and JWC (U.S. Requests for Production to Carter (at Appx. 0961) & JWC at (at Appx. 0978); JWC Jan. 8, 2024 Supp.

Response to RFP No. 51 at Appx. 1098; Carter Jan. 8, 2024 Supp. Response to RFP No. 50 at Appx. 1115).

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

### Lincoln Avenue Property

160.    For 38 years, Carter has lived at 9475 Lincoln Avenue in Clive, Iowa ("**Lincoln Avenue Property**") as his personal residence. (2023 Carter Depo. 54:2-4 (describing Lincoln Avenue as "my personal home" (at Appx. 1414); 56:16- 25 ("my personal residence" where he's lived for "38 years") at Appx. 1416; 235:16-21 (at Appx. 1450); U.S. Interrogatories to Carter at Appx. 0990; Ex. 133, Carter Response to Interrogatory No. 14 at Appx. 0389.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

161.    Carter purchased the Lincoln Avenue Property in 1986. (U.S. Interrogatories to Carter at Appx. 0990; Ex. 133, Carter Response to Interrogatory No. 13 at Appx. 0389.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

162.    From 1990 through 2021, the Lincoln Avenue Property was titled in the name of **JWC, Inc.** or **JWC**. (2023 Carter Depo. 32:10-23 (at Appx. 1398); 236:22-238:2 (at Appx. 1451-3); 240:16-241:11 (at Appx. 1454-5); Ex. 159, PUBLIC000857, Polk County Assessor Property Card for Lincoln Avenue Property at Appx. 0481; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

163.    Carter had previously operated an investment entity called **JWC, Inc**.  When he formed JWC, Carter transferred all funds of JWC, Inc. to JWC. (2023 Carter Depo. 32:8-23 at Appx. 1398; PUBLIC002613-2617, Certificated Iowa Secretary of State filings for JWC Inc. (at PUBLIC002613-14 Articles of Organization (listing Carter as registered agent and sole director) at Appx. 0757- 8); Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

164.    JWC, Inc. articles of incorporation were cancelled by the Iowa Secretary of State in December 1989, and it was never reinstated. (Ex. 141, JWC, Inc. Articles of Incorporation at Appx. 0403-4; PUBLIC002613-2617, Certified Iowa Secretary of State filings for JWC, Inc. at Appx. 0757-61; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

165.    Jeffrey Carter personally resided at the Lincoln Avenue Property from 1990 through 2021. (2023 Carter Depo. 56:16-25 at Appx. 1416; U.S. Interrogatories to Carter (at Appx. 0990); Ex. 133, Carter Response to Interrogatory No. 14 at Appx. 0389; U.S. Requests for Production to Carter (at Appx. 0962) & JWC (at Appx. 979); JWC Jan. 8, 2024 Supp. Response

to RFP No. 60 at Appx. 1100; Carter Jan. 8, 2024 Supp. Response to RFP No. 59 at Appx. 1117.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

166.    Carter used JWC funds to pay utility bills, property taxes for the Lincoln Avenue Property, and for renovations to the Property. (*Carter v. Carter* May 31, 2017 Carter Deposition 111:23-112:2, 112:14-19, 113:9-17, 114:6-9, 114:21-24, & 115:9-116:2 (describing renovations paid for by JWC) at Appx. 1361-2.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

167.    In October 2019, the IRS filed a notice of transferee federal tax lien against JWC as transferee of ACR with the Recorder of Deeds in Polk County, Iowa listing the Grant Street Suite address. (PUBLIC0000035, Certified Notice of Federal Tax Lien, Recorded October 8, 2019 in Polk County Iowa at Appx. 0670; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

168.    In August 2021, the IRS filed an amended notice of transferee federal tax lien against JWC as transferee of ACR with the Recorder of Deeds in Polk County, Iowa listing the Grant Street Suite address. (PUBLIC000042, Certified Notice of Federal Tax Lien, Recorded August 9, 2021 in Polk County Iowa at Appx. 0672; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

169.    In 2021, Carter decided to quitclaim the Lincoln Avenue Property from JWC to himself individually. (2023 Carter Depo. 54:2-14 at Appx. 1414; April 28, 2021 Quitclaim Deed, CARTER01324 at Appx. 0879; Ex. 159, PUBLIC000859, Polk County Assessor Property Card for Lincoln Avenue Property at Appx. 0483; Nygaard Decl. ¶ 25 & Exhibit A.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

170.    Carter did not pay any funds for transfer of title of the Lincoln Avenue Property from JWC to his name. (2023 Carter Depo. 240:16-241:11 at Appx. 1454-5.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

171.    In the course of closing JWC in 2021, other than a copy of the deed, all documents memorializing the transfer of the Lincoln Avenue Property from JWC to Jeffrey Carter in 2021 were destroyed. (U.S. Requests for Production to Carter (at Appx. 0962) & JWC (at Appx. 0979); JWC Jan. 8, 2024 Supp. Response to RFP No. 59 at Appx. 1099-1100; Carter Jan. 8, 2024 Supp. Response to RFP No. 58 at Appx. 1116-7.)

**RESPONSE:**  Boyle does not dispute these facts solely for purposes of the current motion.

172.    In the course of closing JWC in 2021, copies of all insurance policies JWC maintained for the Lincoln Avenue Property were destroyed. (U.S. Requests for Production to Carter (at Appx. 0962) & JWC (at Appx. 0979); JWC Jan. 8, 2024 Supp. Response to RFP No. 61 at Appx. 1100; Carter Jan. 8, 2024 Supp. Response to RFP No. 60 at Appx. 1117.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

173.    From 2021 to the present, Carter has personally resided at the Lincoln Avenue Property. (2023 Carter Depo. 54:2-4 (at Appx. 1414), 56:16-25 (at Appx. 1416), 235:16-21 (at Appx. 1450); U.S. Interrogatories to Carter at Appx. 0990; Ex. 133, Carter Response to Interrogatory No. 14 at Appx. 0389; U.S. Requests for Production to Carter (at Appx. 0962) & JWC (at Appx. 0979); JWC Jan. 8, 2024 Supp. Response to RFP No. 60 at Appx. 1100; Carter Jan. 8, 2024 Supp. Response to RFP No. 59 at Appx. 1117.)

**RESPONSE:** Boyle does not dispute these facts solely for purposes of the current motion.

THE WEINHARDT LAW FIRM

By:____/s/ Todd M. Lantz_____
    Todd M. Lantz                    AT0010162
    Jason R. Smith                   AT0014862
    2600 Grand Avenue, Suite 450
    Des Moines, IA  50312
    Telephone: (515) 244-3100
    tlantz@weinhardtlaw.com
    jsmith@weinhardtlaw.com

ATTORNEYS FOR DEFENDANT KENNETH BOYLE

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on August 12, 2024 by CMECF.

Signature: /s/ Maura McNally-Cavanagh
_____

4878-2384-3286, v. 3