UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>JAMES HUYSER; MATTHEW KINLEY; KENNETH BOYLE; JEFFREY W. CARTER; and JWC INVESTMENTS, L.C.,<br><br>   Defendants. | Case No. 4:23-cv-00144-SHL-WPK<br><br>**DEFENDANT KENNETH BOYLE'S STATEMENT OF ADDITIONAL MATERIAL FACTS** |

Pursuant to L.R. 56(b)(3), Defendant Kenneth Boyle ("Mr. Boyle") states the following additional facts are material to the Plaintiff's Motion for Partial Summary Judgment as to him:

**Mr. Boyle's Due Diligence and Reasonable Belief that ACR Qualified for the Alternative Fuel Mixture Tax Credits**

1. Mr. Boyle invested in ACR only after ACR had already developed its tax strategy in collaboration with Mr. Sanderson. Appendix of Materials in Support of Defendant Kenneth Boyle's Resistance to Plaintiff's Motion for Partial Summary Judgment ("Boyle App.") 001-004 (Boyle's Answer to Interrogatory No. 10).

2. Mr. Boyle believed in 2011, including when he became a member of ACR and thereafter, that ACR qualified to receive the alternative fuel mixture tax credit. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

3. Mr. Boyle understood from James Huyser that the IRS approved ACR's registration to receive the alternative fuel mixture tax credits. Mr. Huyser explained that this process involved interaction with and vetting by the IRS, and Mr. Boyle believed that IRS'

approval of the tax credit registration was an indication that ACR qualified for the alternative fuel mixture tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

4. Additionally, Mr. Boyle personally attended the end of a meeting with an IRS agent in 2011 at the Schuring & Uitermarkt accounting firm in which ACR's business operations were explained to the IRS agent, and Mr. Boyle received a summary of the meeting from Mr. Huyser and Ms. Albers. Mr. Boyle's impression was that the meeting with the IRS went well and that there was no suggestion that ACR did not qualify for the tax credits it had claimed and received. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

5. Mr. Boyle understood from Mr. Huyser and Jeff Carter that ACR (through Mr. Huyser and Mr. Carter) had consulted with experienced legal professionals, including Jeff Lewis, Bill Smith, and Greg Sanderson, to confirm that ACR qualified to receive the alternative fuel mixture tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

6. Mr. Boyle received some of the written communications from Mr. Sanderson and also personally communicated with Mr. Sanderson to confirm his opinion that ACR qualified for the credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

7. Mr. Boyle also personally communicated with Jeff Lewis about the formation of ACR and the business processes. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

8. Mr. Boyle also believed that ACR qualified for the alternative fuel mixture tax credits because multiple CPAs reviewed and approved ACR's tax returns, which were signed under penalty of perjury. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

9. Mr. Boyle's belief was reinforced by the fact that Matt Kinley (a CPA with significant business experience), Matt Juffer (an experienced CPA and lawyer), and Brad

Smerage (an experienced CPA), had reviewed the tax advice from Sanderson and agreed that ACR qualified for the tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

10. Mr. Boyle believed that the use of ACR's alternative fuel mixture in anaerobic digesters had tremendous potential for the net production of energy. This belief was based on his conversations with many people, including Dr. Daniel Zitomer (who had performed tests on samples of substrate), and results achieved with actual digesters. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

11. This conclusion was also based upon Mr. Boyle's own research and knowledge about the renewable energy industry. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

12. Furthermore, Mr. Boyle met with Larry Hare before becoming a member of ACR, and Mr. Hare confirmed the importance and value of ACR's high-strength biologic substrates and the tremendous increases in biogas production when ACR's substates were added. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

13. By the time Mr. Boyle became a member of ACR, the company was already delivering alternative fuel mixture to a client and preparing and/or submitting claims for tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

14. Shortly after or around the time that Mr. Boyle became a member of ACR, the company began receiving payments for the tax credits, which reinforced Mr. Boyle's belief that ACR was entitled to receive the tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

15. Mr. Boyle understood that the other owners of ACR had each performed their own due diligence before becoming owners of ACR. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

16. Mr. Boyle understood at the time that the other owners had significant experience in business investments and in alternative energy industry. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

17. The due diligence performed by the other owners, as Mr. Boyle understood it, buttressed his own belief that ACR was entitled to receive the tax credits. Boyle App. 001-004 (Boyle's Answers to Interrogatory No. 10).

### Refund Suit

18. The Refund Suit was brought on ACR's behalf, not Mr. Boyle's. USA App. 731-46.

19. The Refund Suit used no procedural mechanism such as a class action or a trusteeship to indicate an intent to represent Mr. Boyle. *Id*.

20. Mr. Boyle was not named in the judgment. USA App. 756.

21. In its summary judgment motion in the Refund Suit, the government focused exclusively on Mr. Huyser with respect to the Penalty Issue, stating as follows: "In determining whether a partnership is entitled to the reasonable cause defense, courts look to the conduct of the managing partner. *See Stobie Creek Investments LLC v. United States*, 82 Fed. Cl. 636, 658. Here, the managing partner was James Huyser." Boyle App. 059 (USA Cross-Motion for Summary Judgment, p. 41).

**ACR Ownership and Control**

22. Under sections 7.02(a) and (d) of the ACR operating agreement, the agreement of 51% of outstanding ACR shares was required to act for ACR on matters that concerned both ACR divisions. USA App. 14-15.

23. Under section 7.03 and 7.05(a), ACR's Authorized Member Representative could also take actions for ACR. USA App. 16.

24. Mr. Boyle had no authority to act for ACR in any manner contrary to Mr. Huyser's wishes. Mr. Boyle owned 22.2% of the voting shares in ACR's non-Iowa division, 0% of the voting shares in ACR's Iowa division, and 10.5% of the voting shares in ACR overall. USA App. 515-16 (Compl. ¶¶ 30-31, 33-34).

25. In contrast, Mr. Huyser owned 55.6% of the voting shares in ACR's non-Iowa division, 100% of the voting shares in ACR's Iowa division, and 78.9% of ACR's voting shares overall. *Id*.

26. Mr. Huyser also served as ACR's Authorized Member Representative, as confirmed by section 7.05(a) of the operating agreement. USA App. 16, 517-18 (Compl. ¶ 42). Mr. Boyle never served in that role. *Id*.

27. Mr. Huyser had control over ACR's actions in the Refund Suit by virtue of his control of ACR, and he made the major decisions accordingly. USA App. 1563 (Kinley 2023 Dep. 247), 1446 (Carter 2023 Dep. 224).

28. Mr. Boyle had minimal involvement in the Refund Suit beyond monitoring it and assisting with discovery. USA App. 1346-47, 1356-57 (Boyle 2023 Dep. 215-16, 228-219).

29. Mr. Boyle made no specific strategic decisions beyond generally supporting that ACR follow attorney Bill Smith's advice. USA App. 1348-49 (Boyle 2023 Dep. 217-18).

4856-0836-8086, v. 1

30. Mr. Boyle attended fewer than five meetings related to the lawsuit. USA App. 1347 (Boyle 2023 Dep. 216).

31. Mr. Boyle attended none of the depositions besides his own, unlike Mr. Huyser, who regularly appeared. Boyle App. 009-018 (Cover pages of depositions from the Refund Suit).

32. Mr. Boyle funded a small minority of ACR's legal fees, reflective of his small ownership stake in ACR. *See* Pl. SOF ¶¶ 33-34 (Huyser paid $429,687), 58 (Kinley paid $99,680), 87 (Boyle paid $76,732).

THE WEINHARDT LAW FIRM

By: /s/ Todd M. Lantz
Todd M. Lantz          AT0010162
Jason R. Smith         AT0014862
2600 Grand Avenue, Suite 450
Des Moines, IA 50312
Telephone: (515) 244-3100
tlantz@weinhardtlaw.com
jsmith@weinhardtlaw.com

ATTORNEYS FOR DEFENDANT KENNETH BOYLE

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed below on August 12, 2024 by CM/ECF.

Signature:  /s/ Maura McNally-Cavanagh

4856-0836-8086, v. 1