**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>       Plaintiff,<br><br>v.<br><br>JAMES HUYSER, MATTHEW KINLEY,<br>KENNETH BOYLE, JEFFREY W.<br>CARTER, and JWC INVESTMENTS, L.C.,<br><br>       Defendants. | Case No. 4:23-cv-00144<br><br><br><br>**DEFENDANT MATTHEW KINLEY'S**<br>**RESISTANCE TO UNITED STATES'**<br>**MOTION FOR PARTIAL SUMMARY**<br>**JUDGMENT** |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    Plaintiff's Preclusion Motion Does Not Comply With Federal Rule of Civil Procedure 56. ................................................................................................... 2

    A.    Plaintiff's Preclusion Motion Does Not Seek Summary Judgment On Any Claim Or Defense, Or Any Part Thereof. ................................................... 2

    B.    The Court Should Not Grant Plaintiff's Alternative Request Under Rule 56(g). ....................................................................................................... 4

II.    Plaintiff Cannot Obtain Non-Party Issue Preclusion Against Mr. Kinley. ............. 5

    A.    Application of Issue Preclusion Against Mr. Kinley Would Violate Mr. Kinley's Due Process Rights. ................................................................... 6

        1.    Plaintiff Cannot Establish That The Third *Taylor* Exception To The Rule Against Non-Party Preclusion—For "Representative Suits," Such As Class Actions Or Actions By Trustees—Applies To Mr. Kinley. ............................................................................ 8

        2.    Plaintiff Cannot Establish That The Fourth *Taylor* Exception To The Rule Against Non-Party Preclusion For Individuals Who "Assume[d] Control" Over Prior Litigation Applies To Mr. Kinley. ................................................................................................. 15

    B.    Plaintiff's Motion Does Not Establish That The Issues Decided In The Refund Suit Are The Same Issues That Will Be Litigated In The Current Action........................................................................................................ 20

        1.    Plaintiff Has Not Clearly Identified Disputed Issues *In This Case* That It Seeks To Preclude Mr. Kinley From Raising. .................. 20

        2.    This Case Involves Different Issues Than The Refund Suit......... 22

            i.    ACR, Not Plaintiff, Bore The Burden Of Proof In The Refund Suit. ................................................................... 25

            ii.    The Refund Suit Involved Application Of Different Legal Standards........................................................................ 26

            iii.    Plaintiff Mischaracterizes The Refund Suit's Findings.... 31

    C.    Plaintiff's Preclusion Motion Focuses On Dicta And Issues That The Court Of Federal Claims Identified As Not Necessary To Its Judgment.  33

III.    Plaintiff's Alter Ego Analysis As To Mr. Carter And JWC Does Not Request Relief Against Mr. Kinley ....................................................................................... 35

CONCLUSION ..................................................................................................................... 36

## INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment comprises two separate motions. First, Plaintiff seeks a vague ruling that each Defendant is "precluded . . . from relitigating those issues and facts on which [Alternative Carbon Resources, LLC ("ACR")] already litigated and lost" in the matter *Alternative Carbon Resources v. United States*, Case No. 15-155T (Fed. Cl.) (the "Refund Suit"). (ECF 83, at 3.) Defendant Matthew Kinley will refer to this portion of Plaintiff's motion as "Plaintiff's Preclusion Motion." Second, Plaintiff seeks a ruling that Defendant JWC Investments, L.C. ("JWC") is the alter ego of Defendant Jeffrey Carter. (*Id.*) Mr. Kinley will refer to this portion of Plaintiff's motion as "Plaintiff's Alter Ego Motion."

Plaintiff's Preclusion Motion should be denied for multiple independent reasons. As a threshold matter, Plaintiff's Preclusion Motion should be denied because it does not seek judgment on any claim or defense, or any part thereof, as required under Federal Rule of Civil Procedure 56. If the Court were to grant Plaintiff's Preclusion Motion, no claim or defense—or any element or part thereof—would be resolved. Plaintiff does not contend otherwise. Plaintiff's Preclusion Motion appears to offer unfocused—and premature —arguments about what evidence or argument should be presented at trial. This is not a proper use of Rule 56. *See, e.g.*, *Robertson v. F. Martin*, No. CV 20-4173-JLS(E), 2021 WL 545895, at *2 (C.D. Cal. Jan. 4, 2021) ("Rule 56 does not authorize a motion which is solely intended to establish the truth of particular facts.").

Plaintiff's Preclusion Motion also fails on the merits. First, Mr. Kinley was not a party to the Refund Suit. Plaintiff has failed to meet its burden to establish that any exceptions to the rule against non-party preclusion articulated in *Taylor v. Sturgell*, 553 U.S. 880 (2008), apply as to Mr. Kinley. ACR acted on its own behalf in the Refund Suit, and did not purport to represent Mr. Kinley. *See id.* at 894. Mr. Kinley did not assume control of ACR at any time. *See id.* at 895.

Second, Plaintiff has failed to meet its burden to show that any issue that it seeks to prevent Mr. Kinley from raising in this suit is identical to any issue actually and necessarily determined in the Refund Suit. *See In re Wigley*, 951 F.3d 967, 970-71 (8th Cir. 2020). Plaintiff's Preclusion Motion does not clearly identify the issue or issues in *this* case that it seeks to preclude Mr. Kinley from raising. In addition, Plaintiff bears the burden to establish its claims against Mr. Kinley in this action but did not bear the burden in the Refund Suit, which is fatal to offensive issue preclusion. *See, e.g.*, *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 200 (2014). The Refund Suit also involved application of legal standards relating to federal tax statutes that are not the same as the standards implicated by Plaintiff's individual liability claims against Mr. Kinley. *See, e.g.*, *Fife v. Bosley*, 100 F.3d 87, 89 (8th Cir. 1996). Plaintiff's Preclusion Motion also mischaracterizes the Refund Suit's findings.

Third and finally, Plaintiff has failed to meet its burden to show that various dicta from the Court of Federal Claims' ruling in the Refund Suit were "actually and necessarily decided" in that action. *See Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003).

To the extent the Court must grant or deny Plaintiff's Alter Ego Motion as directed to Mr. Kinley, the motion should be denied because it does not appear to request any relief relating to Plaintiff's claims against Mr. Kinley.

For these reasons, Plaintiff's Motion for Partial Summary Judgment should be denied.

## **ARGUMENT**

I. **Plaintiff's Preclusion Motion Does Not Comply With Federal Rule of Civil Procedure 56.**

A. **Plaintiff's Preclusion Motion Does Not Seek Summary Judgment On Any Claim Or Defense, Or Any Part Thereof.**

Under Rule 56, a party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R.

Civ. P. 56(a). A motion that seeks a ruling preventing a party from making factual contentions at trial is not a proper motion for summary judgment. *E.g.*, *Ross v. Kopocs*, No. 1:14-CV-60-SKL, 2015 WL 1650910, at *2–3 (E.D. Tenn. Apr. 13, 2015) (denying motion for summary judgment that, in substance, was "improperly attempting to exclude factual allegations" from being substantiated at trial); *Valentine v. New Mexico Corr. Dep't*, No. CV 11-123 GBW/WPL, 2012 WL 13081286, at *1 (D.N.M. May 9, 2012) (denying motion for summary judgment that sought dismissal of certain "contentions" made by the opposing party); *see also, e.g.*, *Design Basics, LLC v. Chelsea Lumber Co.*, No. 11-CV-10854, 2013 WL 3471142, at *1 (E.D. Mich. July 10, 2013) ("[B]ecause there is no claim or defense presented in the notice of non-party fault, partial summary judgment on this issue would not be proper."); *Aegis Food Testing Lab'ys, Inc. v. Aegis Scis. Corp.*, No. CIV. 12-4031-KES, 2012 WL 6726876, at *3 (D.S.D. Dec. 27, 2012) ("Although Aegis Sciences moves for summary judgment on the issue of damages, disgorgement of profits and actual damages are both forms of relief and are not 'claims' that are subject to a Rule 56 motion for summary judgment.").

Plaintiff's Preclusion Motion "seeks partial summary judgment that the Defendants are precluded (*i.e.*, are collaterally estopped) from relitigating those issues and facts on which ACR already litigated and lost." (ECF 83, at 3.) Resolution of Plaintiff's Preclusion Motion in Plaintiff's favor would not resolve any claim or defense, or any element of any claim or defense, prior to trial. Plaintiff's Preclusion Motion operates more like a motion *in limine*, enlisting the language of issue preclusion to seek what would in substance be a poorly defined evidentiary ruling that does not actually identify the evidence or argument to potentially be excluded. This is not a proper use of summary judgment procedure, and Plaintiff's Preclusion Motion should be denied on this threshold basis.

**B.      The Court Should Not Grant Plaintiff's Alternative Request Under Rule 56(g).**

In the alternative, Plaintiff requests that the Court enter an order under Rule 56(g) stating any material facts, as asserted by Plaintiff, which are not in dispute. (ECF 83, at 3.) Federal Rule of Civil Procedure 56(g) states that if the Court does not grant all the relief requested in a summary judgment motion, it "*may* enter an order stating any material fact . . . that is not genuinely in dispute" will be treated "as established in the case." Fed. R. Civ. P. 56(g) (emphasis added). The summary judgment standard is applied in determining whether a fact is material and whether there is a genuine dispute over said fact. Fed. R. Civ. P. 56(g), advisory committee's notes (2010). "The primary purpose of this [rule] is to 'salvage some results from the judicial effort involved in evaluating a summary judgment motion and to frame narrow triable issues if the court finds that the order would be helpful with the progress of litigation.'" *Dollar v. Smithway Motor Xpress, Inc.*, No. C09-3043-MWB, 2010 WL 11474425, at *2 (N.D. Iowa Dec. 27, 2010) (citation omitted). However, it is "in the court's discretion whether to file such a [Rule 56(g)] order. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial. . . ." *Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*, 647 F.3d 780, 785-86 (8th Cir. 2011) (citation omitted).

Courts will decline to enter an order under Rule 56(g) (and its predecessor, Rule 56(d)) in similar scenarios where the moving party did not seek judgment on a claim or defense or a part thereof. *See Robertson*, 2021 WL 545895, at *2; *Renguette v. Bd. of Sch. Trustees ex rel. Brownsburg Cmty. Sch. Corp.*, No. 1:05-CV-1548-SEB-JMS, 2007 WL 1536841, at *9 (S.D. Ind. May 23, 2007) ("[T]he rule 'do[es] not authorize independent motions that would dispose of disputed factual issues in litigation piecemeal.'" (citations omitted) (quotation omitted) (alteration in original)); *McElgunn v. CUNA Mut. Grp.*, No. CIV. 06-5061-KES, 2008 WL 11506021, at *2 (D.S.D. Apr. 10, 2008) ("Rule 56(d) [(now Rule 56(g))] does not authorize an independent motion

4

to establish certain facts as true . . . ."); *Dalton v. Alston & Bird*, 741 F. Supp. 1322, 1336 (S.D. Ill. 1990) ("[A]llowing litigants to use Rule 56(d) to determine certain factual issues which do not dispose of an entire claim would require the court to pre-try all the factual issues in the case." (citations omitted)).

Plaintiff's request for fact-finding at the summary judgment stage is not an efficient use of judicial resources. As noted in Mr. Kinley's Response to Plaintiff's Statement of Undisputed Material Facts, many of the facts Plaintiff has included within its Statement of Undisputed Material Facts are either disputed or not material (or both). The Court will act as fact-finder at trial and will have the benefit of a full record when making findings of fact. It should decline to engage in unnecessary fact-finding prior to trial.

## II.    Plaintiff Cannot Obtain Non-Party Issue Preclusion Against Mr. Kinley.

Issue preclusion is a common law equitable doctrine designed to "promote judicial economy and finality in litigation." *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003). In this context, issue preclusion has five elements, which have previously been identified by this Court. *United States v. Huyser*, 697 F. Supp. 3d 873, 879 (S.D. Iowa 2023) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)) (listing the elements). The party alleging preclusion bears the burden of proving each element. *Taylor*, 553 U.S. at 907.

Plaintiff's Preclusion Motion "seeks partial summary judgment that the Defendants are precluded . . . from relitigating those issues and facts on which ACR already litigated and lost." (ECF 83, at 3.) But Mr. Kinley was not a party to the Refund Suit, and application of issue preclusion against Mr. Kinley would violate his due process rights. None of the exceptions to the rule against non-party issue preclusion articulated in *Taylor* apply. In addition, Plaintiff's Preclusion Motion does not clearly identify the issues that it seeks to preclude Mr. Kinley from raising—likely because Plaintiff's claims against Mr. Kinley do *not* raise the same issues as were

raised in the Refund Suit. Plaintiff cannot meet its burden to establish that application of issue preclusion against Mr. Kinley would be proper.

### A.   Application of Issue Preclusion Against Mr. Kinley Would Violate Mr. Kinley's Due Process Rights.

A person ordinarily cannot be bound by a judgment in litigation in which the person was not a party. *E.g.*, *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). This "right to be heard" is "ensured by the guarantee of due process" as enacted in the Constitution. *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 800 802 (1996) (holding due process imposes limits upon non-mutual issue preclusion). While courts in equity have recognized certain limited exceptions to "the rule against non-party preclusion," *Taylor*, 553 U.S. at 893, none of those exceptions apply here.[1]

Plaintiff's case against Mr. Kinley concerns, in large part, the question of whether Mr. Kinley should be held liable for the debt of ACR. ACR is a limited liability company of which Mr. Kinley owned a minority share and did not control. (*See* Kinley Statement of Additional Material Facts ("SAMF") ¶¶ 1, 10) Plaintiff has not asserted that it is entitled to summary judgment on its equitable claim seeking a judgment that Mr. Kinley is liable for ACR's debts. Plaintiff's request for a finding that Mr. Kinley should be bound by findings against ACR in a proceeding to which

---

[1]    Plaintiff's brief suggests that district courts possess "broad discretion" to apply issue preclusion offensively against Mr. Kinley, who was not—and could not have been—a party to the Refund Suit. (ECF 84-1, at 10-11 n.6 & n.7.) But neither of the two cases cited by Plaintiff involved a situation as presented here where the party resisting issue preclusion was a stranger to the prior litigation. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327, 331-32 (1979) (involving a party seeking to apply issue preclusion against the *same* party who lost on the decided issue in the first case and noting the "obvious difference in position between a party who has never litigated an issue and one who has fully litigated and lost"); *Heartland Academy Cmty. Church v. Waddle*, 595 F.3d 798, 811 (8th Cir. 2010) (declining to reach the issue preclusion question on appeal, in a case where the district court declined to apply issue preclusion).

The Supreme Court has specifically clarified that a court's equitable discretion with respect to issue preclusion is discretion to **refuse** to apply issue preclusion even if the test for issue preclusion is met. *Taylor*, 553 U.S. at 892–93; *see also Heartland Academy*, 595 F.3d at 811. In any event, the test for issue preclusion has *not* been met as to Mr. Kinley.

6

Mr. Kinley was not a party amounts to an end-run around perhaps the most significant substantive question raised by Plaintiff's claims in this case. *See Crest Tankers, Inc. v. Nat'l Mar. Union of Am.*, 796 F.2d 234, 239 (8th Cir. 1986) (finding issue preclusion inappropriate due to "circularity" where the second case related to application of the alter ego doctrine); *Wolff v. Tomahawk Mfg.*, No. 3:21-CV-880-SI, 2024 WL 3540845, at *3 n.2 (D. Or. July 24, 2024) (noting that application of non-party issue preclusion against an "individual defendant . . . defending himself or herself to avoid personal liability based on a previous litigation involving a corporate entity . . . without demonstrating a basis to pierce the corporate veil invalidates the corporate structure and likely implicates due process concerns.").

What's more, Plaintiff's 50-page brief ***does not identify a single case*** in which a court found issue preclusion to accord with due process in a comparable factual context to that involving Mr. Kinley. During the period of the Refund Suit, Mr. Kinley owned less than 11% of ACR's voting shares. (SAMF ¶¶ 3-4.) Mr. Huyser owned 79% of ACR's voting shares during this time. (*Id.*) As the "Authorized Member Representative" and owner of a supermajority of voting shares, Mr. Huyser possessed sole and exclusive control over ACR, including ACR's conduct with respect to the Refund Suit. (SAMF ¶¶ 7-11.) At no time did Mr. Kinley, alone or even in aggregate with ACR's other members other than Mr. Huyser, possess the ability to prevent Mr. Huyser from directing ACR's course of conduct in the Refund Suit as Mr. Huyser desired. (SAMF ¶¶ 18-19.) Mr. Huyser directed ACR's counsel and acted as the primary client contact for the company. (SAMF ¶ 20.) Mr. Huyser traveled to Washington, D.C., as ACR's corporate representative, while Mr. Kinley did not. (SAMF ¶¶ 21-22.)

Recognizing that Mr. Kinley personally was distinct from ACR, the United States issued subpoenas for documents and a deposition in order to compel Mr. Kinley's personal involvement

in the Refund Suit as a witness. (SAMF ¶ 23.)  Mr. Kinley also recognized that his interests were distinct from those of ACR. (SAMF ¶ 24.)   He hired separate counsel to represent himself personally in connection with acting as a fact witness in the Refund Suit. (SAMF ¶ 24.)

In *Taylor v. Sturgell*, the Supreme Court observed that the exceptions to the "rule against nonparty preclusion . . . can be grouped into six categories." 553 U.S at 893-895. Plaintiff does not contend that four of those categories—the first, second, fifth, and sixth—apply here.[2] (ECF 91, at 11-12.) The remaining two categories—the third and fourth categories identified in *Taylor*—will be addressed in turn. The third category involves "representative suits" such as class actions or actions by trustees, guardians, and other fiduciaries who formally assert the legal interest of the nonparty in prior litigation. *Taylor*, 553 U.S at 894. The fourth category involves nonparties who "assume[d] control" over the prior litigation. *Id.* at 895. Neither apply here.

      1.    <u>Plaintiff Cannot Establish That The Third *Taylor* Exception To The Rule Against Non-Party Preclusion—For "Representative Suits," Such As Class Actions Or Actions By Trustees—Applies To Mr. Kinley.</u>

The Supreme Court in *Taylor* observed that, "in limited circumstances," due process may not prevent the binding of a nonparty to a prior judgment when the nonparty was "adequately represented by someone with the same interests who [wa]s a party" to the suit." *Id.* at 894 (quoting *Richards*, 517 U.S. at 798). "Representative suits with preclusive effect on nonparties include properly conducted class actions . . . and suits brought by trustees, guardians, and other fiduciaries." *Id.* (citations omitted). The Court relied on its opinion in *Richards*, which held that a

---

[2]    The first category recognized by the Court involved persons who agreed to be bound by determinations in an action between others, in the manner of a "test case." *Taylor*, 553 U.S. at 893. The second category involves "pre-existing 'substantive legal relationship[s]'" such as successor interests. *Id.* at 894. The fifth category involves a person who "later brings suit as the designated representative of a person who was a party to the prior adjudication." *Id.* at 895. The sixth category involves where a "special statutory scheme . . . 'expressly forecloses successive litigation by nonlitigants,'" such as bankruptcy and probate proceedings. *Id.*

prior ruling adverse to a group of three taxpayers who "did not sue on a behalf of a class" and "did not purport to assert any claim against or on behalf of any nonparties" was not binding against a subsequent, different group of taxpayers asserting similar claims in a subsequent action. *Richards*, 517 U.S. at 801-802.

What unites the examples of "[r]epresentative suits with preclusive effect on nonparties" identified in *Taylor* is that in each instance, the original-suit parties would have openly and explicitly acted in a representative capacity in the first suit. *See Taylor*, 553 U.S. at 894. In a class action, for example, the class representative explicitly asserts claims not only on her own behalf, but on behalf of all similarly situated class members. *E.g.*, *Hansberry*, 311 U.S. at 41. The class-action procedural device is an express deviation from the rule that a person cannot assert the claims of others. The class action provides the class representative standing to bring the claims of others in one action—standing the class representative otherwise would not possess—but only upon receiving *express approval from the trial court* to act in such capacity. *E.g.*, *id.* Similarly, a trustee's standing to bring or defend claims on behalf of trusts or beneficiaries arises *not* from the trustee's independent personal interest in the matter but from the fact that the trustee directly asserts the interests of the beneficiary for purposes of the legal action. *See Scott v. Regions Bank*, 702 F. Supp. 2d 921, 929 (E.D. Tenn. 2010) ("[T]he trustee stands in the shoes of the beneficiary, and thereby acquires derivative standing[.]").

When the Supreme Court in *Taylor* spoke of "representation" in the context of "representative suits," therefore, the Supreme Court used that term literally—not loosely. *See Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958, 2023 WL 6541249, at *3 (D. Md. Oct. 6, 2023) (describing *Taylor* as "discussing a narrow set of examples of when a nonparty may be adequately represented by someone with the same legal interests such as in class actions and suits

9

brought by trustees, guardians, and other fiduciaries" (citing *Taylor*, 553 U.S. at 893-95)); *Durham v. City of Charlotte*, No. 3:21-CV-00638-RJC-DSC, 2022 WL 7454778, at *2-3 (W.D.N.C. Oct. 13, 2022) (referring to the third *Taylor* exception as the "class-action exception"). "Representation" is not merely the alignment of similar interests between otherwise distinct persons. *See Al-Sabah*, 2023 WL 6541249, at *3. Representation means "standing for or acting on behalf of another," such as between a lawyer and a client or between a class representative and members of the class. *Representation*, Black's Law Dictionary (12th ed. 2024).

Providing further support for this interpretation, the Supreme Court's holding in *Taylor* overruled a doctrine of "virtual representation" that had proliferated in certain lower federal courts as inconsistent with fundamental precepts of due process. *See Taylor*, 553 U.S. at 895-899; *Amos v. PPG Indus., Inc.*, 699 F.3d 448, 452 (6th Cir. 2012) ("[T]he whole point of [*Taylor*] was to cut the adequate-representation exception down to size."); *Urb. Health Care Coal. v. Sebelius*, 853 F. Supp. 2d 101, 110 (D.D.C. 2012) (observing that the Court in *Taylor* construed this third exception "narrowly"). Under the now-overruled "virtual representation" exception to the rule against precluding nonparties, mere "identity of interests" sufficed to bind a nonparty. *Taylor*, 553 U.S. at 888. The Supreme Court reversed a lower-court opinion that found non-party preclusion to be appropriate where the first litigant did not understand "himself to be suing upon [the non-party]'s behalf" and "has not purported to sue in a representative capacity." *Id.* at 905. Accordingly, a business entity pursuing legal action in its own name is not engaged in a "[r]epresentative suit" as articulated in the third exception identified in *Taylor*. *See id.* (noting that this exception applies "in certain limited circumstances"); *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 856–57 (7th Cir. 2010) (finding no issue preclusion under *Taylor* "representative suit" exception where the

party to the first lawsuit "did not conduct the underlying litigation as anything like a fiduciary for its members, and there is no evidence to suggest it was acting in a representative capacity for its followers personally"); *Henry E. & Nancy Horton Bartels Tr. ex rel. Cornell Univ. v. United States*, 88 Fed. Cl. 105, 112–15 (2009) (referring to the third *Taylor* exception as the "fiduciary exception" and finding it inapplicable where the party seeking to apply preclusion did not identify "any legal interest that the [party to prior litigation] was duty-bound to litigate on behalf of the [non-party]").

Plaintiff's theory that that "ACR . . . acted in a representative capacity for the Defendants" is strikingly similar to the "virtual representation" doctrine that the Supreme Court has rejected. (*See* ECF 91, at 13.) Mr. Kinley was not a party to the Refund Suit, and ACR did not purport to bring any claims on Mr. Kinley's behalf. (SAMF ¶¶ 16-17.) Mr. Kinley could not have been a party to the Refund Suit because the disputed tax assessment at issue was made against ACR, not Mr. Kinley. (Pl. Br. pp. 11, n. 7.) ACR acted on its own behalf with respect to its own interests as a legal person separate from Mr. Kinley or any of its members. ACR did not assert the legal rights of any other party in a manner similar to a class representative, a trustee, a guardian, or a fiduciary. *See Taylor*, 553 at 894.

The very cases Plaintiff cites confirms this distinction between parties who purport to act in a representative capacity and those who do not. *Yankton Sioux Tribe v. U.S. Department Health & Human Services*, 533 F.3d 634 (8th Cir. 2008), involved a Native American Tribe in the first litigation that explicitly brought its claim "on behalf of its individual members." *Id.* at 641. *Midwest Disability Initiative v. JANS Enterprises, Inc.*, 929 F.3d 603 (8th Cir. 2019), involved a disability rights organization who filed a pleading in the first action that "made clear [the organization] was acting in a representative capacity for the benefit of its individual members" and

sought relief that required the organization to assert *associational* standing as a plaintiff on behalf of its membership. *Id.* at 608, 610; *see also Rogers v. Werner Enters., Inc.*, No. 8:20-CV-468, 2021 WL 2258561, at *3 (D. Neb. June 3, 2021) (distinguishing *Midwest Disability Initiative* on the basis of the first plaintiff's organizational standing on behalf of its members). These cases involve organizations whose claims explicitly sought to vindicate the personal rights of the organizations' members. The prior actions in those cases were literally "representative cases" as defined in *Taylor. See Taylor*, 553 U.S. at 894.[3]

---

[3]      The other cases Plaintiff cites in footnotes within this argument section support Mr. Kinley's position or are easily distinguishable. *Reach Commc'ns Specialists, Inc. v. Williams*, 655 F. Supp. 3d 351 (E.D. Pa. 2023), which Plaintiff refers to as "helpful persuasive authority," ECF 84-1, at 16 n.16, did not even involve a finding that *Taylor*'s third exception for representative actions had been met. In the *Reach* case, the district court found that a corporation could be bound by findings made in a criminal proceeding against the corporation's "sole shareholder, President, and Chief Executive Officer." *Reach*, 655 F. Supp. 3d at 362 (concluding that corporation and sole shareholder were "one and the same"). This ruling is best understood as an application of the *fourth* exception to the rule against non-party preclusion identified in *Taylor*, which relates to an individual's control of an entity, and which is discussed in greater detail *infra*.

         Elsewise, *Cont'l W. Ins. v. Fed. Hous. Fin. Agency*, 83 F. Supp. 3d 828 (S.D. Iowa 2015), involved a "wholly owned subsidiary" being bound by a judgment against its parent company. *Id.* at 835. *Arcare Inc. v. Qiagen N. Am. Holdings, Inc.*, No. 4:17-CV-00558 BSM, 2018 WL 337749 (E.D. Ark. Jan. 9, 2018), involved a "wholly owned subsidiary" being bound by a ruling against its parent company. *Id.* at *2. The result in *United States v. Maricopa, Cnty.*, 151 F. Supp. 3d 998, 1006 (D. Ariz. 2015), meanwhile, turned on the fact that the party to the first lawsuit was deemed to be *literally the same legal entity* as the party to the second lawsuit. *See id.* at 1006, 1029 ("MCSO is not a separate legal entity from the County.").

         Finally, Plaintiff cites a pre-*Taylor* case, *Gen. Foods Corp. v. Mass. Dept. of Pub. Health*, 648 F.2d 784 (1st Cir. 1981), for the proposition that contributing toward the expenses of a lawsuit can support a determination that the first plaintiff was acting in a representative capacity. ECF 84-1 at 15 n.14. In fact, the First Circuit concluded that where a non-party member of an organization contributes to the organization's litigation expenses, what matters iw whether or not the contribution was made "by a [non-party] to a [litigating] party **claiming to represent** [the non-party]." *Gen. Foods Corp.*, 648 F.2d at 788 (emphasis added) (noting that the organization's "standing to sue depended on its claim to represent its members as the real parties in interest"); *see also Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 652 (4th Cir. 2005) ("[T]he mere fact that Appellants helped to finance McKain's suit is not sufficient, without other facts, to warrant the application of res judicata to this case." (citing *Gen. Foods Corp.*, 648 F.3d at 788)). This is completely consistent with the *Taylor* court's discussion of "representative suits" and inconsistent

Numerous federal courts, in addition to those already identified on the prior pages, have found that this narrow exception articulated in *Taylor* did not apply where the first suit did not involve a party acting in a "representative capacity similar to that which a 'trustee[ ], guardian[ ], [or] other fiduciar[y].'" *E.g.*, *CentraArchy Rest. Mgmt. Co. v. Angelo*, 806 F. App'x 176, 180 (4th Cir. 2020) (quoting *Taylor*, 553 U.S. at 901); *Rogers*, 2021 WL 2258561, at *3 (finding the plaintiff was not bound by prior class action where the plaintiff "could not have even been a potential member of the class" in prior action); *Saniefar v. Moore*, No. 1:17–cv–00823–LJO–BAM, 2018 WL 1305710, at *6 (E.D. Cal. Mar. 13, 2018) (finding that sharing of discovery between non-party and party to first suit did not suggest that the party to the first suit represented the non-party, noting "Plaintiff and *Millennium* defendants were not part of the same class, nor were *Millennium* defendants acting as a fiduciary or trustee for her interests"); *Saxton v. Fed. Hous. Fin. Agency*, 245 F. Supp. 3d 1063, 1074 (N.D. Iowa 2017) (finding plaintiffs in prior action did not act in a representative capacity where "[t]he complaints in *Perry Capital*'s three individual lawsuits raised the same APA claims as Plaintiffs but did not purport to do so derivatively on behalf of the GSEs"); *Urban Health Care Coal v. Sebelius*, 853 F. Supp. 2d 101, 110 (D.D.C. 2012) (finding representative-suit exception did not apply where there was no evidence the party to the first suit acted "in a representative capacity on behalf" of non-parties and there were "no special procedures to protect the nonparties' interests" (citations and internal quotations omitted)); *Ramos v. U.S. Bank Nat. Ass'n*, No. 08-CV-1150-PK, 2009 WL 1475023, at *13 (D. Or. May 20, 2009) ("*Taylor* established that one of the minimum requirements for adequate representation was

---

with application of issue preclusion against Mr. Kinley. ACR was asserting ACR's own interests in the Refund Suit and did not claim to represent Mr. Kinley. (SAMF ¶¶ 14-17.)

that the party in the prior proceeding 'understood herself to be acting in a representative capacity.'" (citing *Taylor*, 553 U.S. at 900)).

ACR did not assert any rights held personally by Mr. Kinley in the Refund Suit, which concerned only ACR's tax obligations.[4] Plaintiff's brief argues that ACR somehow acted in a "representative capacity" in the Refund Suit even though it did not and could not assert any legal rights possessed by Mr. Kinley's personally.[5] (ECF 91, at 14-16.) But "[s]hared motivation alone is insufficient to qualify for this 'same interests' requirement; rather, the earlier party must have had some legal obligation to vindicate the rights of the nonparty later precluded." *Henry E. & Nancy Horton Bartels Tr.*, 88 Fed. Cl. at 112–15; *see also Pelt v. Utah*, 539 F.3d 1271, 1289 (10th Cir. 2008) (finding first action not filed in a representative capacity where "[t]he *Bigman* complaint did not purport to bring the action on behalf of the Fund beneficiaries"); *E. Associated Coal Co. v. Dir., Off. of Workers' Comp. Programs,* 578 F. App'x 165, 175–76 (4th Cir. 2014) ("Mrs. Vest['s] survivor's claim is a distinct cause of action that she filed in her own name, on her own behalf, and for her own award of benefits."); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 313 (3d Cir. 2009) (rejecting application of issue preclusion where "[t]here is no basis in the record from which to conclude that PMA was Nationwide's legal representative");

---

[4]     There is also no indication that the Court of Federal Claims took any care to protect Mr. Kinley's personal interests in the Refund Suit. The Refund Suit involved *no* "procedural safeguards" akin to Federal Rule of Civil Procedure 23's requirement that a court certify that non-parties shall be bound to a judgment because the court has determined the matter suitable for resolution on a class basis and the named representative(s) can adequately stand in for the absent non-parties to be bound. *See Taylor*, 553 F.3d at 900-01 (noting that Rule 23 ensures due process requirements are met in the class-action context); *Amos*, 699 F.3d at 452 ("The only example of 'special procedures' mentioned in [*Taylor*] are those for class actions." (citation omitted)).

[5]     It is unclear what Plaintiff means when it asserts that ACR's members "wore two hats" or why this assertion would support Plaintiff's position on issue preclusion. ECF 84-1, at 16. ACR and Mr. Kinley are separate legal parties with their own rights and obligations. When the United States subpoenaed Mr. Kinley, he recognized that he possessed separate interests from ACR and retained separate counsel. (SAMF ¶ 23-24.)

*Living Care Alternatives of Kirkersville, Inc. v. U.S.*, 247 F. App'x 687, 699 (6th Cir. 2007) ("Certainly, corporate entities may have an interest in the same legal issue or in proving or disproving similar facts, but this should not be and is not sufficient to establish privity between them, even where they may have common ownership"). Because the Refund Suit was not a "[r]epresentative suit" as defined in *Taylor*, this exception to the rule against non-party preclusion cannot apply. *See Taylor*, 553 U.S. at 894.[6]

> ### 2. Plaintiff Cannot Establish That The Fourth *Taylor* Exception To The Rule Against Non-Party Preclusion For Individuals Who "Assume[d] Control" Over Prior Litigation Applies To Mr. Kinley.

Second, with respect to the fourth category identified in *Taylor*, the Supreme Court observed that "***a*** nonparty is bound by a judgment if ***she*** 'assume[d] control' over the litigation." *Id.* at 895 (emphases added). The Supreme Court's use of the singular article "a" and singular pronoun "she" suggests the factual question of control over the prior litigation must be analyzed individually for each non-party against whom preclusion is asserted—and *not* a collective of persons. *See id.*; *Urban Health Care*, 853 F. Supp. 2d at 110 (citing *Taylor*, 553 U.S. at 897) (stating control exception under *Taylor* is construed narrowly); *cf. e.g.*, *Niz-Chavez v. Garland*, 593 U.S. 155, 163 (2021) ("Congress's decision to use the indefinite article 'a' thus supplies some evidence that it used the term . . . as a discrete, countable thing.").

Plaintiff does not assert that Mr. Kinley personally and individually "assume[d] control" of ACR for purposes of the Refund Suit. *See Taylor*, 553 U.S. at 895. Mr. Kinley did not control ACR at any time. Mr. Huyser controlled ACR. (SAMF ¶¶ 3–13, 19.) Mr. Huyser owned a controlling amount of ACR shares—no less than 79% of voting shares—at all times. (SAMF ¶ 4.)

---

[6]     In addition, ACR's interests were not entirely aligned with Mr. Kinley's. ACR possessed no interest in identifying distinctions between members such as Mr. Huyser, on one hand, and Mr. Kinley, on the other. Such distinctions were irrelevant to the Refund Suit but are highly material, and should be determinative as to Mr. Kinley, in this action. (*See* ECF 90-1, at 17-20.)

Mr. Huyser was ACR's only "Authorized Member Representative," and in that role Mr. Huyser expressly possessed the exclusive power "to commence lawsuits and proceedings," to pay fees, and to engage and dismiss from engagement any attorneys. (SAMF ¶¶ 7–8.) Plaintiff *cannot* show that Mr. Kinley controlled ACR for any purpose at any time. *See Taylor*, 553 U.S. at 895.

Plaintiff alleges that each Defendant "participated in and controlled the Refund Suit litigation," and then follows this statement with a list of allegations relating to Mr. Kinley's purported participation with respect to the Refund Suit. (ECF 91, at 20-21.) But due process requires more than participation or involvement in prior litigation to overcome the rule against non-party preclusion. *See Taylor*, 553 U.S. at 888 (overruling Eighth Circuit precedent where one factor allowing non-party preclusion was "'participation in the prior litigation' by the present party"). The "control" exception to the rule against non-party preclusion applies where a non-party uses the litigating party in the first suit as a cats-paw or in the manner of a "puppeteer." *Henry E. & Nancy Horton Bartels Tr.*, 88 Fed. Cl. at 113 ("Such extensive control exceeds mere influence and instead requires the extensive involvement of the party-to-be-precluded in funding, arguing, and formulating the legal theory of the case." (citing *Taylor*, 553 U.S. at 895)); *see also, e.g.*, *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758-59 & n.8 (1st Cir. 1994), (citations omitted) (holding that the degree of control required under *Taylor* is "the power—whether exercised or not—to call the shots," and that testifying as a witness, procuring evidence, furnishing attorney services, and "belong[ing] to an informal litigation group" do not suffice), *abrogated on other grounds by Santiago-Martinez v. Fundacion Damas, Inc.*, 93 F.4th 47 (1st Cir. 2024); *Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1313 (4th Cir. 1987) (holding that providing evidence, attending court conferences, attending a deposition and asking a question, and appearing to oppose administrative process did not constitute control over prior litigation); *Saniefar*, 2018 WL

1305710, at *7 (finding "[m]ere coordinated action between the parties" was not sufficient to establish control); *In re Sovereign Partners*, 179 B.R. 656, 661 n. 3 (D. Nev. 1995) (finding payment of legal fees did not establish that nonparties had "effective choice as to legal theories and proofs advanced in previous suit"); *In re Queeny/Corinthos*, 503 F. Supp. 365, 366-68 (E.D. Pa. 1980) (finding plaintiff's "bare allegations" that defendants acted as "behind-the-scenes coordinators" in prior litigation failed to establish control); *U.S. v. Depilatron Epilator Model No. DP-206 Universal Tech., Inc.*, 473 F. Supp. 913, 916 (S.D.N.Y. 1979) (finding communications with party in previous case and providing assistance in prior case did not constitute "control" of the litigation). "When a person owns *most or all* of the shares in a corporation *and controls the affairs* of the corporation, it is presumed" the individual exerted control over the litigation. *Living Care*, 247 F. App'x at 697 (emphasis added). "Examples of relationships providing . . . sufficient control include 'president/sole shareholder and his . . . company, a parent corporation and its subsidiary, an indemnitor and its indemnitee, or a liability insurer and an insured.'" *Id.* at 698.[7]

In *Montana v. United States*, 440 U.S. 147 (1979), for example, there was no dispute that the United States controlled the first suit that was nominally brought by a federal contractor but was "directed and financed" by the United States (who acted as the puppeteer, so to speak). *Montana*, 440 U.S. at 150, 155. In *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260 (1961), the

---

[7]     To the extent Restatement (Second) of Judgments § 59 could be interpreted to suggest that a minority owner who did not personally "assume[] control" of an entity involved in prior litigation could be bound by a judgment against that entity, such provision of the Restatement (Second) would not be consistent with the Supreme Court's opinion in *Taylor* and should not be followed. *See Taylor*, 553 U.S. at 895. Restatement provisions that do not accurately "describe[e] the law" should be given "no weight whatever as to the current state of the law." *Kansas v. Nebraska*, 574 U.S. 445, 475-76 (2015) (Scalia, J., concurring in part and dissenting in part); *see also Montana v. United States*, 440 U.S. 147, 164 (1979) (Rehnquist, J., concurring) (expressing the "customary understanding that its references to law review articles and drafts or finally adopted versions of the Restatement of Judgments are not intended to bind the Court to the views expressed therein on issues not presented by the facts of this case").

preclusion issue was not contested because the non-party "was acting only as a 'puppeteer'" of the named party in the first suit. *Id.* at 261-62.; *see also Duckett v. Fuller*, 819 F.3d 740, 747 (4th Cir. 2016) (denying request to apply issue preclusion where "[n]othing in the record suggests that Duckett was acting as an agent for McFadden to pursue McFadden's claims or that McFadden was serving as some form of 'puppeteer' controlling Duckett"). By contrast, in *Pearson v. Hafnia Holdings, Inc.*, the district court found a minority shareholder did not exercise control over previously sued corporation's day-to-day affairs, nor, by proxy, the previous litigation. No. 90 C 991, 1991 WL 18421, at *2 (N.D. Ill. Feb. 7, 1991). The court also noted the fact that there was only one representative at the previous arbitration—the president of the company—as evidence that the minority shareholder did not control the litigation. *Id.* at *3. Similarly, Mr. Huyser, the majority shareholder and Authorized Member Representative of ACR, represented ACR at Refund Suit proceedings in Washington, D.C. (SAMF ¶ 21.) Mr. Kinley, a minority owner, did not. (SAMF ¶ 22.)

Plaintiff has pointed to no facts suggesting that Mr. Kinley personally and individually caused ACR to take *any* action whatsoever with respect to the Refund Suit. Instead, Plaintiff asserts that Mr. Kinley attended meetings, acted as a fact witness, and contributed funds to ACR in his capacity as owner of a minority interest in the company. (ECF 91, at 21.) Plaintiff does not identify any cases where such limited involvement by a minority owner sufficed show that the non-party "asserted control" over the prior litigation under *Taylor*. *See Twin City Pipe Trades Serv. Ass'n, Inc. v. Wenner Quality Servs., Inc.*, 869 F.3d 672, 675 (8th Cir. 2017) (allowing non-party preclusion where non-party had already been judicially determined to be the "alter ego" of party in first action); *Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010) (allowing non-party preclusion when non-party conceded that non-party, who was "president and sole

shareholder" of party in first action, had "complete control over the prior litigation"); *In re Gottheiner*, 703 F.2d 1136 (9th Cir. 1983) (applying "closely related" standard overruled in *Taylor* in case involving non-party preclusion where non-party was sole shareholder of party in first action); *Kreager v. Gen. Elec. Co.*, 497 F.2d 468, 472 (2d Cir. 1974) (allowing non-party preclusion against "sole shareholder" of party in first action who controlled prior litigation); *Levitt v. Comm'r*, No. 27857–90, 1995 WL 570439, at *18 (Tax. Ct. Sept. 28, 1995) (allowing non-party preclusion against "president and sole shareholder" of party in first action who controlled prior litigation).[8]

In other words, even if one were to accept all of the facts asserted by Plaintiff's Preclusion Motion, Plaintiff *still* could not show Mr. Kinley personally "assume[d] control" of the Refund Suit under *Taylor*. As the Fifth Circuit has observed:

> Lesser measures of participation without control do not suffice. Thus it is not enough the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a

---

[8]     In addition to the pre-*Taylor* cases above, other cases relied upon by Plaintiff apply standards expressly foreclosed by *Taylor* and are materially distinguishable. *Iowa Elec. Light & Power Co. v. Mobile Aerial Towers, Inc.*, 723 F.2d 50 (8th Cir. 1983), applied a test to identify whether the non-party was "so connected in interest with one of the parties in the former action" to justify preclusion. *Id.* at 52. This is the test that the Supreme Court found to be incompatible with due process in *Taylor*. *See Taylor*, 553 U.S. at 888, 898 (abrogating, *inter alia*, *Tyus v. Shoemehl*, 93 F.3d 449 (8th Cir. 1996) (articulating "sufficiently close" relationship test)). Because it applied a laxer test than the constitutional standard articulated in *Taylor*, the Eighth Circuit in *Iowa Electric Light & Power Co.* did not actually find that the non-party had "assume[d] control" of the first litigation as is now required under *Taylor*. *See* 723 F.2d at 52. *United States v. Webber*, 396 F.2d 381 (3d Cir. 1968), similarly, applied a "close enough" test that was explicitly rejected by *Taylor*. *Id.* at 386; *see Taylor*, 553 U.S. at 898. Finally, while *Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011), involved a "principal shareholder" who indirectly owned at least 50% of the party in the first action, the court of appeals purported to apply state law and did not cite or apply *Taylor* with respect to the privity determination. *Id.* at 471; *but see Taylor*, 553 U.S. at 904 ("The preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion described in this opinion.").

> nonparty who was heavily involved may remain free from preclusion. It is essential
> that the nonparty have actual control.

*Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (cleaned up);

*see also, e.g.*, *Marshak v. Treadwell*, 240 F.3d 184, 195–196 (3d Cir. 2001) (holding that testifying

in a prior case and indirectly benefiting from a preferred outcome in a prior case were "plainly

insufficient to permit a reasonable inference that [the non-party] exercised any control over

litigation decisions or strategy" in the prior case); *Ponderosa Dev. Corp. v. Bjordahl*, 787 F.2d

533, 536 (10th Cir. 1986) (rejecting application of issue preclusion where "the only evidence cited

by the district court to support estoppel was McVay's testimony and his access to all of the written

discovery materials possessed by the Zimmerman plaintiffs. This hardly establishes McVay's

control over the Zimmerman litigation"). Plaintiff's Preclusion Motion should be denied.

Without any factual or legal support for its assertion, Plaintiff is left with the gambit of

attaching Mr. Kinley to Mr. Huyser, referring to the group collectively as "Defendants," and

hoping that the Court conflates Mr. Kinley's conduct with Mr. Huyser's conduct when considering

the scope of Mr. Kinley's due process rights. This is plainly insufficient under *Taylor*, and

Plaintiff's guilt-by-association approach should give this Court pause when considering Plaintiff's

substantive veil-piercing claims, which rely on a similar tactic.

### B. Plaintiff's Motion Does Not Establish That The Issues Decided In The Refund Suit Are The Same Issues That Will Be Litigated In The Current Action.

#### 1. Plaintiff Has Not Clearly Identified Disputed Issues *In This Case* That It Seeks To Preclude Mr. Kinley From Raising.

Plaintiff's Preclusion Motion does not clearly identify any issues *in this matter*—as

opposed to issues in the Refund Suit—that it believes any Defendant should be judicially

foreclosed from raising. Instead, Plaintiff seeks an advisory ruling that *to the extent* any Defendant

raises a defense that Plaintiff believes conflicts in some way with Plaintiff's interpretation(s) of

the ruling in the Refund Suit, such defense should be barred. This vague request for application of issue preclusion is fundamentally flawed and should be rejected.

It is Plaintiff's burden to identify the specific issue or issues *in this case* that Plaintiff believes are subject to preclusion. *Cont'l Holdings, Inc. v. Crown Holdings Inc*., 672 F.3d 567, 575 (8th Cir. 2012) ("The burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue."); *Evonik Degussa GmbH v. Materia Inc.,* 53 F. Supp. 3d 778, 790 (D. Del. 2014) (rejecting issue preclusion argument where the party asserting preclusion "has not established that the issue at the [prior] proceeding is identical to the one before the Court"). Plaintiff's Preclusion Motion does not do this. Instead, Plaintiff's brief in support provides varying characterizations of findings Plaintiff contends the Court of Federal Claims made in the Refund Suit and then offers generalized arguments regarding the elements of claim preclusion as to the Defendants collectively.

But Plaintiff's brief in support does not even present a consistent view of what "issues" it believes were decided in the Refund Suit. For example, on the first page of its brief in support of Plaintiff's Preclusion Motion, Plaintiff identifies *four* issues purportedly "determined in the Refund Suit." (ECF 91, at 1-2.) On the next page, Plaintiff identifies *five* purported "issues and facts on which ACR already litigated and lost." (ECF 91, at 1-2.) Plaintiff later identifies *three* purported "central issues" in the Refund Suit, which Plaintiff coins as "Fuel Issue," "Sale Issue," and "Penalty Issue." (ECF 91, at 6.) Plaintiff later identifies either three or four separate issues along with a catch-all reference to "detailed facts about the operations of ACR" as having purportedly been "litigated to conclusion" in the Refund Suit. (ECF 91, at 9.) These inconsistent references continue throughout the brief until Plaintiff presents four single-spaced pages quoting and paraphrasing portions of the Court of Federal Claims' ruling. (ECF 91, at 28-31.)

<u>None</u> of these references, not even to Plaintiff's coined terms, make it into Plaintiff's request for relief that this Court has been called upon to grant or deny. (*See* ECF 83, at 3.) n advisory ruling precluding Mr. Kinley from "relitigating those issues and facts on which ACR actually litigated" would resolve nothing. *See, e.g.*, *Smith v. Menard, Inc.*, No. 3:21-CV-00012-SBJ, 2023 WL 6534211, at *1 (S.D. Iowa June 9, 2023) ("[A] pretrial, blanket advisory opinion on unspecified and underdeveloped evidentiary matters is not proper nor prudent." (citing, *inter alia*, *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (federal courts "do not render advisory opinions"))). To the contrary, granting Plaintiff's Preclusion Motion would likely generate a *greater* number of subsequent disputes throughout trial regarding whether any particular item of evidence might be foreclosed by Plaintiff's interpretation of a determination from the Refund Suit. Plaintiff's Preclusion Motion does not further judicial economy, which itself provides sufficient basis for denial.

### 2.     This Case Involves Different Issues Than The Refund Suit.

The Refund Suit concerned whether ACR was entitled to claim the refundable alternative fuel mixture credits that it claimed in 2011 pursuant to 26 U.S.C. § 6426(e). *Alternative Carbon Res., LLC v. United States*, 137 Fed. Cl. 1, 4 (2018). ACR sought a ruling that it was entitled to claim the credits and that it was not liable for the various penalties assessed, while Plaintiff sought a ruling that ACR was liable for the amount of credits claimed and the excessive claim penalties assessed under 26 U.S.C. § 6675. *Id.* at 20-21.

The Court of Federal Claims resolved the Refund Suit on the parties' cross-motions for summary judgment, granting Plaintiff's cross-motion for summary judgment and granting in part ACR's cross-motion as to the fraud, failure-to-file, and failure-to-pay penalties and otherwise denying ACR's cross-motion. *Id.* at 20-21, 37. The Court of Federal Claims understood that in resolving the parties' cross-motions for summary judgment, it could not make findings of fact. *Id.*

at 21 (citing, *e.g.*, *Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998) ("[C]ourts do not make findings of fact on summary judgment.")).

Both parties agreed that ACR bore the burden of proof as to both whether ACR was entitled to claim the credits and whether the excessive claim penalties applied. (SAMF ¶ 25.) In disputing whether ACR was entitled to claim the credits, Plaintiff argued that ACR could not meet its burden to prove it qualified for the credit because ACR could not prove the mixtures sold by ACR were "alternative fuel mixtures" as defined by 26 U.S.C. § 6426(e). (SAMF ¶ 27.) In connection with this argument, Plaintiff argued ACR could not meet its burden to prove the mixtures sold by ACR were not "liquid fuels derived from biomass" pursuant to 26 U.S.C. § 45K(c)(3). (SAMF ¶ 28.)  In the alternative, Plaintiff argued ACR could not meet its burden to prove the mixtures sold by ACR were "used as a fuel" pursuant to 26 U.S.C. § 6426(e)(2)(A) and (B). (SAMF ¶ 29.) Also in the alternative, Plaintiff argued ACR could not meet its burden to prove the mixtures were sold by ACR to ACR's customers pursuant to 26 U.S.C. § 6426(e)(2)(A). (SAMF ¶ 30.) Finally, Plaintiff argued that ACR could not meet its burden to show "reasonable cause" to claim the credits pursuant to 26 U.S.C. § 6675. (SAMF ¶ 31.) Plaintiff stated, "In determining whether a partnership is entitled to the reasonable cause defense, courts look to the conduct of the managing partner. Here, the managing partner was James Huyser." (SAMF ¶ 32.)

Plaintiff's brief in support of its cross-motion for summary judgment in the Refund Suit did not mention Mr. Kinley. (SAMF ¶ 33.) Plaintiff's cross-motion for summary judgment refers to Mr. Huyser as the "managing member" of ACR on multiple occasions. (SAMF ¶ 34.) Plaintiff's cross-motion for summary judgment did not raise or otherwise provide argument regarding any of the following issues relevant to the present action:

- The extent of Mr. Kinley's control of or involvement with ACR or with *any* particular action or inaction undertaken by ACR;

- Whether Mr. Kinley abused ACR's "corporate" form;

- Whether any members of ACR, including but not limited to Mr. Kinley, should be held liable for ACR's debts;

- Whether, under Iowa law, exceptional circumstances warranted disregarding the statutory command that ACR is an entity distinct from its members;

- Whether ACR was the alter ego of its dominant shareholder, or of any other person;

- Whether ACR was undercapitalized at any time;

- Whether ACR lacked separate books from any other person, or from Mr. Kinley specifically;

- Whether ACR kept finances separate from any other person's finances, or from Mr. Kinley's finances specifically;

- Whether any individual obligations, or Mr. Kinley's individual obligations specifically, were paid by ACR;

- Whether ACR was used to promote fraud or illegality;[9]

- Whether ACR's members, or Mr. Kinley specifically, failed to follow corporate formalities;

- Whether ACR as a company was a sham as defined under Iowa law;

- Whether it would be equitable to hold Mr. Kinley liable for any debts of ACR;

- Whether ACR made any transfers with intent to hinder, delay, or defraud the United States;

- Whether, at any time, ACR reasonably should have believed it would incur debts beyond its ability to pay; and

- Whether ACR made any transfers not for reasonably equivalent value.

In resolving the parties' cross-motions for summary judgment, the Court of Federal Claims

made certain findings relating to whether ACR had met its burden to establish various specific

---

[9]     Plaintiff's cross-motion noted that it was *not* raising this issue and that any discussion of fraud was "moot" after Plaintiff "conceded" ACR's claims for abatement and refund fraud penalties. (SAMF ¶ 35.)

elements of federal statutory tax law. The Court of Federal Claims did not find that *Plaintiff* (the

United States) met its burden to establish anything, because Plaintiff did not have the burden of

proof on any issue raised in the Refund Suit. And the Court of Federal Claims did not make any

findings relating to whether the test(s) for piercing the corporate veil under Iowa law or fraudulent

transfer liability under Iowa law—or any element thereof—had been met as to any of ACR's

owners in their individual capacities. These individuals were not parties.

Plaintiff's cursory discussion of whether the same issues are presented in this matter as in

the Refund Suit comprises a mere two pages and does not cite a single legal authority. (ECF 91, at

32-33.) Instead, Plaintiff asserts that the Refund Suit presented the same issues as this case because

the Refund Suit involved some of the same facts as this action. (ECF 91, at 26.) "It may well be,

as [Plaintiff] asserts . . . that some of the facts found by the [prior] court[] will also be at issue in

this proceeding. However, it does not follow from that assertion that any one of the plaintiff's

claims in this action has been resolved in the [prior] litigation." *McBee v. Delica Co.*, No. 02-198-

P-C, 2004 WL 2634465, at *9 (D. Me. Aug. 19, 2004), *report and recommendation adopted in*

*part*, No. CIV. 02-198-P-C, 2004 WL 2674360 (D. Me. Nov. 19, 2004). There are at least three

separate reasons why Plaintiff has failed to meet its burden to establish that any issue in this case

was determined in the Refund Suit. First, the burden of proof has shifted from ACR in the Refund

Suit to Plaintiff in this action. Second, the issues in the Refund Suit involved substantive legal

standards that are not the same as the applicable legal standards in this action. Third, Plaintiff's

Preclusion Motion misstates the findings in the Refund Suit.

i.      *ACR, Not Plaintiff, Bore The Burden Of Proof In The Refund Suit.*

A difference in burdens defeats issue preclusion. *See, e.g., Medtronic*, 571 U.S. at 200

("[T]he '[f]ailure of one party to carry the burden of persuasion on an issue should not establish

the issue in favor of an adversary who otherwise would have the burden of persuasion on that issue

in later litigation.'" (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4422, p. 592 (2d ed. 2002))); *Johnson v. Florida*, 348 F.3d 1334, 1347–1348 (11th Cir. 2003) ("Because of the differential burdens, a finding that the DOJ could not demonstrate that the State was violating substantive due process or the ADA was not the same thing as saying that the State could demonstrate affirmatively its satisfaction of its constitutional obligations."); *McHan v. Comm'r*, 558 F.3d 326, 331 (4th Cir. 2009) (similar); *Freeman United Coal Min. Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 294–295 (7th Cir. 1994) (similar); *Artukovic v. Immigration and Naturalization Serv.*, 693 F.2d 894, 898 (9th Cir. 1982) (similar).

Plaintiff argued in the Refund Suit that ACR bore the burden as to all contested issues, and ACR agreed. (SAMF ¶ 25.) The Court of Federal Claims also agreed that ACR bore the burden to prove that it was entitled to claim the credit and that the penalty did not apply. *See Alt. Carbon Res.*, 137 Fed. Cl. at 24, 31. In this action, *Plaintiff* bears the burden as to every element of its claims. *E.g.*, *Cemen Tech, Inc. v. Three D. Indus., L.L.C.*, 753 N.W.2d 1, 6 (Iowa 2008) (holding that the party seeking to hold an LLC member liable for company debts bears the burden to show veil-piercing is warranted); Iowa Code § 684.4(3) (creditor making a voidable transfer claim bears the burden of proving the elements of the claim). The Court of Federal Claims never found that Plaintiff met any burden to establish anything. But Plaintiff bears the burden on all its claims here.

This fact alone is fatal to Plaintiff's Preclusion Motion.

> ii.    The Refund Suit Involved Application Of Different Legal Standards.

The Refund Suit did not involve the same issues as the present case because the Refund Suit concerned application of different legal standards than the present matter and involved different parties. The Refund Suit concerned whether ACR could show that it met certain statutory requirements of the federal tax code. This action concerns whether four individual defendants can

be held liable for ACR's debts under Iowa common law and whether those individual defendants possess transferee liability under Iowa law.

"[I]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits may be the same." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154 (2015) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 4417, p. 449 (2d ed. 2002)); *Fife*, 100 F.3d at 89-90 ("Collateral estoppel is not appropriate when the same facts were analyzed under similar but significantly different criteria in the earlier adjudication."); *United States v. Brazile Brazile*, No. 4:18-CV-00056 SEP, 2020 WL 5534452, at *12 (E.D. Mo. Sept. 15, 2020) (finding issue preclusion inappropriate where the party seeking to apply preclusion did not show that the successful party in the first action "previously advanced substantially the same . . . legal arguments"); *see also, e.g.*, *Lowe v. Hearst Communications, Inc.*, 487 F.3d 246, 252 (5th Cir. 2007) (refusing to apply issue preclusion where the first court ruling rested on tests different from those at issue in the second case); *Haarslev, Inc. v. Nissen*, No. 5:19-CV-06128-BCW, 2023 WL 2807129, at *3 (W.D. Mo. Jan. 25, 2023) (finding issue preclusion inappropriate where the specific issue in the present case regarding "whether the noncompete provisions of the MSA and SA were enforceable *under Missouri law* was neither explicitly nor implicitly before any of the aforementioned [prior] tribunals"); *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, No. 4:16 CV 144 DDN, 2017 WL 3189486, at *6 (E.D. Mo. July 27, 2017) (refusing to apply issue preclusion and finding that "[w]hile the rights granted in the state court proceeding may be relevant to plaintiff's trademark infringement claim, the specific question in this case was not raised, litigated, or determined in the state court proceeding."); *Smutka v. City of Hutchinson*, No. CV 03-5560(DSD/JSM), 2005 WL 8164679, at *3 (D. Minn. July 5, 2005) ("[P]reclusion is inappropriate when the agency analyzed the same facts 'under

27

similar but significantly different criteria in the earlier adjudication.'"). "The burden of pleading and proving the identity of issues rests on the party asserting the estoppel." *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980); *see also, e.g.*, *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 983 (Ohio 1983) (same).

Plaintiff argues that certain findings of the Court of Federal Claims are "relevant" to the issue of whether ACR was a "sham" business. (ECF 91, at 32.) Under Iowa law, a business entity is a sham "when it has no business or corporate purpose"—that is, where the entity is used for some purpose other than conducting business for the benefit of ownership. *Woodruff Constr., LLC v. Clark*, No. 17-1422, 2018 WL 3913776, at *8 (Iowa Ct. App. Aug. 15, 2018). This is, in part, a subjective inquiry. *See e.g.*, *id.* An entity that conducts business and completes contracts in its own name is not a sham. *See id.*

The Court of Federal Claims was not asked to rule nor did it rule on whether ACR was a "sham" under Iowa law, and the Court of Federal Claims did not find that ACR, the business entity, had no business or corporate purpose. Instead, the Court of Federal Claims analyzed (albeit in the alternative) whether ACR could meet its burden to show that it its alternative fuel mixtures were "sold . . . for use as a fuel" under 26 U.S.C. § 6426(e)(2)(A) as to one subset of the transactions that ACR engaged in—its transactions with digesters. *See Alt. Carbon Res.*, 137 Fed. Cl. at 26-27.

This is a markedly different legal question than whether ACR was a "sham" company. The Court of Federal Claims analyzed a set of legal standards specific to federal tax law. The Court of Federal Claims did not analyze whether ACR was conducting business in its own name, either generally *or* with respect to the subset of transactions at issue. The Court of Federal Claims did not analyze whether ACR entered into valid or enforceable contracts under Iowa law or any other applicable state contract law, or even whether ACR's agreements would be considered a "sale"

28

under Iowa contract law, the UCC, or any other applicable law. Whether the fact of the Court of Federal Claims' finding is "relevant" in this case is not a question of issue preclusion. *See, e.g.*, *Lawn Managers*, 2017 WL 3189486, at *6.

The Court of Federal Claims did not engage in fact finding, and its legal conclusions cannot be relied on as factual findings in this action involving different legal standards and different parties. *See, e.g.*, *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC*, 594 F.3d 441, 445 (6th Cir. 2010), *opinion vacated and superseded on other grounds*, 399 F. App'x 49 (6th Cir. 2010) ("The issue in that case was not whether the Policies covered the damage under some universal insurance law, but whether the damage was covered under South Carolina insurance law. In the present case, the issue is whether such damage is covered under Indiana insurance law."). This Court has shown that it already understands the distinction between the piercing the corporate veil and fraudulent transfer claims asserted in this matter and the questions regarding federal tax liability decided in the Refund Suit. As this Court has explained,

> The doctrines of piercing the corporate veil and fraudulent transfer do not inherently have anything to do with whether a taxpayer intended to evade taxes, nor are they designed to figure out how much a taxpayer owes. In fact, those doctrines do not necessarily have anything to do with taxes at all. Instead, piercing the corporate veil and fraudulent transfer doctrines are concerned with who is obligated to pay a corporate debt, regardless of the nature or amount of that debt. The focus is therefore on things like adherence to the corporate form, the company's solvency and purpose for existence, and the timing of transfers.

*Huyser*, 697 F. Supp. 3d at 880.

Plaintiff also vaguely asserts that "[m]any of the Refund Suit findings would go to [the] issue" of "whether a business was used to promote fraud, illegality, or an injustice." (ECF 91, at 32.) Again, Plaintiff makes no attempt to connect the actual federal tax issues decided in the Refund Suit with the controlling legal standards whose applications are contested in this case. The Court of Federal Claims found that ACR failed to show that it met the "reasonable cause" standard

29

in 26 U.S.C. § 6675 in connection with claiming tax credits. This is not the same legal standard as the standard for showing, under Iowa law, that a business was "used to promote fraud or illegality." *See Algreen v.* Gardner, No. 17-1014, 2018 WL 3057438, at *5 (Iowa Ct. App. June 20, 2018) (listing factors relevant to veil-piercing). Under Iowa law, fraud requires, among other factors, a knowing false representation of material fact. *E.g.*, S*preitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 735 (Iowa 2009). The Court of Federal Claims did not analyze those questions, and in fact observed that "[t]he parties do not dispute the accuracy of the Forms 8849 filed by [ACR]." *Alt. Carbon Res.*, 137 Fed. Cl. at 22. In other words, Plaintiff *agreed* the information provided by ACR upon which its credit claims were based was truthful. *See id.* Similarly, the Court of Federal Claims' analysis of whether certain ACR transactions met the element for "sold . . . for use as a fuel" under 26 U.S.C. § 6426(e)(2)(A) did not concern whether ACR promoted fraud or illegal activity.

Similarly, Plaintiff argues that the Court of Federal Claims' finding that ACR failed to show that it met the "reasonable cause" standard in 26 U.S.C. § 6675 in connection with claiming tax credits is "relevant" to whether Plaintiff can prove ACR reasonably believed it would incur debts beyond its ability to pay pursuant to Iowa Code § 684.4(1)(b)(2). (ECF 91, at 33.) The inquiry under Section 684.4(1)(b)(2) involves not merely the debtor's state-of-mind relating to whether a debt existed, but also the relationship between the alleged voidable transfer and the debtor's ability to pay potential future debts. *See* Iowa Code § 684.4(1)(b)(2). Whether ACR could prove that it met the "reasonable cause" standard in 26 U.S.C. § 6675 is not at issue in this case. Plaintiff identifies no authority that would suggest that the legal standard considered by the Court of Federal Claims in interpreting 26 U.S.C. § 6675 is the same as the standard for applying the Iowa voidable transfer statute.

In summary, the issues that the Court of Federal Claims decided in the Refund Suit are not the issues that are contested in this case. The only issues that the Court of Federal Claims decided were that ACR had not met its burden to show that it had met the requirements of the tax credits claimed under 26 U.S.C. § 6426 and that ACR had not meet its burden to show "reasonable cause" as set forth in 26 U.S.C. § 6675. *See Alt. Carbon Res.*, 137 Fed. Cl. at 37.

Plaintiff has not shown that certain issues of federal tax law determined by the Court of Federal Claims are issues in this case. *See, e.g.*, *Huyser*, 697 F. Supp. 3d at 880 ("'[C]ollateral estoppel analysis . . . focuses not on whether the facts underlying the cases are the same, but instead on whether the same issue has been conclusively determined in a prior decision.'" (quoting *In re Prosser*, 534 F. App'x 126, 129 (3d Cir. 2013)); *Prudential Ins. Co. of Am. v. Prusky*, 413 F. Supp. 2d 489, 492–93 (E.D. Pa. 2005) (finding issue preclusion to be inappropriate where the prior court did not "specifically consider" the issue raised by the subsequent case). Plaintiff has therefore failed to meet its burden to establish the "same issue" element of issue preclusion.

iii.       *Plaintiff Mischaracterizes The Refund Suit's Findings.*

Plaintiff undercuts its Preclusion Motion by distorting the Court of Federal Claims' opinion and suggesting that the Court of Federal Claims made freestanding factual findings that it did not make. The brief in support of Plaintiff's Preclusion Motion is written as if Plaintiff's tax counterclaim against ACR was tried to the bench and the Court of Federal Claims entered findings of fact. *See, e.g.*, ECF 91, at 28 (referring to "facts as determined in the Refund Litigation (*sic*)," then listing purported findings of fact); *id.* at 30 (referring to "mixed factual and legal findings," then listing purported findings of fact); *id.* at 32 (asserting that the Court of Federal Claims found, *inter alia*, "that there was no economic substance to the business's core transactions"). But the Refund Suit was resolved on summary judgment, and the Court of Federal Claims explicitly disclaimed that it was making factual findings. *Alt. Carbon Res.*, 137 Fed. Cl. at 21 ("[T]he court

31

must not weigh the evidence or make findings of fact."). Issue preclusion cannot extend to findings the first court never made. *See Dureiko v. United States*, 209 F.3d 1345, 1354–55 (Fed. Cir. 2000) (reversing issue preclusion ruling where "[t]he trial court framed the dispositive issue too broadly").

Plaintiff's Preclusion Motion ignores this critical aspect of the Refund Suit's procedural posture. Contrary to Plaintiff's suggestion, the Court of Federal Claims did not find that as a matter of fact "there was no economic substance to [ACR's] core transactions." *See* ECF 91, at 32. What the Court of Federal Claims actually held was that ACR failed to meet its burden to show the requirements of 26 U.S.C. § 7701(*o*)(1) had been met with respect to certain transactions where digesters paid or agreed to pay ACR—transactions which represented a subset of ACR's tax credit claims and a smaller subset of ACR's business activity. *See Alt. Carbon Res.*, 137 Fed. Cl. at 27. The Court of Federal Claims conducted no analysis whatsoever as to what ACR's "core transactions" were. *See id.* Similarly, the Court of Federal Claims did not find, as Plaintiff asserts, that "the transactions involved no sale of mixture." *See* ECF 91, at 32. The Court of Federal Claims held that ACR failed to meet its burden to show that its sale of feedstock to digesters qualified as having been "sold . . . for use as a fuel" under 26 U.S.C. § 6426(e)(2)(A). *See Alt. Carbon Res.*, 137 Fed. Cl. at 26. The Court of Federal Claims did not analyze, for example, whether ACR's sales to digesters qualified as sales under Iowa contract law or under the UCC. *See id.* The Court of Federal Claims did not find that "the members did not reasonably rely on any advice from attorneys and other advisors," as Plaintiff erroneously suggests, because the Court of Federal Claims only analyzed ACR's affirmative defense of "reasonable cause" pursuant to 26 U.S.C. § 6675 at the entity level. *See Alt. Carbon Res.*, 137 Fed. Cl. at 31. The Court of Federal Claims made no findings as to Mr. Kinley's reliance upon anyone or the reasonableness thereof. In fact,

Plaintiff specifically argued that **only Mr. Huyser's conduct was relevant** to the question of whether ACR could meet its burden to establish reasonable cause under 26 U.S.C. § 6675. (SAMF ¶¶ 32-34.)

*　　*　　*

Plaintiff's Preclusion Motion is not a request for the Court to take judicial notice of the outcome of the Refund Suit.[10] It is not enough to argue that the fact of the outcome of the Refund Suit may be relevant to Plaintiff's claims against Mr. Kinley—Plaintiff must identify discrete issues *in this case* and establish that those issues were necessarily "raised, litigated, [and] decided" in the Refund Suit. *See, e.g.*, *Lawn Managers, Inc*., 2017 WL 3189486, at *6 ("While the rights granted in the state court proceeding may be relevant to plaintiff's trademark infringement claim, the specific question in this case was not raised, litigated, or determined in the [prior] proceeding."). Plaintiff's Preclusion Motion does not do this and must be denied.

### C.    Plaintiff's Preclusion Motion Focuses On Dicta And Issues That The Court Of Federal Claims Identified As Not Necessary To Its Judgment.

"[O]nly those issues actually and necessarily decided in the first suit may have preclusive effect in a subsequent action." *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003). Not every observation included within a court's written ruling is considered to be actually and necessarily decided. Statements that are dicta are not entitled to preclusive effect. *See, e.g.*, *In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160, 1204-05 (11th Cir. 2011) ("[T]his statement does not give rise to collateral estoppel because it was not actually litigated and it was mere dicta and therefore was not critical or necessary to the judgment."); *In re Vanguard Nat. Res., LLC*, 624 B.R. 400, 419 (Bankr. S.D. Tex. 2020) ("Issues that were not necessary or essential to

---

[10]    It does not appear that any party disputes that the Court of Federal Claims found ACR was not entitled to the tax credits that it claimed and the excessive claim penalties applied. Nor is there a dispute that the Court of Federal Claims entered judgment against ACR.

the prior judgment may be characterized as 'dicta' and are not usually subject to appeal."). Plaintiff fails to satisfy this requirement in two respects. First, Plaintiff's Preclusion Motion presents two laundry lists of various judicial observations from the Refund Suit but has not established (and cannot establish) that any of these observations were necessary to the judgment. (ECF 91, at 28-31.) These statements are at best dicta. Second, Plaintiff's Preclusion Motion ignores that the Court of Federal Claims specifically identified certain portions of its written ruling as not necessary to its judgment. These discussions do not have preclusive effect.

Plaintiff's brief presents two bulleted lists of "facts determined in the Refund Litigation (*sic*)." (*Id.*) Many of these statements appear to be summary of materials within the Refund Suit summary judgment record, while other statements appear to be conclusory recitations of various statutory standards under federal tax law. (*Id.*) Plaintiff has not established that any of these stray comments were necessary to the Court of Federal Claims' ruling in the Refund Suit, nor has Plaintiff established that any bullets within these lists resolve any disputed issues in this case. Issue preclusion, a doctrine of estoppel, is not the same as verbatim incorporation of a prior written judicial ruling into a set of pre-trial fact findings by a second court, as Plaintiff's Preclusion Motion seems to be seeking here. (*See id.*)

The Court of Federal Claims also explicitly stated that its discussion of whether ACR could meet its burden to show that it its alternative fuel mixtures were "sold . . . for use as a fuel" under 26 U.S.C. § 6426(e)(2)(A), which included its discussion of the "economic substance doctrine" as codified at 27 U.S.C. § 7701(*o*), was "***immaterial***." *Alt. Carbon Res.*, 137 Fed. Cl. at 26 (emphasis added). The Court of Federal Claims had already found that ACR was not entitled to the credits because ACR could not meet its burden to establish that ACR's customers used ACR's products "as a fuel" pursuant to 26 U.S.C. § 6426(e)(2). *Id.* The conclusions of the Court of Federal Claims

in that "immaterial" section of its ruling, therefore, were not necessary to its judgment and are not entitled to preclusive effect. *See, e.g.*, *Yanping Chen v. Fed. Bureau of Investigation*, 435 F. Supp. 3d 189, 197 (D.D.C. 2020) (finding no issue preclusion where the district judge "himself acknowledged that this discussion was not essential to his judgment"); *see also Heyliger v. State Univ. & Cmty. Coll. Sys. of Tennessee*, 126 F.3d 849, 854 (6th Cir. 1997) (finding a court's "additional holding" to be non-binding dicta "so far as preclusion goes").

**III.  Plaintiff's Alter Ego Analysis As To Mr. Carter And JWC Does Not Request Relief Against Mr. Kinley.**

Plaintiff's Alter Ego Motion does not request relief relating to Plaintiff's claim against Mr. Kinley. Accordingly, to the extent Plaintiff's Alter Ego Motion is directed toward Mr. Kinley, the motion should be denied.

Mr. Kinley does not take a position as to whether JWC should be considered to be the "alter ego" of Defendant Jeffrey Carter, other than to note the dramatic distinctions between the factual assertions contained within Plaintiff's Alter Ego Motion, on one hand, and the material facts relating Plaintiff's veil-piercing claim against Mr. Kinley, on the other, as illustrated below:

| Plaintiff's Allegations Regarding Mr. Carter and JWC | Facts Regarding Mr. Kinley and ACR |
|---|---|
| "Carter held complete control over JWC." (ECF 91 at 41.) | Mr. Kinley did not control ACR. He possessed less than 11% of voting shares. At all times, Mr. Huyser possessed between 79% and 100% of ACR's voting shares and served as the company's Authorized Member Representative. (SAMF ¶¶ 1, 4–6.) |
| "Carter founded JWC, served as its registered agent, and held 99.1% ownership interest in the company." (ECF 91 at 42.) | Mr. Kinley did not found ACR. Mr. Kinley did not serve as ACR's registered agent. Mr. Kinley possessed less than 11% of voting shares and received less than 8% of distributions. (SAMF ¶¶ 1, 4, 37-38.) |
| "Carter alone could sign JWC checks and access JWC bank accounts." (ECF 91 at 42.) | Mr. Kinley lacked access to ACR's bank accounts and could not sign checks on behalf of ACR. (SAMF ¶ 39.) |

| | |
|---|---|
| "Carter's personal residence was titled in the name of JWC for decades." (ECF 91 at 42.) | None of Mr. Kinley's personal assets were titled in ACR's name. (SAMF ¶ 36.) ACR kept its own books separate from Mr. Kinley's. |
| "Carter made decisions for JWC and did not have to consult anyone else to make decisions for JWC." (ECF 91 at 42.) | Mr. Huyser, not Mr. Kinley, made decisions for ACR and did not have to consult with anyone else to make decisions for ACR. (SAMF ¶ 18.) |
| "JWC failed to follow corporate formalities." (ECF 91 at 42.) | Because ACR is an LLC, whether ACR observed "corporate" formalities is not a ground for imposing liability on Mr. Kinley for ACR's debts. Iowa Code § 489.304(2). |
| "JWC failed to keep appropriate corporate records." (ECF 91 at 41.) | Plaintiff possesses ACR's detailed financial records, and Plaintiff did not dispute the accuracy of the Forms 8849 submitted in connection with ACR's tax credit claims. *Alt. Carbon Res.*, 137 Fed. Cl. at 22. |
| "Carter directed his employees (of other businesses) to shred all the existing records of JWC . . ." (ECF 91 at 44.) | No such allegation has been made against Mr. Kinley or ACR. |
| "Carter and JWC commingled personal and business funds." (ECF 91 at 41.) | ACR and Mr. Kinley did not commingle funds, and ACR did not pay Mr. Kinley's personal obligations. (SUMF ¶¶ 41-42.) |
| "Carter transferred JWC assets to himself for no consideration." (ECF 91 at 41-42.) | Mr. Kinley received distributions of funds relating to revenues generated by one portion of ACR's business (the non-Iowa operations), as directed according to the sole discretion of Mr. Huyser. (SAMF ¶ 44.) |
| "Carter publicly admitted in the *Carter v. Carter* Polk County Iowa case . . . that he and JWC are both liable for the debts of ACR." (ECF 91 at 48.) | Mr. Kinley has consistently denied that ACR is his alter ego or that he should be held liable for ACR's debts and has always recognized the distinction between ACR as an entity and his own personal interests, including but not limited by hiring separate counsel during the Refund Suit. (*See* SAMF ¶ 24.) |

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment should be denied.

Dated: August 12, 2024

Respectfully submitted,

*/s/ Matthew A. McGuire*

Bruce W. Baker, AT000673
Matthew A. McGuire, AT0011932
Randall D. Armentrout AT0000543
NYEMASTER, GOODE, P.C.
700 Walnut Street, Suite 1300
Des Moines, Iowa 50309-3899
Telephone: (515) 283-3100
Fax: (515) 283-8045
Email: bwbaker@nyemaster.com
        mmcguire@nyemaster.com
        rdarment@nyemaster.com

**ATTORNEYS FOR DEFENDANT
MATTHEW KINLEY**