**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 23-cv-144 |
| vs. | **JEFFREY CARTER AND JWC INVESTMENTS, L.C.'S BRIEF IN SUPPORT OF THEIR RESISTANCE TO UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| JAMES HUYSER, MATTHEW KINLEY, KENNETH BOYLE, JEFFREY W. CARTER, *and* JWC INVESTMENTS, L.C., | |
| Defendants. | |

## TABLE OF CONTENTS

**FACTUAL BACKGROUND** ................................................................................2

**ARGUMENT** .....................................................................................................5

  **A. MOTION FOR SUMMARY JUDGMENT STANDARD** ...........................5

  **B.  THE ISSUES SOUGHT TO BE PRECLUDED BY THE U.S. ARE NOT SUBJECT TO ISSUE PRECLUSION.** ......................................................6

    **1.    Legal Standard** ....................................................................................6

    **2.    Both Suits Involve the Same Parties or Parties in Privity.**...............7

    **3.    The Issues Sought to be Precluded are Not the Same as the Issue Involved in the Refund Suit.**..............................................................8

    **4.    The Issue Sought to be Precluded was NOT Litigated in the Prior Action.**.............................................................................................11

    **5.    The Issues Sought to be Precluded were Not Determined by a**

Valid and Final Judgment as Applied to this Case. ........................13

C.  JWC INVESTMENTS, L.C. IS NOT AN ALTER EGO OF JEFFREY
    CARTER PERSONALLY. .............................................................15

   1.  Legal Standard ................................................................15

   2.  The Relationship of Carter and JWC Does Not Demonstrate an
       "Alter Ego" Under Iowa Law. ...........................................16

   3.  The United StatesCannot Prove JWC failed to follow corporate
       formalities........................................................................18

   4.  There Exists a Genuine Issue of Material Fact Whether Carter
       and JWC commingled Funds. ............................................22

   5.  There Exists a Genuine Issue of Material Fact Whether Carter
       Transferred JWC Funds and Assets for Little or No
       Consideration....................................................................23

   6.  Upholding JWC's Corporate Form Would not Promote Fraud or
       an Injustice. .....................................................................24

CONCLUSION.....................................................................................25

Jeffrey Carter and JWC Investments, L.C., by and through their attorneys of record hereby submit the following Resistance to the United States' Motion for Partial Summary Judgment. In support of their Resistance, Carter and JWC Investments state:

## FACTUAL BACKGROUND

Jeffrey Carter founded and operated JWC, Inc. in 1988. (U.S. Appx. 0757). Eventually, JWC, Inc. was reincorporated as JWC Investments, LC in 2008. (U.S. Appx. 0762). Carter funded JWC's startup expenses in 1988 with his personal funds.

Since then, JWC has had separate accounts and has been fully capitalized without additional funding from Carter's personal funds. Throughout its existence, JWC was a business Carter owned and operated to invest in startup companies, real estate and commercial investing through the Royal Bank of Canada. In 2011, JWC invested in Alternative Carbon Resources, as a higher-risk investment in the alternative fuel industry, which Carter had experience in from owning and operating other businesses.

Alternative Carbon Resources ("ACR") was an Iowa limited liability company formed to create renewable fuels. ACR had four members, James Huyser, JWC Investments, L.C., Matthew Kinley, and Kenneth Boyle. (U.S. Appx. 0029). During 2010 and 2011, Defendants researched and worked with experts to setup ACR, including working with scientists, local attorneys, accountants and an excise tax attorney. *ACR v. US*, 137 Fed.Cl. 1, 7-8 (Fed.Cl. 2018). ACR operated its business in 2011. (Compl. ¶ 37.) During that year, ACR claimed and received federal alternative fuel tax credits. (Id. ¶¶ 2-3.) ACR ceased operations at the end of 2011. (Id. ¶ 37.)

At the time the Judgment against ACR was entered in 2018 in the refund suit litigation, ACR had not operated for over seven years. (Id. ¶ 108). As admitted by the United States, it knew ACR ended operations as of the end of 2011. (Compl. ¶¶ 147-48). The transfers complained of by the United States occurred in 2011 and

2012, over a decade prior to this current litigation. (Id. ¶ 153).

On April 18, 2014, the Internal Revenue Service ("IRS") issued eight "Notices of Tax Due on Federal Tax Return," two for each of the quarters in 2011. *ACR*, 137 Fed.Cl. at 19-20. The Notices asserted that ACR owed all tax credits paid back to the IRS (26 U.S.C. §§ 6426(d)(2) & 6427(e)(2)), civil fraud penalties (26 U.S.C. § 6663), excess credit penalties (26 U.S.C. § 6675) plus interest. *Id*. Later the IRS issued an additional assessment for failing to file Form 720 (26 U.S.C. § 6651). *Id*. at 20.

### Prior Suit: *ACR v. U.S.*, 137 Fed.Cl. 1 (Fed.Cl. 2018), Refund Suit

After the IRS took no action, on March 4, 2015, ACR filed a refund suit in the Court of Federal Claims for recovery and abatement of the federal tax credits and penalties paid under protest and an adjudication abating the penalties and interest. *See ACR,* 137 Fed.Cl. 1.

Both ACR and the United States filed motions for summary judgement in fall of 2017. ACR argued against the fraud penalties and asked the court to abate the civil fraud penalties. (See ACR's Mot. for Summ. J., No. 15-155T, Sept. 27, 2017.)

On March 22, 2018, the court decided the lawsuit on cross motions for summary judgment. *See ACR*, 137 Fed.Cl. 1. Additionally, the Court of Federal Claims entered a money judgment against ACR totaling $59,320,179 for tax credits claimed for its alternative fuel operations (*Id*.; Compl. ¶ 5).

**Current Suit:** ***U.S. v. Huyser, et. al.***

On May 1, 2023, the United States filed a second lawsuit to attempt to collect the judgment against ACR from the individual members of ACR. The Complaint requests the Court find the individual members liable either by piercing the corporate veil of ACR, or by determine Defendants are fraudulent transferees "because the transfers were made with actual intent to hinder, delay, or defraud the United States," and/or "because they were made without ACR receiving a reasonably equivalent value in exchange and ACR would incur, or reasonably should have believed it would incur, debts beyond its ability to pay." (Compl. ¶¶ 179-180.)

The United States alleges throughout its Complaint that the transfers were "fraudulent," ACR was a "sham corporation" "used primarily as a vehicle to "promote an injustice" and Defendants were trying to "defraud" the United States. (*See generally* Compl.) The United States now seeks to preclude the Defendants from litigating important aspects of ACR's business model: The use of biofuels and fuel, the sale of such product, and the penalties assessed to ACR. Additional facts will be discussed below as appropriate.

## ARGUMENT

### A. MOTION FOR SUMMARY JUDGMENT STANDARD.

A Motion for Summary Judgment may only be granted if the record, viewed in the light most favorable to the nonmoving party, shows there are no genuine issues

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). Everything must be taken in the light most favorable to the non-

moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).  The non-moving party must provide "specific facts showing that there is a

genuine issue for trial." *Celotex*, 477 U.S. at 324 (Citing FED. R. CIV. P. 56(e)). A

"genuine" issue exists if it "may be reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250.

### B.  THE ISSUES SOUGHT TO BE PRECLUDED BY THE UNITED STATES ARE NOT SUBJECT TO ISSUE PRECLUSION.

#### 1.    Legal Standard

Issue preclusion "bars 'successive litigation of an issue of fact or law actually

litigated and resolved in a valid court determination essential to the prior judgment,'

even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892

(quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).  "To preclude

parties from contesting matters that they have had a full and fair opportunity to

litigate protects their adversaries from the expense and vexation [of] attending

multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action

by minimizing the possibility of inconsistent decisions." *Cont'l W. Ins. Co.*, 83 F.

Supp. 3d at 833 (quoting *Montana v. U.S.*, 440 U.S. 147, 153–54 (1979)). Even when

a prior decision is wrong or in error, issue preclusion still applies. *Id*.

Issue preclusion applies in the Eighth Circuit if: (1) the party raising the issue was a party to the first suit or in privity with a party in the first suit; (2) the issue in the subsequent action is the same as the issue in the prior action; (3) the issue was litigated in the prior action; (4) the issue was determined by a valid and final judgement; and (5) the determination in the prior action was essential to the resulting judgment. *Cont'l W. Ins. Co.*, 83 F. Supp. 3d at 833 (citing *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir.2007) (quoting *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir.1997))).

### 2.   Both Suits Involve the Same Parties or Parties in Privity.

Carter and JWC concede the parties are in privity with ACR for purposes of this case. While the prior court action was against the corporate entity, the Defendants, as members of ACR, fully participated in the prior suit including participating in depositions, being individually represented by counsel, and actively participating in the litigation. The involvement of the individual members of ACR in the prior litigation established that, while they were not individually named, they were agents of the named party in the prior case, and their interests were adequately represented by someone with the same interest, meeting the first factor for issue preclusion. *Cont'l W. Ins. Co.*, 83 F. Supp. 3d at 833.

Adequate representation must at a minimum show that the interests of the party and nonparty are aligned and that the party understood that it was acting as a

representative of the nonparty. *Id*. (citing *Taylor*, 553 U.S. at 900).  In both of the suits at issue, the United States is on one side. On the other side, was ACR, the corporate entity, and now the individual members of ACR. The members of ACR all had notice, participated in discovery, depositions and the defense of ACR. The interests of the members and ACR were the same, to obtain abatement of all the IRS's claims for taxes against ACR. The nonparties in the prior suit (ACR's members) were representing ACR in the suit and protecting its and their identical interests. The ACR members understood they were acting in a representative capacity for ACR.

### 3. The Issues Sought to be Precluded are Not the Same as the Issue Involved in the Refund Suit.

The Fuel Issue, Sale Issue and Penalty Issue as applied in the context of this case have not been litigated before. As the United States concedes in its brief, there are many facts from the Refund Suit, which are extremely relevant to the outcome of this suit, including the legitimacy of ACR's business and whether fraud occurred in ACR's business and making of distributions to members. None of the Defendants in this case have counterclaimed against the United States to relitigate these issues, but the issues the United States seeks to preclude are central and distinct to the issues before the court in determining whether the corporate veil of ACR should be pierced and whether a fraudulent transfer occurred.

The court in this case may not rely on the factual findings of the Court in the Refund Suit as the factual findings are hearsay. *Roth v. Islamic Republic of Iran*, 78 F.Supp.3d 379, 387 (D.D.C. 2015). "Factual findings 'represent merely a court's probabilistic determination as to what happened, rather than a first-hand account of the actual events.'" *Id*. (quoting *Fain v. Islamic Republic of Iran*, 856 F.Supp.2d 109, 116 (D.D.C. 2012)).  For the court to preclude the Defendants from using these issues to support their defense, their ability to defend themselves is essentially taken away. The Defendants must be given the opportunity to present the facts, evidence and arguments to this Court for their rights to be protected in this case.

The Fuel Issue is not the same because the court in the Refund Suit determined the product of ACR was not used as a fuel in the context of qualifying for the tax credits. The issue in this case related to the manufacturing and transfers of the fuel is whether ACR maintained corporate formalities and operated as a business in manufacturing said fuel to allow them to maintain their corporate privileges.

The Sale Issue is not the same because the court in the Refund Suit determined no sale occurred, which was required for ACR to qualify for the tax credits. Here, the issue is whether the sale, transfer, or exchange of product was indicative of fraud or a "sham" corporation as alleged by the United States to divest themselves of the protections an LLC offers. This is not the same issue the court in the Refund Suit decided.

The Penalty Issue is not the same as the Refund Suit. The Refund Suit determined whether ACR was required to pay a penalty for claiming the tax credits. However, in this case, the Court will have to look at whether fraud exists on the Defendants' part in conducting ACR's business for purposes of claiming the tax credits, not whether ACR should be required to pay a penalty.

The issues presented in this case related to the Fuel, Sale and Penalty Issues are separate and distinct from the issues presented to the Court in the Refund Suit. The Court in this case is not called upon to determine whether ACR was correct in claiming the tax credits or whether ACR should pay back the credits claim, but whether the Defendants' conduct in operating ACR, based on these issues, was such that ACR's corporate structure should be disregarded and whether the transfers to the Defendants were fraudulent.

### a.    Offensive collateral estoppel is unfair to the Defendants.

"Offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979). Offensive collateral estoppel does not incentivize Plaintiffs to bring all defendants to an initial action, but "wait and see," then try to hold those judgments against other defendants. *Id*. at 330. This is exactly what the United States is doing here. The United States. is switching adversaries and trying to preclude the Defendants from asserting facts, which are likely to assist in their defense, simply

because the United States has obtained a judgment against ACR. Precluding the Defendants from asserting facts and defenses related to ACR's use of fuel, sale of fuel, and obtaining of the refunds is fundamentally unfair to the Defendants, who have not had a judgment entered against them personally, from litigating additional aspects of the three issues the United States seeks to preclude. This is prejudicial to the Defendants who all performed services for ACR outside of serving as members and may have additional evidence related to these issues which were not litigated in the initial suit. Further, JWC was a non-voting member of ACR. The voting members of ACR selected the attorney and strategies without Carter or JWC's consent or input. Therefore, while they participated in the Refund Suit, he had no say in the case, theories, and evidence presented to the court outside of what the other members voted on and pursued. Carter and JWC should not be bound by the facts and evidence presented in the Refund Suit because they truly had no say in ACR's strategy or decisions related to the case. Non-mutual offensive collateral would be inappropriate in this matter and unduly prejudicial to JWC and Carter.

Trial courts have broad discretion in applying offensive collateral estoppel. *Id*. at 331. The court in this case should decline to apply non-mutual collateral estoppel in relation to the Fuel Issue, Sale Issue and Penalty Issue.

**4.      The Issue Sought to be Precluded was NOT Litigated in the Prior Action.**

11

In determining whether an issue was "actually litigated," *Fofana v. Mayorkas* held:

> The inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. An issue lurking in the record but not raised or decided is not actually litigated. A party may choose not to litigate a particular issue for various reasons, including cost, strategy, and the difficulty of obtaining evidence. We thus agree with other circuits that for an issue to be "actually litigated," the issue must have been "raised, contested, and submitted for determination" in the prior proceeding, and it must be determined.

*Fofana v. Mayorkas*, 4 F.4th 668, 671 (8th Cir. 2021).

As the court noted in the Order Denying Carter and JWC's Motion to Dismiss, issues such as whether fraud occurred was not actually litigated. While the court in the Refund Suit may have determined whether or not ACR was qualified to obtain the tax credits and whether the credits should be paid back (along with a penalty), the court did not determine the legitimacy of ACR's corporate structure as it related to claiming the tax credits and making distributions to the members. The issues regarding the legitimacy of the manufacture, sale and/or transfer of ACR's product was not litigated as it relates to the legitimacy of ACR's business model. The court in this case has to look at ACR's entire operation to determine whether ACR's business was legitimate and by precluding litigation surrounding the Fuel, Sale and Penalty issue, the court will not have the information required to make a fully

informed judgment and the Defendants' ability to defend themselves by showing the legitimacy of ACR's business model will be inhibited, severely prejudicing all Defendants.

### 5.      The Issues Sought to be Precluded were Not Determined by a Valid and Final Judgment as Applied to this Case.

The issues the United States seeks to preclude are essential to this court's determination on whether ACR's corporate veil should be pierced. The United States seeks to preclude the Defendants from arguing the Fuel Issue, Sale Issue and Penalty Issue because they assert these issues were fully litigated. However, the 8th Circuit in *Morrell & Co. v. Loc. Union 304A of United Food and Com. Workers, AFL-CIO,* when courts are not presented with issues, they cannot be precluded later on when not fully presented. 913 F.2d 544, 550 (8th Cir. 1990). This is the case here. The court in the Refund Suit was presented the issue of whether the ACR was entitled to claim the tax credits, whether the fuel was used as fuel, whether they sold the fuel, and whether they should be ordered to pay penalties. The Court in the Refund Suit was not presented with the issue of fraud or the legitimacy of ACR's business as it relates to the Fuel, Sale and Penalty Issues. The determination of ACR's business and transfers. As the Court in the Refund Suit did was not presented with the evidence of the asserted issues in the context of ACR's business model and transfers, they cannot now be precluded by issue preclusion because there is no valid and final judgment on these issues as they relate to the complaints in this case.

### 6.       The Determination in the Prior Action Must Have Been Essential to the Prior Judgment.

The issues the United States seeks to preclude are essential to the court's determination on whether ACR's corporate veil should be pierced. However, as stated above, these issues were not presented to the court in the Refund Suit in terms of ACR's business model or transfers to members. They were solely litigated to determine whether ACR was eligible for the tax credits and the penalty issue, not how they applied to ACR's business model or any potential fraud on the part of the members. This factor is not met.

### 7.       Conclusion.

The elements of issue preclusion (collateral estoppel) have not been met by the United States. There exist genuine issues of material fact in whether the issues as presented in this case have been fully decided. The Fuel, Sale and Penalty Issues as defined by the United States. in their Motion for Partial Summary Judgment were not litigated in terms of the legitimacy of ACR's business model or fraudulent transfers. This court has the discretion to not apply offensive collateral estoppel and should exercise that discretion in favor of the Defendants so as to preserve the Defendants' rights to full and fair litigation of liability for the ACR judgment. Precluding the Defendants from litigating the facts and issues surrounding the Fuel, Sale and Penalty Issues will prevent the Defendants from presenting a vigorous defense as there is significant overlap between the issues the United States seeks to

preclude and the structure of ACR's business model and distributions to members. It would be prejudicial to preclude these issues from trial.

### JWC INVESTMENTS, L.C. IS NOT AN ALTER EGO OF JEFFREY CARETER PERSONALLY.

### 1.       Legal Standard

Carter and JWC generally agree with the United States's recitation of the test for determining whether a limited liability company ("LLC") is the alter ego of an individual. U.S. Brief in Support of Summary Judgment p. 38 (ECF no 91.) (citing *Hok Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 935 (8th Cir. 2007). In determining whether the separate corporate identity should be disregarded, each case must be decided on a case-by-case basis with a full review of all existing facts. *U.S. v. Walton*, 909 F.2d 915, 928 (6th Cir. 1990) (citing *Lettinga v. Agristor Credit Corp.,* 686 F.2d 442, 446 (6th Cir.1982)).

The burden is fully on the United States to prove JWC was Carter's alter ego. This is a high standard to meet. The separate identity of the corporation is usually honored as the corporate form promotes legitimate business purposes, such as encouraging financial risk-taking and providing for convenient financial administration. *Valley Finance, Inc v. United States,* 629 F.2d 162, 171 (D.C.Cir.1980), *cert. denied,* 451 U.S. 1018 (1981).

Businesses and members are separate entities for tax purposes. That rule is "subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights." *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 442, (1934) (citations omitted).

Simply because JWC was used as an investment vehicle for Carter's business ventures does not mean it was used for fraud or to promote an injustice. *Valley Finance*, 629 F.2d at 171. Carter has a right to protect himself as an investor in high-risk industries such as biofuels.

### 2. The Relationship of Carter and JWC Does Not Demonstrate an "Alter Ego" Under Iowa Law.

"Owners are free to design a management format that best suits the needs of the business." Ward, A Guide to the Iowa Limited Liability Company Act, 42 Drake L. Rev. 385, 395 (1993). Limited liability companies are separate and distinct entities from the members. IOWA CODE § 489.104(1) (2023). The separate corporate personality ordinarily enables corporate stockholders to limit their personal liability to the extent of their investment." *Briggs Transp. Co, Inc. v. Starr Sales Co.,* 262 N.W.2d 805, 809 (Iowa 1978); *see* Iowa Code § 489.403(1)  Single member LLCs are valid business structures, which was the case here.

JWC was established in 1988 as a corporation. In 2008 it was transformed into JWC Investments, L.C. to protect Jeffrey Carter when investing in riskier

business ventures, such as his investments in biofuels. JWC, in both forms, was properly organized under the laws of the State of Iowa.

Throughout its existence, JWC was involved in real estate, biofuels, alternative energy, and investments through the Royal Bank of Canada. JWC maintained bank accounts at Bank of the West and accounts with the Royal Bank of Canada. Jeffrey Carter also maintained separate accounts for himself personally with the Royal Bank of Canada and Bank of the West. JWC compensated Carter by paying him distributions.  Further, JWC was paid $900-950 in rent from Carter each month. (Carter Appx. 83 at 195:20-25; Carter Appx. 52-54).

For the Court to consider the closeness of the relationship and the control Carter had over JWC would essentially preclude any single-member LLC from liability and would defeat the purpose of an LLC. The United States' Brief talks about how Carter had all of the decision-making power of JWC, but that is how the corporation, and later LLC, was set up. There were no other members, there was no one else to contribute or perform the corporate business of JWC, which is within JWC's rights under Iowa Code Chapter 489. Contrary to the United States's assertion, Carter did pay a sum to JWC for the Lincoln Avenue property. Further, based on the funding of JWC by Carter, the personal contributions and status as the only member of JWC, Carter was fully within his right under Iowa Code § 489.707 to distribute the Lincoln Avenue property to himself personally.

The United States relies on Carter's divorce proceeding in the Iowa District Court in and for Polk County where ACR's debt to the United States was discussed. Throughout the Court's opinion, the Court stated it was unclear whether Carter or JWC was the Investor in ACR and therefore it was not clear whether Carter would be held personally liable for said debt. (Carter Appx. 69). Further, in Carter's Affidavit of Financial Status, all of Carter's business holdings were designated as owned by third parties ("T"). (Carter Appx. 52-54). There exists a genuine issue of material fact regarding who was the actual investor in ACR, Carter or JWC, making this issue improper for summary judgment.

     **3.**    **The United States Cannot Prove JWC failed to follow corporate formalities.**

       **a.**    **There Exists a Genuine Issue of Material Fact Whether JWC Followed Corporate Formalities.**

Carter personally contributed money to JWC, Inc. when it first started. (Carter Appx. 87-88). Carter did not have to contribute any additional personal funds to JWC, as it was always adequately funded. (Id.). As stated, Carter and JWC maintained separate accounts. Carter and JWC each held separate accounts at Bank of the West and Royal Bank of Canada. (Carter Appx. 18-33).

Carter signed checks on behalf of JWC as managing member, emails as Managing Member. (Carter Appx. 15). Checks made out to JWC were deposited in JWC's bank accounts, not Carter's personal bank accounts. As stated above, in his

divorce, Carter made sure to designate all of his business holdings, including JWC, as owned with third parties. (Carter Appx. 52-54). Further, JWC owned all of Carter's business ventures, so any office space or employees would have been JWC's employees. (Carter Appx. 89 at 41:18-24).

Carter's control of JWC does not indicate a lack of corporate formalities, as discussed above, single-member LLCs are acceptable under the law. To state Carter could not enjoy the benefits of a closely held LLC to protect himself from risky investments simply because no one else was a member of JWC is not supported by the law.

One of the United States' main allegations regarding Carter's management of JWC is the "Lincoln Avenue" property was transferred to Carter with no funds exchanged. (U.S. Statement of Undisputed. Facts ¶ 170). This is false, even the Quit Claim Deed states money was exchanged. (Carter Appx. 46-47). Further, Quit Claim Deeds do not always include the exact purchase price of properties. The Lincoln Avenue Property and JWC's remaining holdings needed to be disposed of upon JWC closing, and as the only member of the company, Carter was proper in distributing the property to himself.

JWC was the member of ACR, not Carter, therefore all payments from ACR were to be made to JWC. (U.S. Appx. 0029; Carter Appx. 1-13). All ACR payments were deposited into the JWC bank accounts, not Carter's. Limited liability

companies are entitled to be members of other companies. Simply because Carter was the only member of JWC does not mean the United States' theory of an "alter ego" is correct because he directed the funds from ACR, which JWC was the member of, to be paid to JWC bank accounts. Contrarily, if Carter had directed JWC's payments to himself personally, that would have been a failure to follow corporate formalities. Directing the payments to JWC was the correct action by JWC and Carter to preserve the corporate formalities.

      **b.** There Exists a Genuine Issue of Material Fact Whether JWC Failed to Keep Corporate Records.

The United States cannot prove JWC did not keep corporate records while it was in existence. No where in the United States' Brief or Statement of Undisputed Facts does it state these records never existed. *See generally* U.S. Brief in Support of Partial Summary Judgment p. 44-45 and Statement of Undisputed Facts. The United States did not ask Carter in the course of discovery or his deposition whether he ever kept formal records. JWC was dissolved in December 2021. Under the law, JWC wound up the existing business, distributed assets and debts of JWC. At the time JWC was wound up, the United States had not filed any liens on JWC properties.[1] Further, the United States waited more than five years to bring this suit.

---

[1] The United States placed a federal tax lien on 110 SE Grant St. Ste 106, Ankeny, Iowa in 2019. However, this property was owned by BFC and had sold this property prior to the lien being placed. The United States did not file a lien on any other JWC property. Carter further stated in his deposition he was unaware of a federal tax lien. Carter 2023 Depo p. 70.

The Defendants in this matter did not know if or when the United States would bring this suit.

To accuse JWC of spoliation is saying Carter and JWC were to keep a business open and keep corporate records indefinitely, when they did not know the records would be needed. Iowa Code Chapter 489 does not require records be kept for any amount of time once a business has been closed. *See generally* Iowa Code Chapter 489. The United States cannot prove JWC failed to keep corporate records. Bank account records exist. Corporate records of JWC did exist, but as stated previously, Carter was winding down JWC's business years after the United States obtained its judgment against ACR and no case had been filed to pierce the corporate veil when JWC was being wound down. JWC and Carter had no obligation to keep the records on the thought the United States might someday file a lawsuit against JWC.

### i.     The United States' Accusation of Spoliation is Baseless.

"Spoliation" is the "intentional destruction, mutilation, alteration, or concealment of evidence." *Spoliation*, Black's Law Dictionary (11th ed. 2019). To find spoliation occurred, the court must find an "intentional destruction indicating a desire to suppress the truth." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004). There must also be a finding of prejudice to the *opposing party* before a court may impose a sanction for spoliation. *Anderson v. BNSF Railway Co.*, 681 F.Supp.3d 899 (S.D. Iowa 2023) (citation omitted) (emphasis added). The cases

cited by the United States are not analogous to this situation and should not be considered as those cases involved spoliation of evidence resulting in prejudice to the *opposing party*. JWC and Carter did not intentionally destroy any records to suppress the truth. Further, the United States is not prejudiced by the destruction of records. If anyone is prejudiced, it would be Carter and JWC. The records, which would aid in the defense of this suit, no longer exist. To accuse Carter and JWC of spoliation is to continue the unnecessary bully-tactics and disrespect the United States has displayed toward Carter and JWC this entire litigation.

### 4.   There Exists a Genuine Issue of Material Fact Whether Carter and JWC commingled Funds.

Carter and JWC maintained separate accounts. Carter and JWC each held separate accounts at Bank of the West and Royal Bank of Canada. (Carter Appx. 18-33).  Checks made out to JWC were deposited in JWC's bank accounts, not Carter's personal bank accounts. As stated above, in his divorce, Carter made sure to designate all of his business holdings, including JWC, as owned with third parties. (Carter Appx. 49). Further, JWC owned all of Carter's business ventures, so any office space or employees would have associated with JWC's, even if their paychecks came from one of JWC's other businesses. (Carter Appx. 89).

Carter paid rent for the Lincoln Avenue Property. (Carter Appx. 49-51). Therefore, JWC paying for rent and utilities is not out of the realm of possibility and

is not indicative of an alter ego relationship between Carter and JWC. There is not sufficient evidence of commingling of personal and business assets to prove there are no issues of material fact.

### 5. There Exists a Genuine Issue of Material Fact Whether Carter Transferred JWC Funds and Assets for Little or No Consideration.

Upon the winding up of JWC, the assets had to be transferred somewhere. With no debts against JWC, the assets could be transferred to the sole member, Carter. The United States had not filed this case at the time JWC was being wound down, nor had they filed a tax lien against any property owned by JWC. *See* footnote 1. Carter disposed of JWC's assets in accordance with Iowa Code chapter 489 related to limited liability corporations. Further, no one made a claim as a creditor pursuant to Iowa Code § 489.704(2), so JWC had no creditors to satisfy prior to liquidating or transferring assets.

Further, as stated above, JWC was paid for the transfer of the Lincoln Avenue Property. (Carter Appx. 38-40). Additionally, Carter paid JWC, Inc.'s startup costs personally, so the transfer of the assets to him was proper to repay him for his initial contribution and services over the years, for which he did not receive formal compensation. IOWA CODE § 489.707.

23

**6.     Upholding JWC's Corporate Form Would Not Promote Fraud or an Injustice.**

The United States' argument for summary judgment on this point is not supported by law. Their argument is Carter went through a divorce after the Refund Suit, where he disclosed he may be held liable for this debt if the United States sought to pierce the corporate veil. The United States makes no showing of why they are entitled to Summary Judgment on this point other than no payments have been made to pay the debt from the Refund Suit. The only injustice the United States claims is they may not be able to recover from Carter personally, which is not sufficient for summary judgment without further, non-speculative proof. The United States is putting the cart before the horse when it is undetermined whether the United States will be able to recover from any of the Defendants.

Speculation and conjecture is not enough to show fraud or an injustice. *True North Companies, L.C. v. TruNorth Warranty Plans of North America, LLC*, 423 F.Supp.3d 604, 614 (N.D. Iowa 2019). The corporate veil may be pierced where the corporation is a mere shell, an alter ego of its controlling owner which served no legitimate business purpose. *See generally Northwestern Nat. Bank of Sioux City v. Metro Center, Inc.,* 303 N.W.2d 395 (Iowa 1981). JWC operated with a legitimate business purpose for over 30 years. U.S. Appx. 0757-59; U.S. Appx. 0762-63. ACR was not JWC's only business pursuit. JWC was fully capitalized, held separate

financial accounts and records, was not used to promote a fraud or illegality, and was not a sham corporation. *See Lakota Girl Scout Council, Inc. v. Harvey Fund Raising Mgmt., Inc.*, 519 F.2d 634 (8th Cir. 1975).

Without further development of facts, the United States is not entitled to summary judgment on JWC as Carter's alter ego as there exists genuine issues of material fact. The United States is merely speculating a fraud or injustice has occurred and has not asserted undisputed facts sufficient to obtain summary judgment on this point.

## CONCLUSION

To prevail on a Motion for Summary Judgment, the United States must show there are no genuine issues of material fact and meet the legal standards for the legal issues presented to the court. The United States cannot prevail on its Motion for Partial Summary Judgment as the issues surrounding the Fuel Issue, Sale Issue and Penalty Issue as applied to the Complaint in this matter have not been fully litigated and are not the same issues as in the Refund Suit. Further, in regards to the United States' alter ego theory relating to Carter and JWC, there exists genuine issues of material fact regarding whether JWC Investments, L.C. was the alter ego of Carter personally. The court should dismiss the United States' Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

*/s/ Kolby P. Warren*_____
Shayla L. McCormally     AT0009611
Kolby P. Warren          AT0013857
MCCORMALLY & COSGROVE, P.L.L.C.
4508 Fleur Drive
Des Moines, Iowa 50321
Telephone:  515-218-9878
Facsimile:   515-218-9879
shayla@mciowalaw.com
kolby@mciowalaw.com
ATTORNEYS      FOR      DEFENDANT
JEFFREY   W.   CARTER   AND   JWC
INVESTMENTS, LC